# EXHIBIT 3

---

## Declaration of Aaron Carranza

---

I, Aaron Carranza, declare as follows:

1.  My name is Aaron Carranza, P.E., CFM. I am over 21 years of age and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are true and correct to the best of my knowledge.

2.  I am the Regulatory Division Director of the North Dakota Department of Water Resources and have served in that role since July 1, 2017.  I am a Certified Floodplain Manager and a Professional Engineer registered in the State of North Dakota.  My responsibilities include oversight of the State program managers for FEMA's Community Assistance Program–State Support Services Element and FEMA's Risk Mapping, Assessment, and Planning programs.  These programs assist North Dakota communities in practicing sound floodplain management through the National Flood Insurance Program (NFIP), as well as collaboratively develop updated FEMA regulatory mapping products. My professional responsibilities require an understanding of FEMA's Risk Rating 2.0 and its impacts within the State.

3.  North Dakota is prone to flooding because within its boundaries there are: (1) the Missouri River, coupled with Garrison Dam, which impounds the Missouri River and creates Lake Sakakawea, the nation's third largest man-made lake; (2) the Red River of the North, which flows north into Canada and experiences unique snowmelt-driven flood events in the spring; (3) Devils Lake, a closed-basin lake that has been naturally rising in elevation since the early 1990s; (4) the Mouse River, which flows into North Dakota from Canada and gets smaller even while the contributing area increases prior to reentering Canada; and (5) several other rivers and streams that can seasonally flood. North Dakota communities are also prone to flooding, as the agricultural nature of the economy at the time of settlement and statehood necessitated that many of its communities were established in close proximity to flowing waters. Approximately 2.5% (1,800 square miles) of North Dakota is in a digital NFIP Flood Insurance Rate Map (FIRM) Special Flood Hazard Area (SFHA).  North Dakota also has statewide Base Level Engineering, which accounts for rainfall-driven flooding that FEMA does not.  That Base Level Engineering reflects that approximately 17.5% (12,800 square miles) of North Dakota has a risk of flooding akin to the NFIP SFHA.

4.  Each year since 2009, North Dakota has experienced an average of 1 presidential flood disaster declaration.

5.   The average annual cost of flood damage tied to a presidential flood disaster declaration in North Dakota, excluding local/state/federal staff support time, is $40.9 million.

6.   North Dakota expends an average of $2.7 million a year in flood recovery projects.

7.   To promote flood recovery within its borders, North Dakota: (1) has developed and codified floodplain development standards more stringent than FEMA's minimum standards; (2) frequently engages with participating floodplain managers to support their local administration of the NFIP; (3) facilitates federal grant programs, such as Hazard Mitigation Grant, Pre-Disaster Mitigation Competitive Grant, and Flood Mitigation Assistance Grant programs; and (4) provides up to 60% cost-share grant funding for flood risk reduction projects, resulting in hundreds of millions of dollars of State investment to support local community efforts, including support for projects to reduce flood risk in the communities of Fargo and Minot that will total over $4 billion.

8.   North Dakota expects to spend at least $115.7 million over the next two years on projects like the ones discussed in paragraph 7 above.

9.   To understand and mitigate flood risk within its borders, North Dakota has developed a platform for elected officials and property owners to evaluate their flood risk using both the digitized SFHA and Base Level Engineering through what is known as the North Dakota Risk Assessment Mapservice[1].   This platform helps government officials and property owners make informed decisions based on a more robust understanding of flood risk within the State.

10.   Flood insurance is another important tool for protecting North Dakota's residents and their homes, businesses, and possessions.

11.   Because most homeowners' insurance policies do not cover flood damage, homeowners need a separate flood insurance policy to protect against flood damage to their property and its contents.

12.   The NFIP is the flood insurer of last resort. FEMA manages the NFIP.

13.   The NFIP provides flood insurance to property owners, renters, and businesses. FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[2] The federal government

---

[1] ndram.dwr.nd.gov
[2] https://www.fema.gov/flood-insurance.

also requires that homes and businesses in high-risk flood areas with mortgages from government-backed lenders must have flood insurance.

14.  NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities in US States and Territories.[3] A NFIP community "is a governmental body with the statutory authority to enact and enforce development regulations."[4]

15.  There are 337 NFIP communities in North Dakota. Across the State as a whole, there are 5,832 NFIP policies in effect.

16.  To become an NFIP community, these respective communities' local governments in North Dakota had to enact and implement floodplain management regulations aimed at mitigating flooding effects through specific land use development standards, and the NFIP community must enforce those standards.

17.  Additionally, North Dakota has codified a floodplain development standard of Base Flood Elevation (BFE) plus 1 foot, exceeding the NFIP minimum standard. The local governments' floodplain management regulations must satisfy State and NFIP requirements.

