# EXHIBIT 9

## Declaration of Mark Black

1. My name is Mark Black. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of the Caldwell Parish Police Jury and have served in that role since January 1, 2021.

3. The Caldwell Parish Police Jury is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. The Caldwell Parish Police Jury is located in Columbia, LA, measures 541 square miles, and is within 1 mile of the Ouachita River.

5. The Caldwell Parish is prone to flooding because the Ouachita River runs through the parish from North to South. The Boeuf River forms the eastern border of Caldwell Parish. Along with Castor Creek, Beaucoup Creek, Bayou Lafourche, Black Bayou and Hurricane Creek that will all flood with heavy rainfall.

6. Although Caldwell Parish does not necessarily experience annual flooding, the Parish does experience flooding periodically due to heavy rain or a hurricane. Because the chances of flooding are not zero, many residents still opt to obtain flood insurance.

7. The Caldwell Parish Police Jury has authority to mitigate its flood risk and remediate flood damage. Specifically, the Caldwell Parish Police Jury has authority to levy and collect taxes, charge for license, permit fees and borrow money if necessary to govern Caldwell Parish.

8. To promote flood recovery within its borders, the Caldwell Parish Police Jury has a Base Flood Elevation in place. The Parish requires that facilities/homes be protected against flood damage at the time of initial construction. The Caldwell Parish Police Jury along with the Drainage Board control the alteration of natural floodplains, streams and creeks. The Police Jury also prevents or regulated the construction of flood barriers which will unnaturally divert flood water or which may increase flood hazards to other lands.

9. Those efforts include working with the Caldwell Parish Drainage Board to improve the water flow throughout our parish.

10. Flood insurance is another important tool for protecting Caldwell Parish's residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency

Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

11.     Because most homeowners' insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

12.     The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

13.     "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

14.     NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

15.     Caldwell Parish is an NFIP community.

16.     To become an NFIP community, Caldwell Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] The Parish requires a permit and enforces all new structures are in compliance with our regulations.

17.     Caldwell Parish floodplain management regulations must satisfy state law as well as NFIP requirements.

18.     As an NFIP community, Caldwell Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations the Caldwell Parish Police Jury  was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.

and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

19. FEMA reports that the quid pro quo arrangement between communities like the Caldwell Parish Police Jury that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

20. One tried-and-true method for reducing floods in Caldwell Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

21. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

22. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

23. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

24. For decades, the Caldwell Parish and other parishes across Louisiana adopted FEMA's Rate Maps and required buildings to be built at or

25. One reason the Caldwell Parish Police Jury adopted FEMA's Rate Maps [and/or] required buildings to be built at or at least the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in the Caldwell Parish Police Jury. FEMA's grandfathering policy protected those who built in Caldwell Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

26. In my estimation, all of Caldwell Parish homeowners and business owners have relied on FEMA's advice to elevate their homes and businesses in accordance with FEMA's Rate Maps, FEMA's grandfathering policy, and Ordinance # 12-001

27. Despite the Caldwell Parish Police Jury's reliance on FEMA's Rate Maps and grandfathering policy, as well as the success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears

3

to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

28.    Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for the Caldwell, residents of the Caldwell Parish still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of Caldwell Parish pay higher rates under Risk Rating 2.0.

29.    The Caldwell Parish Police Jury's flood mitigation efforts have successfully reduced flooding.

30.    Despite Caldwell Parish's reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

31.    I estimate those properties to make up approximately 35% of all properties in Caldwell Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

32.    Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

33.    These rate increases harm all property owners, but they of course pose a particular hardship to low- and moderate-income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low- and moderate-income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

34.    As rates increase, many homeowners, business owners, and renters in Caldwell Parish are likely to be priced out of their properties and forced to move to out of

4

the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

35.    And by creating a surplus of available property, this exodus from Caldwell Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

36.    Moreover, even if no one were to leave Caldwell Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

37.    This reduction in tax revenue will inhibit Caldwell Parish's ability to protect its residents and their property. This would be tragic given the proven efficacy of Caldwell Parish's flood mitigation efforts.

38.    Risk Rating 2.0 apparently fails to account for all of Caldwell Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease Caldwell Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

39.    The only logical explanation for why Risk Rating 2.0 is increasing rates for Caldwell Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

40.    But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for Caldwell Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

41.    That lack of transparency harms Caldwell Parish 'ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Columbia, Louisiana, this 23rd day of May, 2023.

Mark Black

Caldwell Parish Police Jury, President