# EXHIBIT 11

## Declaration of Scott Davidson

1. My name is Scott Davidson. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of the Claiborne Parish and have served in that role since January 14, 2009.

3. Claiborne Parish is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. Claiborne Parish is located in north central Louisiana, measures 767 square miles, and contains flood prone areas around Lake Claiborne, Darbonne Bayou, Middle Fork Bayou and Dorcheat Bayou. Claiborne Paris is approximately 375 miles from the Gulf of Mexico.

5. Claiborne Parish]is prone to flooding because of its topography which results in flash flooding and due to the fact approximately 1/3 of the parish homes are around the borders of Lake Claiborne which is subject to flash flooding.

6. Each year, Claiborne experiences an average of two (2) flooding events.

7. The average annual cost of flood damage in Claiborne is $250,000.

8. The Claiborne Parish Police Jury has authority to mitigate its flood risk and remediate flood damage. Specifically, the Police Jury has over fifty different functions and powers ranging from road maintenance to health units. The Police Jury has specific authority over flood plain enforcement within Claiborne Parish.

9. To promote flood recovery within its borders, the Claiborne Parish has established a flood plain ordinance and strictly enforces that ordinance within the boundaries of the Parish to the best of its ability.

10. The Claiborne Parish Police Jury expends an average of $30,000 a year on flood recovery projects like the ones described above.

11. Those efforts include the enforcement of flood plain management & applicable building codes within the parish and an aggressive right-of-way program (ditches) in known flood prone areas.

12. The Claiborne Parish Police Jury spends approximately $50,000 a year on flood mitigation projects like the ones discussed above.

13. Flood insurance is another important tool for protecting the Claiborne Parish's residents and their most important financial assets—their home, business, and

possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

14. Because most homeowners' insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

15. The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

16. "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

17. NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

18. Claiborne Parish is an NFIP community.

19. To become an NFIP community, the Claiborne Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] Claiborne Parish adopted its Flood Ordinance No. 653 on May 9, 1991.

20. Claiborne Parish's floodplain management regulations must satisfy state law as well as NFIP requirements.

21. As an NFIP community, Claiborne Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations Claiborne Parish was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.

revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

22. FEMA reports that the quid pro quo arrangement between communities like Claiborne Parish that participate in NFIP floodplain management, a prerequisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

23. One tried-and-true method for reducing floods in Claiborne Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

24. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

25. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

26. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk of having to pay claims and, therefore, the lower the insurance rate.

27. For decades, Claiborne Parish and other parishes across Louisiana adopted FEMA's Rate Maps and required buildings to be built at least 1 foot above FEMA's BFE. Claiborne Parish adopted its Ordinance No. 653 on May 9, 1991, which adopted FEMA's Rate Maps and required building at least 1 foot above the BFE.

28. One reason Claiborne Parish adopted FEMA's Rate Maps and required buildings to be built at least 1 foot above the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in Claiborne Parish. FEMA's grandfathering policy protected those who built in the Claiborne Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

29. In my estimation, since 2006 approximately 70% of homeowners and new business owners have relied on FEMA's advice to elevate their homes and businesses in accordance with FEMA's Rate Maps, FEMA's grandfathering policy, and Ordinance No. 653 when applicable.

30. FEMA, the Department of Housing and Urban Development (HUD), and the State offer grants for elevating homes and businesses.

31. Claiborne Parish administers those grant programs.

32. Although, less than 1% of home and business owners in Claiborne Parish have received elevation grants, these mitigation efforts have helped protect against flooding.

33. Despite the grant programs, Claiborne Parish's reliance on FEMA's Rate Maps and grandfathering policy, and Claiborne Parish's success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

34. Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for Claiborne Parish, residents of Claiborne Parish still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of the Claiborne Parish pay higher rates under Risk Rating 2.0. In the last five (5) years residents have paid on average over a 65% increase since 2018 on flood insurance premiums.

35. Claiborne Parish's flood mitigation efforts have successfully reduced flooding. For example, in the spring floods of 2016 only eight (8) homes on Lake Claiborne experienced water within the home – all eight were grandfathered in under the Parish's Ordinance and BFE requirements. No new homes or businesses received flood damage from this event.

36. Despite Claiborne Parish's dramatic reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for all properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

37. I estimate those properties make up approximately 80% of all properties in Claiborne Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

38. Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

39. These rate increases harm all property owners, but they of course pose a particular hardship to low- and moderate-income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low- and moderate-income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

40. As rates increase, many homeowners, business owners, and renters in Claiborne Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

41. And by creating a surplus of available property, this exodus from Claiborne Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

42. Moreover, even if no one were to leave Claiborne Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

43. This reduction in tax revenue will inhibit Claiborne Parish's ability to protect its residents and their property. This would be tragic given the proven efficacy of Claiborne Parish's flood mitigation efforts.

44. Risk Rating 2.0 apparently fails to account for all of Claiborne Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease Claiborne Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

45. The only logical explanation for why Risk Rating 2.0 is increasing rates for Claiborne Parish properties is that the methodology used in setting rates must be flawed.

46. But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for

       Claiborne Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

47. That lack of transparency harms Claiborne Parish's ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Homer, Louisiana, this 22nd day of May 2023.

                                                 Scott Davidson, President CPPJ