# EXHIBIT 15

## Declaration of James H. Harris, Franklin Parish Police Jury President:

1. My name is James H. Harris, I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of the Franklin Parish Police Jury and have served in that role since 1/9/2020.

3. The Franklin Parish Police Jury is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. Franklin Parish is located in Northeast Louisiana, approximately 35 miles west from the Mississippi River which serves as the border between Louisiana and Mississippi. Franklin's Tensas River, Big Roaring Bayou, and Bayou Macon form the watery eastern border with Tensas and Madison parishes. Big Creek lies between Franklin and Richland to the North and west. And the Boeuf River forms the western border with Caldwell Parish. To the south, Deer Creek and Boeuf River form the border with Catahoula Parish. Franklin Parish covers an area of about 635 square miles.

5. The population of Franklin Parish is 19,774 based on the 2020 census with a decrease of 5.02% from April 1, 2010, to April 1, 2020."

6. Residential, commercial, and industrial areas account for only 5% of the parish's land use. Agricultural land at 277,142 acres is the largest category accounting for 68% of land in the parish. The parish also consists of wetlands (16%), forested areas (8%), and water areas (2%).

7. Elevations in Franklin Parish range from less than 35 feet (NAVD88) to over 135 feet (NAVD88). The highest elevation in the parish is approximately 135 feet (NAVD88), located in the in the northeast section of the unincorporated area of the parish. These higher elevations are not representative of the elevations throughout the parish. The incorporated areas range in elevation from an average of 69 to 75 feet (NAVD88) with the incorporated area of Baskin having an average elevation of approximately 72 feet (NAVD88), Gilbert having an average elevation of 75 feet (NAVD88), Winnsboro having an average elevation of 69 feet (NAVD88), and Wisner has an average elevation of 75 feet (NAVD88).

8. In Franklin Parish, all types of flooding events have been observed except for coastal flooding. Ponding, flash flood, and urban flooding are considered to be flooding as a result of storm water from heavy precipitation thunderstorms

9. The annual flood probabilities for Franklin Parish are: Unincorporated [cities/towns?] have a 60% chance; Baskin has a 50% chance; Gilbert has a 33 % chance; Winnsboro has a 53% chance; and Wisner has a 33% chance.

10. The number of repetitive loss structures in Franklin Parish are 28, of which all are residential. The total claims for these 28 structures are 92, with the average claim paid being $22,042. The Franklin Parish Police Jury participated in the FEMA Buyout Program resulting in the majority of those repetitive loss structures now being owned by the Police Jury to be used solely as green spaces.

11. Flood insurance statistics indicate that Franklin Parish has 341 flood insurance policies with the NFIP, with total annual premiums of $266,313. Franklin Parish and the jurisdictions of Baskin, Gilbert, Winnsboro, and Wisner are all participants in the NFIP. Franklin Parish and all of its jurisdictions will continue to adopt and enforce floodplain management requirements, including regulating new construction Special Flood Hazard Areas, and will continue to monitor activities including local requests for new map updates.

12. The number of vulnerable populations susceptible to a 100-year flood event, out of 20,767, is 6,175 (located in a hazard area), which is 29.7%.

13. The Franklin Parish Police Jury has authority to mitigate its flood risk and remediate flood damage. Specifically, the Franklin Parish Police Jury has authority per RS 33:1236(38)(a) To pass zoning ordinances, subdivision regulations, building codes, health regulations and other applications and extensions of the normal police power, to provide standards and effective enforcement provisions for the prudent use and occupancy of flood-prone and mud-slide areas. (b) The provisions of Subparagraph (a) of this paragraph shall apply only insofar as is necessary for a parish to use such powers and authority to qualify for the National Flood Insurance Act of 1968, as amended, 42 U.S.C. 4001 to 4127 as enforced under Parts 1901 to 1915.3 of Subchapter B of Title 24 of the Code of Federal Regulations.

14. The amount that Franklin Parish spends on flood recovery projects has steadily decreased year after year because of the success of the Franklin Parish Police Jury's flood mitigation efforts.

15. Those efforts include the adoption of ordinances for flood damage prevention, construction of subdivisions, impeding of parish drainage and a policy for the issuance of building permits.

16. Flood insurance is another important tool for protecting Franklin Parish residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

17. Because most homeowners' insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

18. The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

19. "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

20. NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

21. Franklin Parish is an NFIP community.

22. To become an NFIP community, Franklin Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7]
    a. **Sec. 110-67. Specific standards.**
    In all areas of special flood hazards where base flood elevation data has been provided as set forth in (i) Article 3, Section B, (ii) Article 4, Section B (8), or (iii) Article 5, Section C (3), the following provisions are required:
    (1) **Residential Construction** - new construction and substantial improvement of any residential structure shall have the lowest floor (including basement), elevated

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.

two **(2)** feet above the base flood elevation. A registered professional engineer, architect, or land surveyor shall submit a certification to the Floodplain Administrator that the standard of this subsection as proposed in Article 4, Section C (1) a., is satisfied.

(2) **Nonresidential Construction** - new construction and substantial improvements of any commercial, industrial or other nonresidential structure shall either have the lowest floor (including basement) elevated two **(2)** feet above the base flood level or together with attendant utility and sanitary facilities, be designed so that below the base flood level the structure is watertight with walls substantially impermeable to the passage of water and with structural components having the capability of resisting hydrostatic and hydrodynamic loads and effects of buoyancy. A registered professional engineer or architect shall develop and/or review structural design, specifications, and plans for the construction, and shall certify that the design and methods of construction are in accordance with accepted standards of practice as outlined in this subsection. A record of such certification which includes the specific elevation (in relation to mean sea level) to which such structures are flood proofed shall be maintained by the Floodplain Administrator.

