# EXHIBIT 20

## Declaration of Madison Parish

1. My name is Jane Sanders. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of the Madison Parish Police Jury.

3. The Madison Parish Police Jury is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. Madison Parish Police Jury is located in Tallulah, LA, measures 651 square miles, and is within 21 of the Mississippi River.

5. Madison Parish is prone to flooding because (1) proximity to the Mississippi River; (2) low elevation; (3) 10 percentage of Madison Parish that is located in Special Flood Hazard Areas; and (4) 10 percentage of businesses and houses in Madison Parish are located in Special Flood Hazard Areas;

6. Each year, Madison Parish experiences an average of 1-5 flooding events.

7. The average annual cost of flood damage in the Parish is $2,862,546.00.

8. Madison Parish has authority to mitigate its flood risk and remediate flood damage. Specifically, the governing body of the Parish establishes goals and objectives to direct the Parish growth and development. Oversees Parish operations to promote the Health, Safety and Welfare of citizens and business in the Parish. Approves budgets and millage rates which funds the operations of the office and departments under the Jury's jurisdiction. Madison operates under the Police Jury System.

9. To promote flood recovery within its borders, the Madison participates in the Homeland Security and Emergency Preparedness Programs, Community Development Block Grant-Disaster Recovery, Food Insurance, Hometown Revitalization Programs Small Business Loans, and Resilient Communities Infrastructure Programs.

10. The Parish expends an average of $1,800,500.00 a year in flood recovery projects like the ones described above.

11. Those efforts include putting ordinances in place to regulate reducing flood losses. Also, restricting or prohibiting uses that are dangerous to health, safety or property in times of flood, or causes increases in flood heights or velocities; control the alteration of natural floodplains, stream channels and natural protective barriers.

1

12. The Parish spends approximately $50,000.00 a year on flood mitigation projects like the ones discussed above.

13. Flood insurance is another important tool for protecting Madison Parish's residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

14. Because most homeowners' insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

15. The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

16. "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

17. NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

18. Madison Parish is an NFIP community.

19. To become an NFIP community, Madison Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] The Parish requires a permit and enforces all new structures are in compliance with our regulations.

20. Madison Parish floodplain management regulations must satisfy state law as well as NFIP requirements.

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.

21. As an NFIP community, Madison Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations the Parish was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

22. FEMA reports that the quid pro quo arrangement between communities like the Madison Parish Police Jury that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

23. One tried-and-true method for reducing floods in Madison Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

24. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

25. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

26. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

27. For decades, Madison Parish and other parishes across Louisiana adopted FEMA's Rate Maps and/or required buildings to be built at least 1 foot above FEMA's BFE.

28. One reason the Madison Parish adopted FEMA's Rate Maps and/or required buildings to be built at least 1 foot above the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in the Madison Parish. FEMA's grandfathering policy protected those who built in Madison Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

29. In my estimation, all of Madison Parish homeowners and business owners have relied on FEMA's advice to elevate their homes and businesses in accordance with FEMA's Rate Maps, FEMA's grandfathering policy, and Ordinance # 12-001.

30. In my estimation, Madison Parish spends $30,000 each year to educate parish residents about those grant programs, process grant applications, distribute grant funds, and monitor and enforce grantees' compliance with the requirements of those programs.
    If a recipient of a FEMA/HUD elevation grant fails to comply with the program's requirements, the Parish must repay the value of that grant to FEMA/HUD. If a recipient of a state elevation grant fails to comply with the requirements of the State's grant program, the [recipient] must repay the value of that grant to the State.

31. Despite the grant programs, Madison Parish reliance on FEMA's Rate Maps and grandfathering policy, and the Parish's success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

32. Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for Madison Parish, residents of Madison Parish still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of the Madison Parish pay higher rates under Risk Rating 2.0.

33. Despite Madison Parish's dramatic reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for all properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

34. I estimate those properties to make up approximately 35% of all properties in Madison Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

35. Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

4

36. These rate increases harm all property owners, but they of course pose a particular hardship to low- and moderate-income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low- and moderate-income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

37. As rates increase, many homeowners, business owners, and renters in Madison Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

38. And by creating a surplus of available property, this exodus from Madison Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

39. Moreover, even if no one were to leave Madison Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

40. This reduction in tax revenue will inhibit Madison Parish's ability to protect its residents and their property.

41. Risk Rating 2.0 apparently fails to account for all of Madison Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease Parish's tax revenues and inhibit the Madison Parish's ability to protect its residents and their property.

42. The only logical explanation for why Risk Rating 2.0 is increasing rates for Madison Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

43. But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for

Madison Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

44. That lack of transparency harms Madison Parish's ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

<u>I declare under penalty of perjury that the foregoing is true and correct</u>

Executed in Madison, Louisiana, this 26th day of May, 2023

*[signature]*

Jane Sanders

Madison Parish Police Jury, President