# EXHIBIT 23

STATE OF LOUISIANA
PARISH OF ST. BERNARD

## DECLARATION OF ST. BERNARD PARISH

1. My name is Guy McInnis. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of St. Bernard Parish and have served in that role since January 2016.

3. St. Bernard Parish is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. St. Bernard Parish measures 2,158 square miles, and is bordered by the Mississippi River, Chandelier Sound and other major bodies of water.

5. St. Bernard Parish is prone to flooding because (1) proximity to the coast, the Mississippi River, Lake Ponchartrain, and Lake Borgne; (2) proximity to hurricane zone; (3) low elevation; (4) 99% of St. Bernard is located in Special Flood Hazard Areas; (5) 19% of businesses and houses in St. Bernard are located in Special Flood Hazard Areas.

6. Each year, St. Bernard Parish experiences an average of 10 flooding events.

7. The average annual cost of flood damage in St. Bernard Parish is $34,130,102.00.

8. St. Bernard Parish has authority to mitigate its flood risk and remediate flood damage. Specifically, St. Bernard has authority under its Home Rule Charter and Parish Code of Ordinances, Chapter 10.5- Flood Damage Prevention adopted 11-19-2013. https://library.municode.com/la/st._bernard_parish_council/codes/code_of_ordinances?nodeId=CH10.5FLDAPR

9. To promote flood recovery within its borders, St. Bernard Parish has adopted the 2014 Comprehensive Plan, 2015 Integrated Water Resource Management Plan to guide development and recovery projects, repaired drainage lines and pump stations and the Army Corps of Engineers completed the Hurricane & Storm Damage Risk Reduction System.

10. St. Bernard Parish has expended on average, approximately 12 million dollars a year for the past 16 years on flood recovery projects. While the average is

1

based on a total spent over the past 16 years, the amount that St. Bernard spends on flood recovery projects has steadily decreased year after year because of the success of the St. Bernard Parish's flood mitigation efforts.

11. Those efforts include adopting the 2014 Comprehensive Plan and the 2015 Integrated Water Resource Management Plan to guide development and parish mitigation projects, adopted higher standards such as requiring freeboard throughout the parish, created a resilience district in a low-lying area that established building requirements to reduce flood risk, acquired land for park expansions which restricted development and repaired drainage lines and pump stations.

12. St. Bernard has expended on average, approximately 12 million dollars a year for the past 16 years on flood recovery projects.

13. Flood insurance is another important tool for protecting the Parish's residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

14. Because homeowner's insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

15. The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

16. "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in Special Flood Hazard Areas with mortgages from government-backed lenders to have flood insurance.

17. NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.

18. St. Bernard Parish is an NFIP community.

19. To become an NFIP community, the Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] https://library.municode.com/la/st._bernard_parish_council/codes/code_of_ordinances?nodeId=CH10.5FLDAPR

20. St. Bernard Parish's floodplain management regulations must satisfy state law as well as FEMA NFIP requirements.

21. As an NFIP community, St. Bernard Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations St. Bernard Parish was required to meet the minimum requirements to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction; and (f) to report all floodplain improvement projects each year to aid in the improvement of the Community Rating System (CRS) Credits.

22. FEMA reports that the quid pro quo arrangement between communities like St. Bernard Parish that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

23. One tried-and-true method for reducing floods in St. Bernard Parish and across Louisiana is elevating homes and businesses, which has become a lesser priority for FEMA NFIP when assessing flood insurance rates.

24. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

25. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

26. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The

---

[7] https://www.fema.gov/flood-insurance.

3

higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

27. For decades, St. Bernard Parish and other parishes across Louisiana adopted FEMA's Rate Maps and/or required buildings to be built at least 1 foot above FEMA's BFE. First map was in 1970 and newest map 12/21/2017. 1.5 feet above BFE in 11-19-2013.

28. One reason St. Bernard Parish adopted FEMA's Rate Maps and/or required buildings to be built at least 1 foot above the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in St. Bernard. FEMA's grandfathering policy protected those who built in St. Bernard from huge rate increases if they built in accordance with the Rate Maps' requirements.

29. Over 90% of the buildings were damaged by Hurricane Katrina. These owners have relied on FEMA's Rate Maps to determine their finished floor elevation (FFE). Since 2013, new buildings have been constructed 1.5' above the required FFE.

30. These projects propose to elevate existing structures within the existing footprint and does not intend to move structures. Existing structures are a mix of construction types ranging from solid brick masonry to wood frame with brick veneer or vinyl siding. Existing foundation systems of the structures is a mix of open or slab-on-grade foundations, all fall within the Special Flood Hazard Area. Once elevated through this program, property owners are required to maintain a flood insurance policy on the elevated structure, in perpetuity. St. Bernard Parish ensures compliance with this regulation through the recordation of FEMA's Model Acknowledgement of Conditions. Structural elevations completed under these projects will meet all requirements of local and state building codes, international building codes, NFIP construction standards, wind speed design codes and ACSE-24-14.

31. St. Bernard Parish administers the programs listed above.

32. In my estimation 25-30 % of home and business owners in St. Bernard Parish have received elevation grants.

33. Since Risk Rating 2.0 went into effect, the number of grant participants has decreased by about 60%. The decision not to elevate leaves parish residents and their property in harm's way and increases the amount the Parish will have to spend on flood recovery. The decision not to elevate a home or business also harms the flood mitigation industry in St. Bernard Parish.

34. In my estimation, the St. Bernard Parish spends $20,000.00 each year to educate parish residents about those grant programs, process grant

4

applications, distribute grant funds, and monitor and enforce grantees' compliance with the requirements of those programs.

35. If a recipient of a Federal elevation grant fails to comply with the program's requirements, the parish must repay the value of that grant to the state and the state to FEMA.

36. Despite the grant programs, St. Bernard's reliance on FEMA's Rate Maps and grandfathering policy, and St. Bernard Parish's success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

37. Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for St. Bernard Parish, residents of St. Bernard still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of St. Bernard Parish pay higher rates under Risk Rating 2.0.

38. St. Bernard Parish's flood mitigation efforts have successfully reduced flooding. These efforts consist of HSDRRS, elevation grants, and new construction elevation.

39. Despite St. Bernard Parish's dramatic reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for all properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

40. I estimate those properties to make up approximately 100% of all properties in St. Bernard Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

41. Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

5

43. These rate increases harm all property owners, but they of course pose a particular hardship to low and moderate income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low and moderate income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

44. As rates increase, many homeowners, business owners, and renters in St. Bernard Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

45. And by creating a surplus of available property, this exodus from St. Bernard Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

46. Moreover, even if no one were to leave St. Bernard Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

47. This reduction in tax revenue will inhibit St. Bernard Parish's ability to protect its residents and their property. This would be tragic given the proven efficacy of St. Bernard Parish's flood mitigation efforts, especially when one contrasts the immense damage inflicted by Hurricane Katrina discussed above with the relatively minimal damage caused by Hurricane Ida after those flood mitigation efforts were made.

48. Risk Rating 2.0 apparently fails to account for all of St. Bernard Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease St. Bernard Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

49. The only logical explanation for why Risk Rating 2.0 is increasing rates for St. Bernard Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

50. But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for St. Bernard Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

51. That lack of transparency harms St. Bernard Parish's ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

"I declare under penalty of perjury that the foregoing is true and correct. Executed in St. Bernard, Louisiana, this 30th day of May 2023."

ST. BERNARD PARISH:

_[signature]_

By: Guy S. McInnis, Parish President