# EXHIBIT 25

## Declaration of Jaclyn Hotard

1.  My name is Jaclyn Hotard. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2.  I am the president of the St. John the Baptist Parish and have served in that role since January 13, 2020.

3.  St. John the Baptist Parish is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4.  St. John the Baptist Parish is located in Southeast Louisiana, measures 214.5 square miles, is bisected by the Mississippi River, borders Lake Pontchartrain, contains both Lake Maurepas and Lac des Allemands, and is 130 miles upriver from the Gulf of Mexico.

5.  Flood insurance is an important tool for protecting St. John the Baptist Parish's residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

6.  Because most homeowners insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

7.  The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

8.  "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

9.  NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.

1

authority to enact and enforce development regulations."[6] A parish can be a community.

10.   St. John the Baptist Parish is an NFIP community.

11.   To become an NFIP community, the Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] [Chapter 107 – Floodplain Regulations]

12.   St. John the Baptist Parish's floodplain management regulations must satisfy state law as well as NFIP requirements.

13.   As an NFIP community, the Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations St. John the Baptist Parish was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

14.   FEMA reports that the quid pro quo arrangement between communities like St. John the Baptist Parish that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

15.   One tried-and-true method for reducing floods in St. John the Baptist Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

16.   Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

17.   Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

18.   For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The

---

[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.

higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

19.    For decades, the Parish and other parishes across Louisiana have adopted FEMA's Rate Maps. The initial identification date was August 9, 1974, the flood hazard boundary map revision date was April 8, 1977, and the initial FIRM effective date was July 16, 1980. The Parish also adopted the updated flood maps dated November 4, 2010. The Parish further participates in the Community Rating System program and is currently a Class 7 community which helps reduce flood insurance rates as well.

20.    One reason the Parish adopted FEMA's Rate Maps was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in the Parish. FEMA's grandfathering policy protected those who built in the Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

21.    Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for the St. John the Baptist Parish residents still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of St. John the Baptist Parish pay higher rates under Risk Rating 2.0.

22.    The Parish reached a Class 7 rating by maintaining elevation certificates, providing map information to residents, conducting outreach projects, providing flood protection information and assistance, promoting flood insurance, preserving open space, administering the building code and regulations, managing stormwater, mitigating buildings, and planning for floodplain management.

23.    Rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

24.    These rate increases harm all property owners, but they of course pose a particular hardship to low and moderate income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low and moderate income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the

3

unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

25.    As rates increase, many homeowners, business owners, and renters in St. John the Baptist Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

26.    And by creating a surplus of available property, this exodus from St. John the Baptist Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

27.    Moreover, even if no one were to leave St. John the Baptist Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

28.    Risk Rating 2.0 apparently fails to account for all of St. John the Baptist Parish flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease the Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

29.    The only logical explanation for why Risk Rating 2.0 is increasing rates for St. John the Baptist Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

30.    FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for St. John the Baptist Parish to determine where the flaws in FEMA's methodology lie.

I declare under penalty of perjury that the foregoing is true and correct. Executed in LaPlace, Louisiana, this 30th day of May 2023.

By: _____

Jaclyn Hotard, Parish President