# EXHIBIT 26

## Declaration of St. Landry

1. My name is Jessie Bellard. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of the St. Landry Parish and have served in that role since 2020.

3. St. Landry Parish Government is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. St. Landry is located in south-central Louisiana, measures 923 square miles, and is within 40 miles of Gulf of Mexico and has an eastern border made by the Atchafalaya River.

5. St. Landry Parish is prone to flooding because over half the parish is located in Special Flood Hazard Areas with 13 major bayous crisscrossing the state and the Atchafalaya River. Over 9,800 acres of the parish's 600,000 acres are water. Average annual rainfall for the area is 62 inches. St. Landry Parish is susceptible to the normal weather dangers, such as thunderstorms and flooding, but due to its location within the state and its proximity to the Gulf of Mexico, the parish is highly susceptible to flooding and tropical cyclones.

6. Each year, St. Landry Parish experiences an average of three flooding events.

7. The average annual cost of flood damage in the St. Landry Parish is $50,000.

8. St. Landry Parish has authority to mitigate its flood risk and remediate flood damage. St. Landry operate under a Home Rule Charter. Below are the ordinance governing the parish in emergency powers.

   https://library.municode.com/la/st._landry_parish/codes/code_of_ordinances?nodeId=PTIC H_ARTIIPACO_S2-13EMOR

9. Those efforts to reduce the risk of flooding include drainage projects, waterway clearing, debris cleanup. The Parish is awaiting grant fund to complete a flood study of the parish waterways.

10. St. Landry Parish spends approximately $3.4 million a year on flood mitigation projects like the ones discussed above.

11. Flood insurance is another important tool for protecting St. Landry Parish residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

---

[1] https://www.fema.gov/flood-insurance.

1

12.   Because most homeowners insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

13.   The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

14.   "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

15.   NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

16.   St. Landry Parish is an NFIP community.

17.   St. Landry Parish is currently in the beginning phases of enacting and implement floodplain management regulations aimed at mitigating the effects of flooding.

18.   St. Landry Parish floodplain management regulations must satisfy state law as well as NFIP requirements.

19.   As an NFIP community, St. Landry Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to assure it complies with the floodplain management regulations St. Landry Parish was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

20.   FEMA reports that the quid pro quo arrangement between communities like the St. Landry Parish that participate in NFIP floodplain management, a pre-requisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.

21.   One tried-and-true method for reducing floods in St. Landry Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

---

[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.

2

22.     Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

23.     Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

24.     For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

25.     Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for St. Landry Parish, residents of St. Landry still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of St. Landry Parish pay higher rates under Risk Rating 2.0.

26.     Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The NFIP rate increases will likely be passed on to renters in the form of rent increases.

27.     These rate increases harm all property owners, but they of course pose a particular hardship to low and moderate income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low and moderate income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

28.     As rates increase, many homeowners, business owners, and renters in St. Landry Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

3

29.    And by creating a surplus of available property, this exodus from St. Landry Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

30.    Moreover, even if no one were to leave St. Landry Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

31.    Risk Rating 2.0 apparently fails to account for all of St. Landry's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease St. Landry Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

32.    The only logical explanation for why Risk Rating 2.0 is increasing rates for St. Landry Parish levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

33.    But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for St. Landry Parish and its floodplain manager to determine where the flaws in FEMA's methodology lie.

34.    That lack of transparency harms St. Landry Parish ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.


I declare under penalty of perjury that the foregoing is true and correct.   Executed in Opelousas, Louisiana, this 17 day of May, 2023.

_Jessie Bellard_

Jessie Bellard, Parish President
St. Landry Parish