# EXHIBIT 27

## Declaration of David Hanagriff

1. My name is David Hanagriff. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the President of St. Mary Parish and have served in that role since January 2016.

3. St. Mary Parish is a local governmental subdivision of the State of Louisiana. La. Const. art. 6 § 44(1).

4. St. Mary Parish is located in south central coastal Louisiana, measures 1,119 square miles, and is on the coast of the Gulf of Mexico.

5. St. Mary Parish is prone to flooding because of its proximity to the coast, the Atchafalaya River, and the Wax Lake Outlet. Ninety-two percent (92%) of the land area of St. Mary Parish is in Special Flood Hazard Areas.

6. St. Mary Parish adopted its Home Rule Charter in 1983. St. Mary Parish has authority to mitigate its flood risk and remediate flood damage, specifically, to pass all ordinances requisite or necessary to promote, protect, and preserve the general welfare, safety, health, peace, and good order of the Parish, including, but not by way of limitation, the right, power, and authority to pass ordinances on all subject matters necessary, requisite or proper for the management of Parish affairs, and all other subject matter without exception, subject only to the limitation that the same shall not be inconsistent with the constitution or expressly denied by general law applicable to the Parish.

7. To promote flood recovery within its borders, St. Mary Parish has partnered with FEMA and the State of Louisiana to obtain grants to elevate homes and businesses. St. Mary Parish applies for and receives grants through these programs and administers the grants.

8. The amount that St. Mary Parish spends on flood recovery projects has steadily decreased year after year because of the success of St. Mary Parish's flood mitigation efforts.

9. To promote flood recovery within its borders, St. Mary Parish in partnership with St. Mary Levee District have added flood protection infrastructure including but not limited to construction of flood gates, levees, levee lifts, and storm water pump stations.

10. St. Mary Parish and St. Mary Levee District expends an average of $10 million a year in flood recovery projects like the ones described above.

11. Flood insurance is another important tool for protecting St. Mary Parish residents and their most important financial assets—their home, business, and possessions. "Floods can happen anywhere," and the Federal Emergency Management Agency (FEMA) estimates that "just one inch of floodwater can cause up to $25,000 in damage."[1]

12. Because most homeowners' insurance does not cover flood damage, homeowners need a separate flood insurance policy to cover the building, the contents of the building, or both.

13. The federal National Flood Insurance Program (NFIP) is the flood insurer of last resort. FEMA manages the NFIP. A network of more than 50 private insurance companies and the NFIP Direct deliver NFIP to the public.[2]

14. "The NFIP provides flood insurance to property owners, renters, and businesses" alike.[3] FEMA acknowledges that having flood insurance coverage helps policyholders recover faster when floodwaters recede.[4] The NFIP requires homes and businesses in high-risk flood areas with mortgages from government-backed lenders to have flood insurance.

15. NFIP insurance is available to anyone living in one of the 23,000 participating NFIP communities.[5] "A community is a governmental body with the statutory authority to enact and enforce development regulations."[6] A parish can be a community.

16. St. Mary Parish is an NFIP community.

17. To become an NFIP community, St. Mary Parish had to enact and implement floodplain management regulations aimed at mitigating the effects of flooding and has to enforce those regulations.[7] St. Mary Parish strictly enforces the building codes described in St. Mary Parish Unified Development Code, which was adopted March 12, 2014.[8]

18. St. Mary Parish floodplain management regulations must satisfy state law as well as NFIP requirements.

19. As an NFIP community, St. Mary Parish has committed: (a) to issue or deny permits to build or develop in the floodplain; (b) to inspect all development to

---

[1] https://www.fema.gov/flood-insurance.
[2] https://www.fema.gov/flood-insurance.
[3] https://www.fema.gov/flood-insurance.
[4] https://www.fema.gov/flood-insurance.
[5] https://www.fema.gov/flood-insurance.
[6] https://www.fema.gov/flood-insurance.
[7] https://www.fema.gov/flood-insurance.
[8] http://online.encodeplus.com/regs/stmary-la/

assure it complies with the floodplain management regulations St. Mary Parish was required to pass to become an NFIP community; (c) to maintain records of floodplain development; (d) to work with FEMA to prepare and revise floodplain maps; and (e) to help residents obtain information about flood hazards, flood insurance, and proper methods of construction.

20. FEMA reports that the quid pro quo arrangement between communities like St. Mary Parish that participate in NFIP floodplain management, a prerequisite for the Parish to be eligible to participate in the NFIP, has saved the nation over $100 billion dollars in avoided floods over the last 40 years.[9]

21. One tried-and-true method for reducing floods in St. Mary Parish and across Louisiana is elevating homes and businesses, which FEMA used to take into account when setting NFIP insurance rates.

22. Prior to Risk Rating 2.0, FEMA used the 1% Annual Exceedance Probability (AEP) flood as the basis for the National Flood Insurance Program. The 1% AEP flood is a flood that has a 1 in 100 chance of being equaled or exceeded in any given year and an average recurrence interval of 100 years—often referred to as the "100-year flood."

23. Before Risk Rating 2.0, FEMA used Flood Insurance Rate Maps to set rates and, in those maps, determined the AEP flood for each flood zone—called the Base Flood Elevation (BFE).

24. For each flood zone, FEMA advised elevating homes at least 1 foot above the BFE because FEMA expected its exposure to flood claims at or above that level to be very infrequent, and so FEMA lowered insurance rates accordingly. The higher a structure was elevated above the BFE level, the lower FEMA's risk for having to pay claims and, therefore, the lower the insurance rate.

25. For decades, St. Mary Parish and other parishes across Louisiana adopted FEMA's Rate Maps. Although not required of homeowners or businesses, St. Mary Parish highly encourages building at least one foot above the BFE.

