# EXHIBIT 45

## Declaration of Louis (Joe) Uzee

1. My name is Louis (Joe) Uzee. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the president of Gulf Coast Bank and Trust's residential mortgage division and the vice president of the Greater New Orleans (GNO) region's Mortgage Lender's Association.

3. Gulf Coast Bank and Trust started operations in 1990, when it took over American Savings and is headquartered in New Orleans. Today total assets are $3.07B, with 20 bank branches located in Southeast (SE) Louisiana. Our banking operations are limited to Louisiana; however, we have 19 other business locations that make up our family and are located throughout the United States. We operate as a community bank with concentration in commercial and consumer lending. Our banking customer base spreads from the GNO region, Baton Rouge, Northshore, and St. Bernard area. Mortgage lending is one of our bank divisions; we are federally chartered and can originate mortgages throughout the United States. Most of our production is concentrated in SE Louisiana. On an average year we originate approximately 1,450 loans at $400M closed volume.

4. Federal law requires property owners in Special Flood Hazard Areas to purchase flood insurance as a condition of any government-backed mortgage. This requirement applies to mortgages from banks insured by the Federal Deposit Insurance Corporation (FDIC), mortgages backed by Fannie Mae or Freddie Mac, and mortgages guaranteed by the Department of Veterans Affairs (VA). Under our current model of operations, we originate and then sell most of our mortgages to the agencies or aggregators. We do not operate as a large servicer of mortgages. At origination we must make sure that proper insurance requirements set forth by the agencies are met.

5. As mentioned above we do not act as a servicer, but federal law requires the mortgagee, rather than FEMA, to enforce this flood insurance requirement. If a mortgagee fails to require flood insurance or notify the buyer of that requirement, banking regulators can fine the mortgagee up to $2,000.00 for each failure.

6. The National Flood Insurance Program (NFIP) is the primary source of flood insurance coverage for residential properties in the United States. Most of the mortgages that we originate and that require flood insurance, do obtain their flood insurance through NFIP. I do not have exact stats, but we do occasionally see private flood policies. When we see private flood policies it is because the borrower was able to obtain a lower premium over the NFIP policy. Beginning

1

in 2023, the Department of Housing and Urban Development started allowing private flood policies on their FHA loans. We have not yet seen an uptick on private flood policies, even on FHA loans. We will see the use of private flood policies increase if the borrower is able to obtain a lower premium.

7. In my estimation, approximately 26% of the mortgages for which Gulf Coast Bank and Trust originates require the property owner to purchase flood insurance as a condition of the mortgage.

8. Of those properties, in my estimation approximately 97% are currently covered by NFIP flood insurance.

9. FEMA's Risk Rating 2.0 has led to a dramatic increase in the cost of flood insurance for many current and future property owners and will continue to increase that cost by 18% year over year until the rates reach their full premium under Risk Rating 2.0.

10. As a result of these current increases already realized, and the potential for the future increases until full premium is reached, most borrowers will assume existing flood policies from the sellers. This allows them to keep the premiums lower for some time instead of purchasing a new policy at full premium. The assumption process is not always easy and has caused stress to buyers, sellers, and the realtors involved. Often sales have been delayed and rescheduled until the assumption has been received and policy updated to meet the requirements of the lender.

11. Many existing property owners will have difficulty affording flood insurance at these higher rates when their annual renewals occur. They will likely have to forego purchasing flood insurance even when required to do so by their mortgage, which will harm the Gulf Coast Bank and Trust and lending institutions in general by increasing their enforcement costs on loans that we service. As mentioned before it is federally mandated that we as a lender enforce the flood insurance requirements.

12. Many home and building owners will likely be unable to afford flood insurance at these higher rates, leading to defaults on mortgages for those whose mortgages require them to purchase flood insurance and eventually foreclosure. This will harm the agencies and servicers who Gulf Coast Bank and Trust sells mortgages. It will also hurt lending institutions in general by depriving them of the mortgage payments owed to them, the total profit they would have made on those mortgages, and the cost of foreclosure.

13. It is also likely that the heightened cost of flood insurance will make it difficult or even impossible for Gulf Coast Bank and Trust to find new purchasers for those defaulted properties that we service. Agencies and aggregators who have purchased loans from Gulf Coast Bank and Trust could stand to lose a

substantial portion of their investments and to be stuck with unsellable properties.

14. Moreover, as foreclosure on these defaulting properties becomes necessary, Gulf Coast Bank and Trust, servicers, and lending institutions in general will be forced to incur the costs associated with the foreclosure process.

15. Other concerns are that communities and neighborhoods that are designated as SFHA will see property values decline. When foreclosures increase you will see these communities and neighborhoods become blighted areas. Many of these areas are considered low and moderate income (LMI) and major minority census tracts (MMCT). FEMA's Risk Rating 2.0 will have a devastating impact to this segment of the population.

16. Because federal law requires Gulf Coast Bank and Trust and lending institutions in general to disclose flood insurance requirements to would-be property purchasers, many of those purchasers, including first-time homeowners, will likely decide not to purchase property when they learn of the heightened cost of purchasing NFIP flood insurance under Risk Rating 2.0. Those lost sales will further erode revenue for Gulf Coast Bank and Trust and lending institutions in general.

17. Mortgage loan officers at Gulf Coast Bank and Trust have already experienced sales contracts being cancelled before the loan application was even complete. It is often the case that the sales contracts are not fully executed until the buyer is able to obtain flood insurance quotes. These higher quotes will often stop the purchase process on that particular property.

18. The heightened cost of NFIP flood insurance under Risk will likely decrease or even eliminate entirely the sale of real property in some Special Flood Hazard Areas.

19. It is difficult to measure the negative financial impact that FEMA's Risk Rating 2.0 has had on Gulf Coast Bank and Trust's mortgage division. This is due to the fact that if purchase transactions never make it to the application status, then we, along with other financial institutions, cannot even track that lost business.

20. In summary, Risk Rating 2.0 will cause, and already has caused, great harm to Gulf Coast Bank and Trust, some of our borrowers, and to lending institutions in general all across the nation. This will likely lead to a loss of jobs in the mortgage industry and a decreased availability of mortgages for those who need them. We have witnessed borrowers and existing homeowners, whose properties are not in a SFHA, opt out of flood insurance because of these higher premiums. This is perplexing since the goal of FEMA's Risk Rating 2.0 was to increase premiums in certain areas and spread the collection of

3

premiums across the participants. If participants are dropping out now, opting out at their purchase of a home if they are not located in a SFHA, or may opt out in the future as their premiums continue to escalate at 18%/year until full premium is realized, then how will FEMA's Risk Rating 2.0 achieve its goal?

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Metairie, LA, this 23rd day of May, 2023.

DocuSigned by:

*L Joe Uzee*   5/23/2023
C118B8D84FA24F0...

Louis (Joe) Uzee

4