# EXHIBIT 51

## Declaration of Michele Insinga

1. My name is Michele Insinga. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the director of the Adopt A House ("AAH") & co-founder of South Shore Recovery Coalition ("SSRC").

3. SSRC provides one unified voice for Long Island's still-devastated communities that continue to struggle in their recovery from Superstorm Sandy. It is multi focused on residents' recovery, a community's wellbeing, infrastructure, flood insurance, and the New York State grant program.

4. SSRC examined approximately 40 declaration pages starting in October 2022 to compare differences and similarities from policyholders across the South Shore of Long Island. Our role through SSCR was to assist Sandy families in their recovery and assist them with navigating both New York State's grant program, known as NY Rising, and the NFIP process.

5. AAH is a 501(c)3 nonprofit agency, founded in November 2012 after Superstorm Sandy and is dedicated to help re-build our local communities by bringing valuable information, solutions and financial assistance to Long Island residents affected by Super Storm Sandy and other emergency situations. Run entirely by volunteers, AAH's simple mission is to support recovery for Long Island's South Shore by preparing and administering a comprehensive disaster aid and long-term recovery program to individuals, families and the community. AAH also contributes assistance to individuals in unfortunate emergency circumstances by easing financial burdens and offering help and guidance. We achieve this mission through multiple avenues including, but not limited to: educational workshops, community outreach, and programs for financial assistance, community service, and acting as liaison between elected officials, programs and registered families. We are constantly striving to improve our ability to assess housing needs, improve community services and raise funds that go to registered families and our programs.

6. AAH assisted immediate recover efforts from Superstorm Sandy and help provide grants to replace lost items like furniture and clothing. We also worked with politicians on Biggert-Waters and the Homeowner Flood Insurance Affordability Act (HFIAA).

7. In my estimation, there are 172,000 flood insurance policies in New York State and 74,000 flood insurance policies on Long Island.[1]

8. At the time of Superstorm Sandy, there were approximately 15,700 claims along the South Shore & other areas of Long Island that are located in Special Flood Hazard Areas. In my estimation, 100% of those for whom SSRC & AAH advocates are required to purchase flood insurance for one or more of these reasons.

9. Affordable flood insurance is also crucial to the availability of affordable rental properties in South Shore of Long Island, NY, as landlords pass along flood insurance costs to renters through the rental rates they decide to charge, or they just don't carry it at all leaving renters exposed & unaware. The NFIP is the primary source of flood insurance in South Shore Long Island, NY. It is unknown to us the number of the properties on Long Island have NFIP flood insurance, though it was estimated at 74,000 at the time of Sandy.

10. Under Risk Rating 2.0, NFIP flood insurance rates are dramatically increasing for many policyholders nationwide, including, in my estimation, 80% of policyholders on Long Island.

11. One particular change under Risk Rating 2.0 is its lack of meaningful discounts in premium rates for properties that are elevated. In my estimation, more than 4000 of homes in Long Island are elevated or need to be. In recognition of how effectively elevation mitigates the risks associated with flooding, and to encourage more policyholders to elevate their homes and buildings, the Legacy Rating System offered large premium discounts for policyholders with elevated homes or buildings. These discounts can be seen in what's called the Annual Increased Cap on declaration pages.

12. Despite the proven ways in which elevation mitigates the risks associated with flooding, FEMA's Risk Rating 2.0 offers almost no discount for elevation or other mitigation measures.

13. Based on the policies we have scrutinized, people are receiving minimal—or no—discounts for elevating their homes under Risk Rating 2.0. For example, many people who invested in mitigation projects by elevating their homes are now seeing insurance premiums that are higher than their neighbors' homes that opted not to elevate their homes.

---

[1] https://www.arcgis.com/apps/dashboards/44d08581aaf14f39bc0da5d02f378007

14. In some cases, those who elevated their homes are now paying twice as much per year under Risk Rating 2.0 as they did prior to elevating their homes under the Legacy Rating System.

15. Risk Rating 2.0 is forcing people to raise their deductibles. Some people are being required to increase their deductible from $1250 to $2000, but importantly, these deductible increases are still resulting in higher premiums. In other words, people are paying more for less coverage. Others, still, are choosing to increase their deductibles to try to offset the premium increases. Again, Risk Rating 2.0 is requiring people to pay more for deductibles ranging from $2000 even up to $10000.

16. Moreover, under the Legacy Rating System, grandfathering was available to policyholders when a map change resulted in either a rating zone or base flood elevation change. Now, all existing policies formerly eligible for grandfathering will transition to their new full risk premium. Because FEMA has eliminated its grandfathering policy altogether, this will impact 100% of policyholders in Long Island.

