# EXHIBIT 52

## Declaration of **Angelyn S Treutel**

1. My name is Angelyn S Treutel. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the President of the SouthGroup Insurance Services-Gulf Coast.

3. Our agency's Gulf Coast branches are located in Bay St Louis and Biloxi MS and we serve over 5,000 Consumers and Businesses. Many of the homes and businesses were remapped into Special Flood Hazard Areas following Hurricane Katrina in 2005. We have 2,000 flood policies in place for our clients.

4. SouthGroup Insurance Services is Mississippi's largest privately-owned insurance agency with 23 branch locations throughout the state, serving over 20,000 Consumers and Businesses. We offer our clients more than 115 years of history and access to niche markets and specialty products and services not found at other agencies. With over 170 associates, we focus on providing risk management solutions that help our clients identify and mitigate the risks they face in business and in life.

5. Federal law requires that property owners in Special Flood Hazard Areas purchase flood insurance as a condition of any mortgage backed by the federal government. This requirement applies to mortgages from banks insured by the Federal Deposit Insurance Corporation and mortgages backed by Fannie Mae or Freddie Mac.

6. Additionally, property owners who have accepted various forms of disaster relief from FEMA or participated in flood mitigation grant programs, such as by elevating their homes, are required to purchase flood insurance going forward as a condition of receiving these funds.

7. Likewise, property owners who have obtained SBA loans are required to purchase flood insurance as a condition of receiving these loans.

8. Moreover, property owners who do not have flood insurance may not be eligible for certain types of disaster assistance after a flood.

9. The NFIP is now the primary source of flood insurance coverage for residential properties in the United States. In 2020, it provided more than 5 million flood insurance policies and over $1.3 trillion in coverage, in 22,600 communities across the United States. Now, after Risk Rating 2.0's implementation, it provides under 4.7 million flood insurance policies.

10. FEMA underwrites NFIP policies and determines the rates and coverage. Our agency sells many NFIP flood insurance policies. We sold 200 new flood policies last year.

11. NFIP policies are sold through private insurance companies and agencies.

12. While private flood insurance is available, it has traditionally been much more expensive than NFIP policies for most properties.

13. As a result of the higher cost of private flood insurance, property owners typically chose to purchase NFIP policies over private policies.

14. We sell an estimated 50 private flood insurance policies per year, which makes up about 25% of the total number of policies my agency sells in a year.

15. My agency sells 150 NFIP policies per year, which makes up about 75% of the total number of policies my agency sells in a year.

16. In my estimation, 80% of the property owners who purchase flood insurance—either NFIP flood insurance or private flood insurance—from my agency are required to do so as a condition of a mortgage, an SBA loan, a flood mitigation grant program, or a disaster relief program.

17. In my estimation, 80% of those property owners described in the above paragraph have traditionally purchased NFIP flood insurance, as it has typically been by far the most affordable option.

18. But under Risk Rating 2.0, NFIP flood insurance rates are dramatically increasing for many policyholders, including, in my estimation, 98% of my agency's NFIP flood insurance policyholders.

19. In my estimation, NFIP rates are increasing on average by about 30% per year, including the additional fees imposed.  FEMA has begun announcing "Full Risk Premiums" which are $4000-$7000 higher than the current rate which has already been increasing by over $100/yr since Risk Rating 2.0 has been implemented. Prior to RR 2.0 the rate increase was less than $50/yr.

20. While FEMA has refused to release its methodology for Risk Rating 2.0 so that the public can understand where the rate increases are coming from, FEMA has revoked several previously offered features of NFIP policies. The absence of those features appears to be part of what is driving up rates.

21. For example, Risk Rating 2.0 has eliminated clear discounts in premium rates for properties that are elevated. In recognition of how effectively elevation mitigates the risks associated with flooding, and to encourage more policyholders to elevate their homes and buildings, FEMA used to offer large rate discounts for policyholders with elevated homes or buildings.

22. But despite the proven ways in which elevation mitigates the risks associated with flooding, FEMA's Risk Rating 2.0 offers almost no discount for elevation or other mitigation measures.

23. Flood mitigation such as proper flood venting and raised equipment do not provide adequate discounts for the consumers and businesses.

24. While Risk Rating 2.0 fails to value elevation and its reduction in flood risk, it is difficult to explain all of the reasons for Risk Rating 2.0's drastic price increases because FEMA has refused to divulge Risk Rating 2.0's calculation methods. Therefore, not even my agency—the ones charged with selling it to the public—know/s or can explain to its clients what effect any single data point has on a policy rate.

25. Even without information about the methodology FEMA used to formulate Risk Rating 2.0, the only logical explanation for Risk Rating 2.0's failure to place a clear value on elevation, venting, raised equipment and other mitigation measures which are proven to effectively mitigate flooding risks—is that the methodology Risk Rating 2.0 uses in setting rates must be flawed.

26. Grandfathering was another feature that FEMA offered prior to Risk Rating 2.0. Grandfathering used to be available to policyholders when a map change resulted in a change to either a rating zone or base flood elevation. Consumers and Businesses who built their homes in compliance with the laws in place at the time are being penalized because FEMA changed the rules after the homes were built resulting in higher elevation requirements for homes already built. This has put many homes in our area "below" the current requirements with estimated flood insurance rates over $7000-$12000 annually, which is cost prohibitive.

27. But now under Risk Rating 2.0, all existing policies formerly eligible for grandfathering will transition to their new full risk premium.

28. As a result of Risk Rating 2.0's higher rates, many current NFIP policyholders—including those required to have flood insurance—will likely struggle to afford NFIP flood insurance, with many likely deciding to cancel their policies.

29. Indeed, many already have: NFIP experienced a loss of 346,778 policies that were in force nationwide from December 31, 2021, to June 30, 2022. And, by some estimations, Risk Rating 2.0 will lead to a 20% reduction in NFIP flood insurance policies nationwide. The more consumers and businesses without flood insurance, the higher the need will be following a flood for property located near rivers and coastal regions.

30. In my estimation, my agency has already lost over 100 NFIP flood insurance policies because of Risk Rating 2.0 and its increased rates. And because of the lack of affordable private flood insurance alternatives, in my estimation 80% of the holders of these policies did not replace their canceled NFIP insurance policies with a different flood insurance policy.

31. And this is only the beginning. In my estimation, my agency is likely to lose 40% of our approximately 2000 current NFIP insurance policies. And because of the lack of affordable private flood insurance alternatives, in my estimation 80% of the holders of these policies will not replace their canceled NFIP insurance policies with a different flood insurance policy.

32. This dramatic reduction in flood insurance policies caused by Risk Rating 2.0 will significantly reduce the revenues of the insurance industry nationwide and of my agency. In my estimation, FEMA has already lost $70,000 on revenue from the policies lost in my agency due to Risk Rating 2.0, and will likely lose up to $1,200,000 on the total policies lost due to Risk Rating 2.0 just from my agency. My agency will lose about $180,000 in revenue tied to these lost FEMA policies.

33. Many of the homeowners and businesses impacted in our area are in lower income communities, and we have a high minority population.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Bay St Louis, MS, this 17th day of April, 2023.

_____

Angelyn S Treutel

4