# EXHIBIT 1

## Declaration of James J. Donelon

1. My name is James J. Donelon. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2. I am the Commissioner of the Louisiana Department of Insurance (LDI). I have served in this role since 2006.

3. The LDI is a constitutionally created department within the executive branch of the State of Louisiana. The mission of the LDI is to enforce the insurance laws and regulations of the state while balancing the needs of insurance consumers with the insurance industry's need to operate profitably.

4. In my role as Commissioner, my primary responsibilities are to impartially enforce the insurance laws and regulations of the State of Louisiana and to act as an advocate for consumer protection.

5. The LDI and the NFIP have formed a significant collaboration that is focused on protecting residents and property owners in the state from flood-related risks. The NFIP, administered by the Federal Emergency Management Agency (FEMA), aims to provide affordable flood insurance coverage to homeowners, renters, and businesses in flood-prone areas across the United States, including Louisiana. Given the state's vulnerability to hurricanes, heavy rainfall, and coastal flooding, the partnership between the LDI and the NFIP is vital to ensure adequate insurance protection and promote disaster resilience. The LDI works with the NFIP to promote compliance with federal laws and regulations, to ensure fair practices by insurance companies operating in the state, and to facilitate consumer education regarding flood insurance. Additionally, the LDI plays a vital role in assisting Louisiana residents in understanding the complexities of flood insurance, including policy terms, coverage limits, and claims processes. Through educational outreach initiatives and consumer assistance programs, both entities strive to increase awareness and accessibility to NFIP policies by empowering individuals to make informed decisions to protect their homes and businesses against flood-related risks. Through ongoing collaboration, both entities work together to mitigate the impacts of flooding, to foster disaster preparedness, and to contribute to the overall well-being and safety of Louisiana communities.

6. It is important to develop insurance rates based on generally accepted actuarial principles and methodologies. An actuarial rate is an estimate of the expected value of the future losses of an insurance company. A rate that is not actuarially sound may be excessive or inadequate. Credentialed actuaries are subject to a code of professional conduct, qualification standards, and continuing education requirements amongst other standards of practice.

7. It is also important to make insurance rates transparent. Lack of transparency in insurance rates could lead to rates that are not related to the expected value of future losses and could lead to biased or unfairly discriminatory rates.

8. Utilizing sound actuarial principles in a transparent manner contributes to a stabilized insurance market. When an insurance market is unstable, policyholders can struggle to afford coverage and struggle to find coverage.

9. The LDI has long regulated the private flood insurance market. The Louisiana Legislature revised the regulatory authority of the Commissioner of Insurance concerning private residential flood insurance in Act 77 of the 2021 Regular Session, codified as La. R.S. 22:1341 et seq. Act 77 provided for the definition of several residential flood insurance policy types using the NFIP policy as a point of reference. The Act further provided for a modified rate filing system to permit the use of a new rate up to 30 days prior to filing with the Commissioner.

10. Private flood insurance in Louisiana is provided by three types of insurers—authorized (admitted), U.S. domiciled (domestic) surplus lines, and non-U.S. domiciled (alien) surplus lines. The LDI does not have detailed policy information on the private flood insurance market. The LDI has collected some premium and policy count information through financial reporting to the National Association of Insurance Commissioners (NAIC) in recent years. That information is limited to aggregate flood premiums from alien surplus lines insurers and to aggregate premiums and policy count from domestic surplus lines and admitted insurers. Given that much of the private flood market is in surplus lines, the LDI cannot evaluate the effect of changes to the NFIP on rates, because the Commissioner's regulatory authority is does not extend to surplus lines rates. Further, the LDI cannot evaluate the extent or quality of coverage, because the Commissioner does not have authority to review and approve surplus lines policy forms.

11. In 2022, there were approximately 10,657 private flood insurance policies and endorsements in-force in the State of Louisiana written by U.S. admitted and surplus lines insurers as compared to 9,291 in 2021.

12. As of December 31, 2022, sixty-three (63) U.S. admitted and surplus lines insurers reported writing private flood insurance in Louisiana as compared to fifty (50) in 2021.

13. "The Louisiana Citizens Property Insurance Corporation is a nonprofit organization created to provide insurance products for residential and commercial property applicants who are in good faith entitled, but unable, to procure insurance through the voluntary insurance marketplace."[1] "Louisiana Citizens is the insurance of last resort and is statutorily mandated to be ten (10%) percent more costly than private property insurance companies."[2]

14. "The Louisiana Citizens Property Insurance Corporation is a nonprofit organization created to provide insurance products for residential and commercial property applicants who are in good faith entitled, but unable, to procure insurance through the voluntary insurance marketplace."[3]

15. Like the federally backed mortgage companies Fannie Mae and Freddie Mac do for the mortgages they own, Louisiana Citizens Property Insurance Corporation (Citizens) makes flood insurance a requirement of its insurance policies under certain limited circumstances. Citizens requires flood insurance for a personal lines policy if the risk is over or partially over water. For commercial lines, if the risk is over or partially over water, Citizens requires flood insurance. In cases where the risk is subject to tidal surges, flood insurance is required when the risk is within one hundred (100) yards of a body of water.

16. If an insurance policy requires flood insurance and the policyholder cannot afford to maintain flood insurance, many Louisianans could be forced out of their homes.

17. Flood insurance is regarded as a property and casualty insurance product. However, it is important to note that a homeowners insurance policy, which is also a property and casualty product, covers a multitude of perils. It is a common industry practice that an insurer issuing a homeowners policy will exclude coverage for damage caused by the peril of flood as defined by La. R.S. 22:1341(1). It is important to acknowledge that the NFIP is a federal program that is not subject to the regulation of any state insurance department.

---

[1] https://www.lacitizens.com/AboutUs/CompanyOverview.
[2] https://www.lacitizens.com/AboutUs/CompanyOverview.
[3] https://www.lacitizens.com/AboutUs/CompanyOverview.

18. Having flood insurance is one of the most important steps any Louisiana property owner can take to protect their home or business. Flood insurance protects property owners from financial loss and provides a quicker recovery following a flooding event, such as the historic flooding in south Louisiana in 2016. According to a representative from the NFIP, 2016 flood victim with an NFIP policy received an average payment of about $95,000 from the NFIP, compared to an average FEMA recovery grant of about $9,000 for people without an NFIP policy. Unfortunately, this all too important lifeline is in danger of failing those who need it most. Louisiana has the distinction of having the nation's highest participation rate in the NFIP. Of the 5 million NFIP policies written nationally, Louisiana has nearly 450,000, or about 10%, of those policies. Eighty percent of those Louisiana policies are expected to see price increases under the NFIP's new Risk Rating 2.0 methodology that took effect on April 1, 2022, for renewal policies and in October 2021 for new policies. The level of expected rate increases could easily price many Louisianans out of their homes and make those homes harder to sell — if they are marketable at all. Exacerbating this problem is the fact that many property owners are still dealing with the significant expense of rebuilding after the four major hurricanes that hit our state in 2020 and 2021. There is also a great risk that many homeowners will be forced to drop flood coverage altogether and be left with no protection at all.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Baton Rouge, Louisiana, this 31st day of May, 2023.

*James J. Donelon*
Louisiana Commissioner of Insurance