IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY *et al.*, <br><br> *Defendants*. | Civil Action No. 2:23-CV-01839 <br><br> Section P <br><br> Judge Papillion <br><br> Magistrate Judge van Meerveld |

## DECLARATION OF DAVID MAURSTAD

1. My name is David Maurstad, and I am the Assistant Administrator for the Federal Insurance Directorate, which is housed within the Federal Emergency Management Agency (FEMA), a component agency of the Department of Homeland Security.

2. In my capacity as the Assistant Administrator for the Federal Insurance Directorate, I am the Senior Executive for the National Flood Insurance Program (NFIP) at FEMA. The NFIP services over 4.7 million flood insurance policies across the nation.

3. Risk Rating 2.0 was a major NFIP initiative spanning 7 years and involved extensive coordination and communication with Write Your Own (WYO) insurance companies (i.e., the private insurers that sell and service flood insurance policies on behalf of the NFIP), agents, vendors, stakeholder groups, members of Congress and their staff, and industry groups.

4. More than 150 FEMA staff at both headquarters and the regions, over a dozen contractors pursuant to over two dozen different contracts, staff and agents from WYO companies, and at

    least 5 vendors collaborated and worked on the development, communication, and implementation of Risk Rating 2.0.

5. I am assisting FEMA's Office of Chief Counsel and the Department of Justice with the creation of the administrative record for this litigation.

6. This work consists of locating and providing information, both archived and current, contained in numerous FEMA and contractor locations.

7. FEMA's document collection effort began in April 2023, prior to the date the litigation was filed, based on the Louisiana Governor's communication to FEMA Administrator Deanne Criswell regarding Louisiana's intent to file suit.

8. We anticipate gathering approximately 30 terabytes of data and documents that should potentially be included in the administrative record for the Risk Rating 2.0 litigation. This information encompasses 7 years of cross-collaborative work and communications, internal and external to FEMA, that facilitated the development and implementation of Risk Rating 2.0.

9. Complainants' allegations in this litigation concern a major 7-year initiative that cuts across all components of the NFIP, and the development of which involved hundreds of FEMA staff, contractors, and stakeholders. Moreover, the allegations also concern FEMA's transparency about this initiative during that time period. As such, the record will inevitably be very large in size and will require many months to develop.

10. To compile the administrative record, I appointed 3 program staff to do the following:

    - Identify, collect, and inventory potentially responsive information;

- Identify secure methods by which to obtain information, secure locations for long term storage and preservation of the information, and secure staging[1] locations for information processing in FEMA's eDiscovery system;

- Design and implement a process for reviewing and organizing potentially responsive information for storage, staging, and processing;

- Monitor functionality of the eDiscovery system, assign batches of information for legal staff to review, maintain workflow and quality control; and

- Index documents manually and/or electronically, as feasible and appropriate.

11. There are also 7 Office of Chief Counsel employees working on reviewing and organizing documents for production in the administrative record, and 2 attorneys providing quality control and oversight of that process.

12. Approximately 15 terabytes of potentially responsive documents and data have been identified to date, originating from approximately 15 different sources, including from SharePoint locations that are used for document collaboration and sharing, shared drives used for individual work and storage of information, external hard drives, emails, and at least 4 different internet technology systems.

13. The estimated 15 terabytes of potentially responsive documents and data is anticipated to expand to approximately 30 terabytes once additional information is obtained from emails searches, a FEMA internal system called PIVOT, retired laptops or the laptops of departing employees, FEMA headquarters and regional staff, and contractors.

---

[1] Data "staging" refers to the storing of data, often temporarily, to allow for programmatic processing and short-term data recovery.

14. Procuring this data is time-intensive. For example, there are approximately 150 persons whose emails must be searched for relevant information. It takes hours to search each person's email and upload the responsive emails to a shared drive location. Additional personnel whose emails need to be searched are identified on a weekly basis.

15. Program and IT staff have already spent hundreds of hours obtaining the information and running script to copy it twice to move it to separate staging and storage locations for indexing and processing. Program staff reported that 124 gigabytes of documents and data takes an average of 24 hours or more to copy and move to an internal storage or staging location.

16. FEMA's Office of Chief Counsel selected the Veritas eDiscovery system as the solution for the discovery and production of the administrative record for the court. While the Office of Chief Counsel had utilized this system before, the system had never been utilized for a case in which the administrative record exceeded 1 terabyte, which is its standard capacity. FEMA had to purchase additional capacity for approximately $500,000, and it will cost approximately $1.5 million to utilize the system beyond September.

17. Some documents and data are in formats like word, excel, and pdf that should be easily read by any system or application, while other documents and data are in technical formats that cannot be opened without specific programs to read them or are not compatible with other applications. Currently, program staff have identified documents and data in at least 18 different technical formats that will require additional time and specialized software to open and view.

18. Program staff have spent approximately 6 weeks attempting to discover and index information in the eDiscovery system. There have been numerous roadblocks with the

utilization of the system, including multiple licensing issues, storage capacity issues, and other technical issues.

19. After these issues were resolved, FEMA's efforts to process data were again waylaid through indexing and document review failures. Program staff have been forced on approximately 6 occasions to delete cases[2] they created and begin work again. Each time, the document discovery and indexing took approximately 4 days to complete before ultimately failing.

20. Most notably, technical information, including geospatial data, cannot be inputted into the eDiscovery system due to the specialized format of the information or data contained within the information.

21. As such, program staff now must make 2 copies of the data, one for storage and one for staging. They then must manually review the anticipated 30 terabytes of information to separate the technical data, inventory it, and process it. Once the technical information and data is removed and separately processed, the remaining documents (once obtained) must be uploaded, batched, and then reviewed by the document review team.

22. The information must then be reviewed and organized by the FEMA Office of Chief Counsel. This includes a review by legal counsel and program personnel to ensure the record is correct and complete, which often involves an additional shorter round of document collection and review to fill in any gaps.

23. All anticipated 30 terabytes of document, information, and extensive data sets will then need to be entered into an administrative record index to be filed with the court. It is unclear at this time, whether it will be possible to prepare the index through the eDiscovery system.

---

[2] A "case" refers to loading the data for each lawsuit against FEMA. We had to open this case 6 times.

Regardless, a substantial portion of the index will need to be completed manually due to the technical data that cannot be loaded into eDiscovery.

24. The full extent and volume of documents and data is unknown, and we are unaware of how many further technical issues may occur due to, among other things, the fact that the litigation team is using an eDiscovery tool that the agency has never used to handle such a large capacity of data before and the fact there are 18 types of different technical data the litigation team has never worked with before in the document review process. Also, we have not yet determined how the indexing and production process will occur.

25. Further, FEMA is an emergency management agency, and all staff are subject to disaster deployment 365 days a year. If a major or catastrophic disaster occurred, or multiple parallel events, this could further deplete the resources currently dedicated to compiling the administrative record.

26. Based on the technical challenges described above and the very large size of the documents to be reviewed, I anticipate that compiling the administrative record will take 6-9 months.

27. However, to facilitate judicial review at the preliminary injunction stage of this litigation, particularly with respect to assessing Plaintiffs' likelihood of success on the merits, which is dependent on the administrative record, FEMA is prepared to identify key documents that it considered when developing Risk Rating 2.0, which will be included in the complete administrative record. I anticipate that at least two months will be required to compile this subset of the administrative record. Two months is a very rough estimate of the time it would take to review the documents, data, and emails collected from some the key employees and contractors involved in Risk Rating 2.0, as well as the documents available on group SharePoint sites.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on July 6, 2023.

_____
David I. Maurstad
Assistant Administrator for Federal Insurance Directorate