18.  NFIP communities in North Dakota have committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations the local government was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise FIRMs; and (e) to help residents obtain information about flood hazards, flood insurance, and proper construction methods.

19.  In order to unlock access to federally subsidized NFIP insurance to its inhabitants, NFIP communities in North Dakota had to continually adhere to FEMA's requirements, regardless of whether those requirements reflect the policies that those communities—without the promise of affordable flood insurance from FEMA—would have chosen to protect themselves from flooding risks.

20.  One method for reducing floods across North Dakota is elevating homes and businesses, which FEMA previously used to take into account when setting NFIP insurance rates.

21.  Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood reflected in the FIRMs as the basis for rating insurance policies

---

[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.

under the NFIP. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year, referred to as the "100-year flood." There is a 26% chance the 1% AEP will occur at least once over the life of a standard 30-year mortgage.

22.     FEMA develops FIRMs to identify the AEP flood for each flood zone that is mapped as the SFHA.  Most newer FIRMs identify a specific elevation tied to the SFHA, known as the BFE.

23.     Before Risk Rating 2.0, the FIRM was used by FEMA to set insurance rates with publicly available insurance rating tables.

24.     For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

25.     Since 1981, local governments across North Dakota adopted FEMA's FIRMs, and in 1999, North Dakota codified the requirements that residential buildings must be built at least 1 foot above the BFE, and that nonresidential buildings must either be built at least 1 foot above the BFE or be equivalently floodproofed.

26.     One benefit of local governments in North Dakota adopting FEMA's FIRMs and requiring buildings to be built at least 1 foot above the BFE was to take advantage of FEMA's grandfathering policy. FEMA's grandfathering policy protected those who built in the communities from rate increases tied to future FIRM changes if they built in accordance with the FIRM's requirements at the time of construction.

27.     However, despite the grant programs and reliance on FIRMs by local governments throughout North Dakota, under Risk Rating 2.0, flood risk mitigation measures like elevating a structure to 1 foot above the BFE appear to have only a negligible effect on insurance rates.

28.     Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for the NFIP communities in North Dakota, single family homeowners of North Dakota still wind up paying on average $544 more per year for full actuarial rating than the current average annual premium.[5]  Unlike the abandoned grandfathering policy, the Community Rating System discounts do not stop the rates themselves from increasing on the glide path to full actuarial risk rating.

---

[5] https://www.fema.gov/flood-insurance.

4

Additionally, the Community Rating System discounts do not apply until a policy has reached full actuarial rating.

29.     On average, current single family home policies in North Dakota will increase approximately 68% to full actuarial risk rating.[6]

30.     These rate increases harm all affected property owners, but they are likely to pose a particular hardship to low- and moderate-income property owners and their families.

31.     As rates increase, it is possible that some homeowners, business owners, and renters in North Dakota will be priced out of their properties and forced to move outside of their current communities.

32.     Risk Rating 2.0 fails to account for all of North Dakota's flood reduction successes due to the disconnection of FEMA recommended mitigation measures and how those same measures are evaluated under Risk Rating 2.0. One plausible explanation for why Risk Rating 2.0 is increasing rates for North Dakota's levee-protected areas and elevated properties is that the methodology used in setting rates now differs from the methodology on how flood risk is identified on FIRMs. For example, FIRMs only account for water feature (river/lake/ocean) sourced flooding, while Risk Rating 2.0 also incorporates rainfall-driven overland flooding in its flood risk profile.

33.     But FEMA's refusal to reveal Risk Rating 2.0's methodology, despite numerous requests from all levels of state government, makes it impossible for North Dakota and its local governments to determine the full extent of comprehensive flood risk within North Dakota or develop a comprehensive plan for mitigation activity investment. This lack of transparency hinders the ability of North Dakota and its local governments to prepare for and mitigate the full flood risk perspective that Risk Rating 2.0 is using to develop insurance rates.

34.     That lack of transparency also harms North Dakota and its local governments' ability to work with FEMA as participating communities and collaborating partners to ensure Risk Rating 2.0 is using accurate information.  State and local leadership cannot work with FEMA to identify and correct issues within Risk Rating 2.0 if FEMA's methodology remains shrouded under the veil of "proprietary data."

35.     North Dakota has experienced a policy count drop of approximately 60% since the roll out of Risk Rating 2.0, and along with it, a decrease in flood insurance coverage of over $2 billion.  This decrease in flood insurance coverage will likely

---

[6] https://www.fema.gov/flood-insurance.

make recovery from future flood events in North Dakota much more difficult for property owners, local communities, and the State.

I declare, under penalty of perjury under the law of North Dakota, that the foregoing is true and correct to the best of my knowledge.

Executed in Bismarck, Burleigh County, North Dakota on May 30, 2023.


_____

Aaron Carranza, P.E., CFM
Regulatory Division Director
North Dakota Department of Water
Resources