(3) **Enclosures** - new construction and substantial improvements, with fully enclosed areas below the lowest floor that are usable solely for parking of vehicles, building access or storage in an area other than a basement and which are subject to flooding shall be designed to automatically equalize hydrostatic flood forces on exterior walls by allowing for the entry and exit of floodwaters. Designs for meeting this requirement must either be certified by a registered professional engineer or architect or meet or exceed the following minimum criteria:

(a) A minimum of two openings on separate walls having a total net area of not less than 1 square inch for every square foot of enclosed area subject to flooding shall be provided.

(b) The bottom of all openings shall be no higher than 1 foot above grade.

(c) Openings may be equipped with screens, louvers, valves, or other coverings or devices provided that they permit the automatic entry and exit of floodwaters.

(4) **Manufactured Homes -**

(a) Require that all manufactured homes to be placed within Zone A on a community's FHBM or FIRM shall be installed using methods and practices which minimize flood damage. For the purposes of this requirement, manufactured homes must be elevated and anchored to resist flotation, collapse, or lateral movement. Methods of anchoring may include, but are not limited to, use of over-the-top or frame ties to ground anchors. This requirement is in addition to applicable State and local anchoring requirements for resisting wind forces.

(b) Require that manufactured homes that are placed or substantially improved within Zones A1-30, AH, and AE on the community's FIRM on sites (i) outside of a manufactured home park or subdivision, (ii) in a new manufactured home park or subdivision, (iii) in an expansion to an existing manufactured home park or subdivision, or (iv) in an existing manufactured home park or subdivision on which a manufactured home has incurred "substantial damage" as a result of a flood, be elevated on a permanent foundation such that the bottom of the longitudinal structural "I" beam of the manufactured home is elevated at least one foot (1) above the base flood elevation with the bottom of the base floor required to be two feet **(2)** above base flood elevation and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

(c) Require that manufactured homes be placed or substantially improved on sites in an existing manufactured home park or subdivision with Zones A1-30, AH and AE on the community's FIRM that are not subject to the provisions of paragraph (4) of this section be elevated so that either:

(i) the bottom of the longitudinal structural I beam of the manufactured home is one (1) ft above the base flood elevation, or

(ii) the manufactured home chassis is supported by reinforced piers or other foundation elements of at least equivalent strength that are no less than 36 inches in height above grade and be securely anchored to an adequately anchored foundation system to resist flotation, collapse, and lateral movement.

(5) **Recreational Vehicles** - Require that recreational vehicles placed on sites within Zones A1-30, AH, and AE on the community's FIRM either (i) be on the site for fewer

3

than 180 consecutive days, or (ii) be fully licensed and ready for highway use, or (iii) meet the permit requirements of Article 4, Section C (1), and the elevation and anchoring requirements for "manufactured homes" in paragraph (4) of this section. A recreational vehicle is ready for highway use if it is on its wheels or jacking system, is attached to the site only by quick disconnect type utilities and security devices, and has no permanently attached additions.

23. The Franklin Parish floodplain management regulations must satisfy state law as well as NFIP requirements.

24. As an NFIP community, the Franklin Parish Police Jury has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations the Franklin Parish Police Jury was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

25. FEMA reports that the quid pro quo arrangement between communities like Franklin Parish that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

26. One tried-and-true method for reducing floods in Franklin Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

27. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

28. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

29. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

30. For decades, Franklin Parish and other parishes across Louisiana adopted FEMA's Rate Maps and required buildings to be built at least 1 foot above FEMA's BFE <u>as stated above in declaration statement #22 of this document</u>.

31. One reason Franklin Parish adopted FEMA's Rate Maps and required buildings to be built at least 2 foot above the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in Franklin Parish. FEMA's grandfathering policy protected those who built in Franklin Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

32. Despite the grant programs, Franklin Parish's reliance on FEMA's Rate Maps and grandfathering policy, and Franklin Parish's success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

33. Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for Franklin Parish, residents of Franklin Parish still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the

       rates themselves from increasing. So even with the community rating system discounts, members of Franklin Parish pay higher rates under Risk Rating 2.0.

34. Despite Franklin Parish's dramatic reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for all properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

35. The table below shows estimated future impacts to structures and people located within a Hazard Area for 2020-2025-2030 in Franklin Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

| Hazard / Impact | Total in Parish (2020) | Hazard Area (2020) | Hazard Area (2025) | Hazard Area (2030) |
|---|---|---|---|---|
| **Flood Damage** | | | | |
| Structures | 8,868 | 2,637 | 2,615 | 2,589 |
| # of People | 19,794 | 5,886 | 5,915 | 5,951 |
| **Tropical Cyclone Damage** | | | | |
| Structures | 8,868 | 8,868 | 8,794 | 8,706 |
| # of People | 19,794 | 19,794 | 19,893 | 20,013 |

36. Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

37. These rate increases harm all property owners, but they of course pose a particular hardship to low- and moderate-income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low- and moderate-income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

38. As rates increase, many homeowners, business owners, and renters in Franklin Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

39. And by creating a surplus of available property, this exodus from Franklin Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

40. Moreover, even if no one were to leave Franklin Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

41. This reduction in tax revenue will inhibit Franklin Parish's ability to protect its residents and their property. This would be tragic given the proven efficacy of Franklin Parish's flood mitigation efforts.

42. Risk Rating 2.0 apparently fails to account for all of Franklin Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease Franklin Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

43. The only logical explanation for why Risk Rating 2.0 is increasing rates for Franklin Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

44. But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for Franklin Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

45. That lack of transparency harms Franklin Parish's ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Winnsboro, Louisiana, this 30th day of May 2023.

*James H. Harris*

James H. Harris, President
Franklin Parish Police Jury