26. One reason St. Mary Parish adopted FEMA's Rate Maps and required buildings to be built at least to the BFE was to take advantage of FEMA's grandfathering policy for its own properties and to make that policy available to all who built in St. Mary Parish. FEMA's grandfathering policy protected those who built in St. Mary Parish from huge rate increases if they built in accordance with the Rate Maps' requirements.

---

[9] *Hearing Before the Subcomm. on Investigations and Oversight of the H. Comm. on Science, Space, and Technology* 116th Cong. (Feb. 27, 2001) (statement of Michael Grimm, Assistant Administrator for Risk Management), https://perma.cc/U5LT-65BJ.

3

27. In my estimation, a large majority of homeowners and business owners in both special flood areas (100 year flood) and areas above 100 year flood have relied on FEMA's advice to elevate their homes and businesses in accordance with FEMA's Rate Maps, FEMA's grandfathering policy, and St. Mary Parish Unified Development Code.

28. FEMA, the Department of Housing and Urban Development (HUD), and the State offer grants for elevating homes and businesses.

29. St. Mary Parish has applied for and received grants in the past from FEMA and the State of Louisiana to elevate homes and businesses. St. Mary Parish is responsible for administering the grants.

30. Despite the grant programs, St. Mary Parish's reliance on FEMA's Rate Maps and grandfathering policy, and St. Mary Parish's success in flood reduction from elevating structures, under Risk Rating 2.0, elevating a structure above the BFE appears to have only a negligible effect on the insurance rate charged for elevated homes and businesses.

31. Moreover, Risk Rating 2.0 eliminated FEMA's grandfathering policy. Although FEMA's Community Rating System discounts are still in place for St. Mary Parish, residents of St. Mary Parish still wind up paying much higher rates because, unlike the grandfathering policy, the community rating system discounts do not stop the rates themselves from increasing. So even with the community rating system discounts, members of St. Mary Parish pay higher rates under Risk Rating 2.0.

32. St. Mary Parish's flood mitigation efforts have successfully reduced flooding. For example, in the last fifteen years, St. Mary Parish and St. Mary Levee District have installed flood protection infrastructure including but not limited to construction of flood gates, levees, levee lifts, and storm water pump stations.

33. Despite St. Mary Parish's dramatic reduction in flooding and flood damage, Risk Rating 2.0 has increased the cost of flood insurance for almost all properties in the Parish—both residential and commercial—that are in Special Flood Hazard Areas and are backed by federally insured mortgages.

34. I estimate those properties to make up approximately 90% of all properties in St. Mary Parish. Risk Rating 2.0 either has already increased the flood insurance rates for those properties or will increase their rates when their NFIP policies renew, regardless of whether the properties are protected by levees or have been elevated—or both.

35. Those rate increases not only affect owners of property in Special Flood Hazard Areas but also those who rent properties in Special Flood Hazard Areas. The

4

NFIP rate increases will likely be passed on to renters in the form of rent increases.

36. These rate increases harm all property owners, but they of course pose a particular hardship to low and moderate income property owners and their families, many of whom have lived in these areas for generations, and many of whom are racial minorities. Doubtless, many of these low and moderate income property owners and their families will struggle to pay for their mandatory insurance at its increased price. Indeed, these rate increases are likely to force many of these property owners and their families out of their homes in these areas, and perhaps out of our Parish altogether, thereby threatening the unique communities and cultures that have developed here over the course of generations. This is profoundly unjust, especially considering that it was FEMA's promise of lower insurance rates that convinced many of these local governmental authorities and vulnerable property owners and their families to make significant investments in elevation and other flood mitigation measures. But apparently FEMA considers this to be "Equity in Action."

37. As rates increase, many homeowners, business owners, and renters in St. Mary Parish are likely to be priced out of their properties and forced to move to out of the Parish, which will decrease the Parish's tax base and therefore its financial ability to protect its residents and their property from flooding and flood damage.

38. And by creating a surplus of available property, this exodus from St. Mary Parish will negatively impact the property values of those who remain, further decreasing the Parish's tax revenues.

39. Moreover, even if no one were to leave St. Mary Parish, Risk Rating 2.0 is still likely to negatively affect property values in the Parish by increasing the cost of purchasing mandatory flood insurance that runs with the property, thereby decreasing the Parish's tax revenues.

40. This reduction in tax revenue will inhibit St. Mary Parish's ability to protect its residents and their property. This would be tragic given the proven efficacy of St. Mary Parish's flood mitigation efforts, especially when one contrasts the immense damage inflicted by Hurricanes Rita and Ike with the relatively minimal damage caused by Hurricane Laura after those flood mitigation efforts were made.

41. Risk Rating 2.0 apparently fails to account for all of St. Mary Parish's flood reduction successes. By failing to do so, Risk Rating 2.0 will likely decrease St. Mary Parish's tax revenues and inhibit the Parish's ability to protect its residents and their property.

42. The only logical explanation for why Risk Rating 2.0 is increasing rates for St. Mary Parish's levee-protected areas and elevated properties is that the methodology used in setting rates must be flawed.

43. But FEMA's refusal to reveal Risk Rating 2.0's methodology as required by federal law, despite numerous requests from all levels of state government, including parishes, and Louisiana's federal legislators, makes it impossible for St. Mary Parish, its floodplain manager, and St. Mary Levee District to determine where the flaws in FEMA's methodology lie.

44. That lack of transparency harms St. Mary Parish's ability to work with FEMA, as required by the Parish's commitment as an NFIP community to work with FEMA to prepare and revise floodplain maps.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Franklin, Louisiana, this 20th day of April, 2023.

_____
David Hanagriff, Parish President