17. Risk Rating 2.0 will have a particular adverse impact on the low to moderate income homeowners or would-be homeowners and their families that SSRC & AAH serves. Most of the families served by the organization are low to moderate income or middle class. These families come from all different ethnic backgrounds and races. And many of them have been living in the area for three or four generations.

18. Those who currently own homes will now struggle to afford flood insurance, with many likely forced to leave their homes. Risk Rating 2.0 will make it very difficult, if not impossible, for these homeowners and their families to sell their homes because of the lack of affordable flood insurance for would-be buyers. This is profoundly unfair, as those who have struggled and sacrificed to put a roof over their families' heads will be simultaneously forced out of and unable to sell the homes in which they've invested so much.

19. After Superstorm Sandy, many families needed to take out SBA loans in addition to their NFIP claim payments. Because of the cost of repairs from flood damage, and the requirement to repay these SBA loans with interest, even families with substantial savings and flood insurance struggled to rebuild. In fact, some families had to tap into their children's college funds to pay for disaster repairs. As flood insurance becomes even less affordable, it will only serve to exacerbate this problem.

20. We saw a glimpse of this in 2012 after Congress passed the Biggert-Waters Flood Insurance Act, which purported to require FEMA to set premium rates based on true flood risk. The result, though, was FEMA doubling the premiums over four years, until Congress passed the HFIAA.

21. After the Biggert-Waters Act, insurance policies were quoted at double their prior costs. This kept houses from closing—people didn't want to buy homes that would be saddled with expensive full-risk premiums.

22. After Risk Rating 2.0, we became very concerned after analyzing multiple declaration pages from across Long Island and Queens. These declarations were showing that the discount for elevation mitigation was lacking and these elevated homes' full risk premiums were around $4000. We even saw some as high as $5122 and $6700. This is shocking because there seems to be no correlation between the high rates and the location or the replacement cost value. In addition, not all policies had mitigation discounts.

23. This is especially unjust for those homeowners and their families who are participating or have participated in FEMA's grant program. FEMA encouraged these homeowners to make significant investments in flood mitigation measures, like elevating their homes, in exchange for partial funding. But this funding was conditioned on the requirement that they purchase flood insurance. Of course, the promise was that the mitigation—like elevation—would ultimately lower their insurance rates. While this may have been an acceptable condition under the Legacy Rating System, particularly in light of the promised discounts, these homeowners are now trapped in a mandatory purchase requirement with little to no discounts.

24. In a cruel bait and switch, FEMA is reversing course by no longer meaningfully accounting for those flood mitigation measures and dramatically raising premiums for the flood insurance policies these homeowners and their families are required to purchase, either as a condition of their mortgage or their reception of grant funds.

25. Under Risk Rating 2.0, the Base Flood Elevation is not even a consideration. Instead, this new methodology uses 'first floor height', which is the difference between the top first floor and the lowest adjacent grade. What this means is that a yard could be low flooding all the time with a first-floor height of 5 feet, and it will get the same rate as a yard with a much higher yard and a first-floor height of 5 feet.

26. It seems unfair that the same families that have been recovering from Superstorm Sandy for the last ten years are now seeing their rates go up. This is after they've undertaken repairs, complied with new government regulations, and relied on promises that rates would go down.

27. In addition, many of these families participated in New York Rising, which is a grant program that helped pay for repairs after Sandy's damage and helped assist mitigation efforts including but not limited to elevation of the house, mechanical raising, and flood vents.

28. Under 2.0, mitigated properties aren't seeing sufficient rate reductions. That can disincentivize mitigation, which raises flooding costs down the road.

29. Aside from that, AAH and SSRC are concerned with the complacency of the average homeowner, who is unaware that their annual premium will continue to increase until it reaches full risk. FEMA doesn't disclose how the rates are calculated or the breakdown of costs. Instead, it just tells policyholders what the renewal rate will be. Only after an individual renews their policy does FEMA provide information about the full-risk premium. Therefore, we are seeing people renew their insurance policies only to then find out they will not be able to afford the insurance moving forward.

30. Because of the asymmetric information between FEMA and homeowners, homeowners are only starting to realize the implications of Risk Rating 2.0.

31. Risk Rating 2.0 is making homeownership difficult for many families, particularly families of modest means. Apparently, this is what FEMA calls "Equity in Action."

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Lindenhurst, New York, this 25th day of May, 2023.

_/s/ Michele Insinga_

Michele Insinga

Executive Director of Adopt A House, founding member of South Shore Recovery Coalition