UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.*, | CIVIL ACTION NO. 2:23-CV-01839-DJP-JVM |
| Plaintiff, | |
| v. | JUDGE DARREL PAPILLON |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND THE SUBMISSION DATE**

Defendants ask the Court for 2 more months—for a total of 3 months—to respond to Plaintiffs' motion for a preliminary injunction so they can file "key documents that the agency considered in developing Risk Rating 2.0." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 2. Defendants' request for three months to respond is unusual and unwarranted. Courts routinely resolve non-emergency preliminary injunction motions, like this one, in APA cases in a matter of a two or three months on the basis of only the evidence submitted by the plaintiffs, without any documents from the administrative record, and before moving onto the merits. Defendants provide no compelling reason for departing from that common practice here. Their current response deadline of July 18 gives them more than a month to respond to Plaintiffs' preliminary injunction motion, and Defendants have not explained what information in their key documents justifies tripling their response time.

1

## ARGUMENT

I. **THE COURT SHOULD NOT GIVE DEFENDANTS TWO MORE MONTHS TO RESPOND TO THE PRELIMINARY INJUNCTION MOTION.**

At the heart of Defendants' motion is a conflation of preliminary injunction proceedings with merits proceedings. Defendants cast Plaintiffs' preliminary injunction motion as a request to enjoin Risk Rating 2.0–Equity in Action "immediately and without the requisite review of [FEMA's] reasoning and underlying data." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 2. But that is precisely how *preliminary* relief works and is why Plaintiffs must show at the outset of their case that they are likely to succeed on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008).

At the beginning of an APA case, before production of the administrative record, a preliminary injunction motion asks a court to pause the challenged administrative action while the case is litigated. A court pauses a challenged action if (1) the action is likely to be found unlawful at the conclusion of the case and (2) the action will harm the plaintiffs and the public interest during the pendency of the litigation in ways that cannot be remedied by any *final* relief the court may grant. *See Winter*, 555 U.S. at 21. The plaintiffs bear the burden of proving those factors, and courts generally decide those factors on non-administrative-record evidence submitted by the parties. It is only if the litigation proceeds to the merits question of whether to *permanently* enjoin a challenged action that a court conducts "the requisite review of the agency's reasoning and underlying data." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 2.

2

This case is still at the very preliminary stages, when the question before the Court is merely whether to pause Equity in Action while the lawfulness of that program is litigated. Defendants readily admit they possess massive amounts of information for review—information Plaintiffs have repeatedly requested and never received. The volume of the administrative record alone suggests that the ultimate merits of Plaintiffs' claims will not be resolved quickly. For that reason and other reasons explained below, the Court does not need to—and should not—wait for any portion of the administrative record to be produced before granting preliminary relief.

**A.     The Court Can Grant Preliminary Relief without Any Documents from the Administrative Record.**

Both parties agree that the administrative record is "essential to addressing the *merits* of [some of] Plaintiffs' APA claims." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 4 (emphasis added). And the authority Defendants cite appropriately supports the general need for the administrative record *at the merits stage*. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (explaining that the merits decision "is to be based on the full administrative record that was before the Secretary at the time he made his decision"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573 (2019); 5 U.S.C. § 706 ("In making the foregoing [merits] determinations, the court shall review the whole record or those parts of it cited by a party . . . .").

But courts routinely decide preliminary injunction motions in APA cases without any portion of the administrative record. That approach makes sense because preliminary injunctions require some level of haste, and they are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The administrative record is not necessary at this stage because a party "is not required to prove his case in full." *Id.* In fact, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Id.*

Courts have followed that approach to resolve scores of preliminary injunction motions in APA cases. Take the student loan forgiveness case, for example. The district court in that case decided the preliminary injunction motion on the basis of "the pleadings, affidavits, exhibits, and memoranda of law submitted by the respective parties, and . . . the arguments presented at the hearing." *Nebraska v. Biden*, No. 4:22CV1040 HEA, 2022 WL 11728905, at *1 (E.D. Mo. Oct. 20, 2022) (denying the preliminary injunction and dismissing the case for lack of standing). "The States appealed and moved for a preliminary injunction pending appeal," and the Eighth Circuit granted that motion on the basis of the same evidence. *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022). The Supreme Court then granted certiorari before judgment, *Biden v. Nebraska*, 143 S. Ct. 477 (2022), and reversed and remanded the district court's decision, *Biden v. Nebraska*, No. 22-506, 2023 WL 4277210 (U.S. June 30, 2023)—all without the administrative record.

4

The same approach was followed in the vaccine mandate cases. The district courts in each of those cases resolved the preliminary injunctions prior to receiving the administrative record. *See Louisiana v. Becerra*, 629 F. Supp. 3d 477 (W.D. La. Sept. 21, 2022) (Head State Mandate); U.*S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. Jan. 3, 2022) (Military Vaccine Mandate); *Louisiana v. Biden*, 575 F. Supp. 3d 680 (W.D. La. Dec. 16, 2021) (Federal Contractor Mandate); *Louisiana v. Becerra*, 571 F. Supp. 3d 516 (W.D. La. Nov. 30, 2021) (CMS Mandate); *Missouri v. Biden*, 571 F. Supp. 3d 1079 (E.D. Mo. Nov. 29, 2021) (CMS Mandate); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) (OSHA Mandate).[1]

Many of the defendant agencies in those cases then sought stays of the preliminary injunction from the Courts of Appeals or the Supreme Court—or both—and those Courts reviewed the preliminary injunctions without having the administrative record. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) (Military Vaccine Mandate); *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022) (Military Vaccine Mandate); *Louisiana v. Biden*, 55 F.4th 1017 (5th Cir. 2022) (Federal Contractor Mandate); *Louisiana v. Becerra*, No. 21-30734, 2022 WL 2116002 (5th Cir. 2022) (CMS Mandate); *Missouri v. Biden*, No. 21-3725, 2022 WL 1093036 (8th Cir. 2022) (CMS Mandate); *Biden v. Missouri*, 142 S. Ct. 647 (2022) (CMS Mandate); *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA*, 142 S. Ct. 661 (2022) (OSHA Mandate).

---

[1] In the OSHA mandate, the Fifth Circuit acted as the trial court because the case was filed directly in the Fifth Circuit on a petition for review of agency action as provided by Federal Rule of Appellate Procedure 15.

If district courts were supposed to have the administrative record or some portion of it before ruling on preliminary injunction motions, one would expect that the Court of Appeals or the Supreme Court in at least one of those cases would have stayed the preliminary injunction and remanded for that purpose. And just last week, another district court in Louisiana granted a preliminary injunction motion in an APA case without the administrative record. *See Missouri v. Biden*, No. 3:22-CV-01213, 2023 WL 4335270, at *40 (W.D. La. July 4, 2023), *appeal filed*, No. 23-30445 (5th Cir. July 06, 2023).

Indeed, most federal agencies opposing preliminary injunctions in APA cases ask the court to resolve the preliminary injunction without the administrative record. *See Texas v. United States,* 555 F. Supp. 3d 351, 417 (S.D. Tex. 2021) ("In a status conference with the Parties on July 2, 2021, the Court asked whether the [federal] Government intended to file the administrative record for review. The [federal] Government declined stating that it was unnecessary at this [preliminary injunction] stage of the litigation."), *appeal dismissed*, No. 21-40618, 2022 WL 517281 (5th Cir. Feb. 11, 2022); *Nebraska v. Biden*, No. 4:22CV1040 HEA, (E.D. Mo.), Party Stipulation, Sept. 30, 2022, ECF No. 14 at 2 (agreeing that the preliminary injunction motion should be briefed, heard, and resolved within 2 weeks of its filing—long before the administrative record could be compiled); *Alliance for Hippocratic Medicine v. FDA*, No. 2:22-cv-00223-Z, Joint Mot. to Extend Deadlines and Set Briefing Schedule, Dec. 2, 2022, ECF No. 12 at 1–2 (agreeing to stay merits litigation pending resolution of preliminary injunction motion).

The U.S. Department of Justice (USDOJ), which represents Defendants in this case, is among those agencies that ask courts to resolve preliminary injunction motions without the administrative record. USDOJ previously represented to Plaintiffs that, "[a]s a matter of practice, [USDOJ] typically do[es] not produce the administrative record until after [it answers the complaint]." Email from Kuntal Cholera to Plaintiff State of Florida, Mar. 31, 2021, Ex. A. Even in cases where USDOJ has proposed converting Plaintiffs' preliminary injunction motion into a summary judgment motion so that USDOJ could produce the administrative record, USDOJ offered to produce the record and file its summary judgment motion within 30 to 45 days. Email from Amy Powell to Plaintiff State of Florida, Apr. 23, 2021, Ex. B.

Defendants here have not justified waiting a total of three months for their response to Plaintiffs' preliminary injunction motion. That date does not account for Plaintiffs' reply brief or a hearing. Defendants ask for this amount of time to gather "key documents," without explaining what information those documents will provide or why that information is needed to decide the preliminary injunction motion. Thus, while it may be possible that cases might arise where resolving a preliminary injunction motion requires consideration of materials in the administrative record, this is not one of those cases.

Defendants in a footnote invite the Court to explore what amounts to staying the whole case pending filing of the administrative record and then moving straight to summary judgment once the administrative record is filed. Defs' Mem. in Support

of Their Mot. to Extend the Submission Date, ECF No. 34-1 at n.1. Defendants' proposal would render meaningless Plaintiffs' request for urgent preliminary relief to protect people from the vast harms that Equity in Action imposes. *See* Mem. in Support of Prelim. Injun., ECF No. 14-2, Section II. That is the opposite tact that at least one district court in the Fifth Circuit has recently taken. *See Alliance for Hippocratic Medicine*, No. 2:22-cv-00223-Z, Order, ECF No. 32 (N.D. Tx. Feb. 3, 2023) (ordering briefing sua sponte on whether to *advance* and consolidate the trial on the merits with the hearing on the preliminary injunction as provided by Federal Rule of Civil Procedure 65(a)(2)).

One final note on the administrative record. Defendants claim that it will gather "30 terabytes of data and documents" and that "15 terabytes of potentially responsive documents and data have been identified to date." Murstad Dec., ECF No. 34-2, ¶¶ 8, 12.[2] But Defendants fail to provide any breakdown of this data, including how much of the production Defendants intend to withhold or how much of it can be produced without review (for example, technical data). Absent that information, or a commitment that Defendants intend to conduct a document-by-document review of every document, simply asserting that large quantities of data exist does not justify an extension of the preliminary injunction motion.

In sum, Plaintiffs' motion for preliminary injunction shows that the agency has flouted its statutory disclosure mandate; arbitrarily and capriciously failed to consider crucial factors, failed to account for reliance interests, departed from prior

---

[2] FEMA also acknowledges that included in this is geospatial data, which typically accounts for a significant amount of stored data given its size. Murstad Dec., ECF No. 34-2, ¶ 20.

of Their Mot. to Extend the Submission Date, ECF No. 34-1 at n.1. Defendants' proposal would render meaningless Plaintiffs' request for urgent preliminary relief to protect people from the vast harms that Equity in Action imposes. *See* Mem. in Support of Prelim. Injun., ECF No. 14-2, Section II. That is the opposite tact that at least one district court in the Fifth Circuit has recently taken. *See Alliance for Hippocratic Medicine*, No. 2:22-cv-00223-Z, Order, ECF No. 32 (N.D. Tx. Feb. 3, 2023) (ordering briefing sua sponte on whether to *advance* and consolidate the trial on the merits with the hearing on the preliminary injunction as provided by Federal Rule of Civil Procedure 65(a)(2)).

One final note on the administrative record. Defendants claim that it will gather "30 terabytes of data and documents" and that "15 terabytes of potentially responsive documents and data have been identified to date." Murstad Dec., ECF No. 34-2, ¶¶ 8, 12.[2] But Defendants fail to provide any breakdown of this data, including how much of the production Defendants intend to withhold or how much of it can be produced without review (for example, technical data). Absent that information, or a commitment that Defendants intend to conduct a document-by-document review of every document, simply asserting that large quantities of data exist does not justify an extension of the preliminary injunction motion.

In sum, Plaintiffs' motion for preliminary injunction shows that the agency has flouted its statutory disclosure mandate; arbitrarily and capriciously failed to consider crucial factors, failed to account for reliance interests, departed from prior

---

[2] FEMA also acknowledges that included in this is geospatial data, which typically accounts for a significant amount of stored data given its size. Murstad Dec., ECF No. 34-2, ¶ 20.

policy without justification, and pretextually raised rates to advance an unrelated agenda; unlawfully bypassed notice and comment; exceeded its statutory authority; violated the Spending Clause; and violated the National Environmental Policy Act (NEPA). While resolving the merits of many of those claims ultimately will require the administrative record, Plaintiffs have supported the claims with the exact same type of evidence as was used to resolve the preliminary injunction in the student loan forgiveness case. *See Nebraska v. Biden*, 2022 WL 11728905, at *1, *cert. granted before judgment*, 143 S. Ct. 477 (2022), *and rev'd and remanded*, No. 22-506, 2023 WL 4277210 (U.S. June 30, 2023) (finding that evidence adequately demonstrated plaintiff States' standing). Defendants will have an opportunity to respond to Plaintiffs' evidence with their own responses, declarations, exhibits, memoranda of law, and testimony.

The abundance of authority cited above shows that courts, FEMA, USDOJ, and other federal agencies agree that standard practice in APA cases is to decide preliminary injunction motions before the administrative record is available. Clearly, this Court is capable of giving "meaningful judicial review" to Plaintiff's preliminary injunction motion even without the administrative record. Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 4.

### B.  Defendants' Current July 18 Due Date Is Reasonable.

This Court's Local Rules govern the timeline for responding to motions and essentially allow the moving party to pick the responding party's due date. Under Local Rule 7.2, "counsel filing a motion must, at the time of filing, notice it for submission within a reasonable time." L.R. 7.2. "The noticed date is the date the

9

motion is deemed submitted to the court for decision and after which no further briefing will be allowed, except with prior leave of court." *Id.* "No oral argument, in-court presentation or live hearing concerning contested motions will be conducted on the submission date, except when requested in accordance with Local Rule 78.1 or if ordered by the court." *Id.*

The moving party must file the motion "not later than the fifteenth day preceding the date assigned for submission and actual notice of the submission date must be given to opposing counsel at least fifteen days before the submission date, regardless of which FRCP 5(b) service method is used." *Id.* "The motion and supporting memorandum must also be served with the notice." *Id.* The opposing party "must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." L.R. 7.5.

Here, Plaintiffs picked a submission date from the Court's available dates—July 26—that provided Defendants with more than 30 days to respond. Plaintiffs filed their motion on June 14, *see* Mot. for Prelim. Injun., ECF No. 14, selected July 26 as the submission date, *see* Notice of Submission, ECF No. 14-1 at 1, and provided Defendants with notice of that motion and its July 26 submission date on June 15, *see* Certificate of Service, ECF No. 24 at 1. Under Local Rule 7.5, the July 26 submission date in turn set July 18 as Defendants' response deadline, which gives Defendants more than 30 days between receiving notice of the preliminary injunction motion on June 15 and their July 18 response deadline.

10

In addition to having more than a month to respond, Defendants also purport to have known about this case 2.5 months before Plaintiffs filed their preliminary injunction motion. *See* Maurstad Dec., ECF No. 34-2 at ¶ 7. And yet, they have only recently appeared to ask for more time to respond to that motion and to ask the Court to hurry up and decide that request on an expedited basis. *See* Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1. Defendants' hurry-up-and-slow-down response is particularly baffling in light of the 3-month head start they say they had. *See* Maurstad Dec., ECF No. 34-2 at ¶ 7.

Having more than a month to respond to a preliminary injunction motion is a reasonable amount of time and a far cry from "an emergency preliminary injunction" or "an extremely accelerated timeline." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 1, 3. FEMA has litigated preliminary injunction motions in the Eastern District of Louisiana, and it should know that those proceedings often run about two months from filing to resolution. *See, e.g.*, *Ridgely v. FEMA*, No. 2:07-CV-02146 (E.D. La.).

In *Ridgely*, a class-action lawsuit brought against FEMA, the class filed a non-emergency preliminary injunction motion on May 1, 2007, *id.*, ECF No. 11, FEMA responded a month later, *id.*, ECF No. 51, the hearing was held 13 days after FEMA's responded, *id.*, ECF No. 79, and that same date the court issued an order granting preliminary relief, *id.*, ECF No. 81—for a total of a month and a half from filing to resolution of the preliminary injunction motion. Although that preliminary injunction

11

was later vacated on appeal, the timeline of those proceedings was business as usual in the eyes of the Fifth Circuit. *See Ridgely v. FEMA*, 512 F.3d 727 (5th Cir. 2008).

Emergency preliminary injunction motions, on the other hand, are often fully briefed, heard, and decided within weeks or even days of their filing. *See, e.g.*, *Sole v. Wyner*, 551 U.S. 74, 79 (2007) ("The day after the complaint was filed, . . . the District Court heard [the] emergency motion for a preliminary injunction. Although disconcerted by the hurried character of the proceeding, the court granted the preliminary injunction." (internal citation omitted)); *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 830 (S.D. Tex. Jan. 21, 2022) (briefing, hearing, and granting preliminary injunctive relief within 30 days of the motion's filing), *aff'd*, 63 F.4th 366, 381 (5th Cir. 2023) (en banc) (referring to relief as "an emergency preliminary injunction"). Defendants cannot sit on the motion for several weeks and then accuse Plaintiffs of rushing for an "emergency preliminary injunction" when Plaintiffs provided over 30 days for response. ECF No. 34-1 at 1.

Defendants assert that Plaintiffs "seek an emergency preliminary injunction that would disrupt the status quo by enjoining a fully[ ]implemented rating system." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 1. They then argue against their own view of Plaintiffs' motion: "there is no emergency that necessitates preliminary relief or proceeding on an extremely accelerated timeline." *Id.* at 3. The appropriate forum for resolution of those arguments is in response to Plaintiffs' motion for preliminary injunction, not in Defendants' motion for extension of time.

12

Preliminary relief is not emergency relief, and Plaintiffs neither used the word "emergency" in their motion nor requested an accelerated pace. *See Sole*, 551 U.S. at 79; *Feds for Med. Freedom*, 581 F. Supp. 3d at 830. As explained more fully in Plaintiffs' motion for injunctive relief, *see* Mot. for Prelim. Injun., ECF No. 14-2 at 11, the legal standard for granting a preliminary injunction is not whether the challenged action poses an emergency, but whether it is likely unlawful and will cause Plaintiffs irreparable harm during the litigation if not paused while the case is litigated, among other factors.

Defendants' declaration that Plaintiffs filed an emergency motion simply isn't true. Plaintiffs' motion for a preliminary injunction seeks to pause Equity in Action, as all preliminary injunctions do, and Plaintiffs' provided Defendants with a significant period of time to respond. Defendants' sudden demand for more time—with no warning or time for Plaintiffs to negotiate—falls outside the standard two-month lifespan for non-emergency preliminary injunction proceedings in the Eastern District of Louisiana. *See Ridgely*, No. 2:07-CV-02146 (E.D. La.).

### C.  Defendants Conflate Substance and Deadlines.

The sole issue before the Court in this motion is whether Defendants are entitled to a two-month extension of time to respond to Plaintiffs' preliminary injunction motion. To the extent Defendants' substantive arguments have anything to do with the present motions, Plaintiffs respond briefly below. But Plaintiffs reserve the opportunity to respond to any substantive arguments in Plaintiffs' reply in support of the preliminary injunction motion, which is the appropriate vehicle for resolving substantive disputes.

Defendants argue that the more than 60 declarations that Plaintiffs submitted to show standing and entitlement to preliminary relief are "irrelevant to the merits of Plaintiffs' claims" because those declarations were not before FEMA when it was developing Equity in Action. Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 4. First, this is a substantive argument about the content contained in Plaintiffs' declaration, which is inappropriate in a motion for additional time. Second, at this stage, Plaintiffs bear the burden of demonstrating injury both for standing purposes and entitlement to preliminary relief.[3] *Winter*, 555 U.S. at 20. And finally, if Defendants believe the substance of the declarations is irrelevant, that would only serve to streamline the preliminary injunction motion.

Defendants next assert in opposition to Plaintiffs' requested relief that Equity in Action "was fully implemented as of April 1, 2023" and that its rates "have been in effect for 1.5 years." Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 1–2. Again, that statement conflates the substance of Plaintiffs' arguments with the timeline in which Defendants must respond to Plaintiffs' arguments, which is the sole issue before this Court today. Plaintiffs will respond to the substance of that statement in their reply in support of their preliminary

---

[3] Like any good litigant who bears the burden of proof, Plaintiffs have come to court with evidence in hand to satisfy their standing and the *Winter* factors. And they have asked the Court to allow them to present live witness testimony at the hearing. Pls' Req. for Live Hr'g, ECF No. 15. There is nothing special about APA cases that would relieve them of their burden of proof at this stage. In fact, it is routine to present written evidence and live testimony to support preliminary injunction motions in APA cases. *See Louisiana v. Biden*, No. 1:21-CV-03867 (W.D. La), Mot. for Prelim. Inj., Nov. 12, 2021, ECF No. 10 (attaching declarations); *id.* No. 1:21-CV-03867 (W.D. La), Electronic Order, Dec. 4, 2021, ECF No. 36 (granting motion to present live testimony); *Louisiana v. Biden*, 575 F. Supp. 3d 680, 687 (W.D. La. 2021) (granting preliminary injunction following hearing where "two witnesses for the Plaintiff States testified"), *aff'd*, 55 F.4th 1017 (5th Cir. 2022).

14

injunction motion. To the extent Defendants rely on that statement as support for extending present deadlines, the July 18 response deadline provides Defendants over one month in which to respond, a reasonable timeline in the course of litigation.

Defendants next claim that the much higher Equity in Action rates actually "benefit policyholders" because Equity in Action gave over 90% of policyholders a rate decrease or an increase of less than $20 and that Plaintiffs have not explained why those rates should be enjoined. Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF No. 34-1 at 2. Again, this is an entirely separate, substantive issue, one that is appropriately addressed in response to Plaintiffs' preliminary injunction motion, not as justification for a lengthy extension of time. Moreover, Plaintiffs' complaint and preliminary injunction motion clearly explain that rates in Louisiana will increase by an average of 134%, with some local communities facing average increases of 500%, 700%, or even 1000%. Plaintiffs extensively referenced data that FEMA itself recently released showing those average increases. *See, e.g.* Complaint, ECF No. 1 at ¶¶ 555-56. Plaintiffs' arguments and evidence show Equity in Action's staggering rate increases are already pushing people out of their homes and to the brink of foreclosure and bankruptcy, and swift resolution of Plaintiffs' motion is needed. *See, e.g.*, GOHSEP Dec., ECF No. 1-1 at ¶¶ 56–57; Hebert Dec., ECF No. 1-54 at ¶ 33.

Finally, Defendants' basis for delaying their response in order to compile the administrative record falls flat. Plaintiffs for years have been requesting the very documents FEMA now admits it readily possesses. Those documents should already

be publicly available and in Plaintiffs' possession. It is ironic that FEMA justifies further delay by pointing out the "great[] benefit" those materials hold for Plaintiffs. Defs' Mem. in Support of Their Mot. to Extend the Submission Date, ECF 34-1 at 3.

The Court should not give Defendants an additional two months to respond to the preliminary injunction motion so that they can gather key documents. As Plaintiffs' arguments and evidence show, they need to secure preliminary injunctive relief now. Courts, FEMA, and other agencies routinely resolve preliminary injunction motions in APA cases before the administrative record is available. Defendants provide no justifications for departing from that path in this litigation. Instead, they try to restyle their substantive disagreements with Plaintiffs' arguments into a reason for extending litigation timelines. The Court should reject such a tactic.

## II. PLAINTIFFS DO NOT OPPOSE A MODEST EXTENSION.

As explained to Defendants in Plaintiffs' response to their email request for a two-month extension of time, Plaintiffs would be amenable to a modest extension up to and including July 31 for Defendants to respond.[4] But rather than negotiate, Defendants immediately filed the present motion. Plaintiffs reassert that the following timeline would be appropriate in light of Defendants' request:

July 31: Defendants respond to the preliminary injunction motion.

August 7: Plaintiffs file their reply brief.

---

[4] Plaintiffs' email actually proposed July 30 as the new due date for Defendants' response. Because July 30 falls on a Sunday, the Civil Rules of Civil Procedure would automatically extend that due date to the following Monday, July 31. Accordingly, Plaintiffs propose July 31 as Defendants' new due date.

16

August 14: The Court holds a hearing with live witness testimony.[5]

Plaintiffs oppose any extension beyond this schedule for the reasons explained above.

## CONCLUSION

The Court should not give Defendants two more months to respond to the preliminary injunction motion. Nor should the Court allow Defendants to conflate the preliminary injunction motion with merits where the parties must prove their arguments and defenses in full. If the Court is inclined to grant any extension, it should grant a modest extension as proposed by Plaintiffs.

Dated:   July 11, 2023                     Respectfully submitted,

 

                                                  **JEFF LANDRY**
                                                   ATTORNEY GENERAL

By: */s/ Elizabeth B. Murrill*
ELIZABETH B. MURRILL (La #20685)
  Solicitor General
MORGAN BRUNGARD (La #40298)
  Assistant Solicitor General
TRACY SHORT (La #23940)
  Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, Louisiana 70802
Tel: (225) 326-6766
murrille@ag.louisiana.gov
brungardm@ag.louisiana.gov
shortt@ag.louisiana.gov

*Counsel for the State of Louisiana, Plaintiff Parishes, Plaintiff Municipalities, Plaintiff Levee Districts, Plaintiff Drainage Districts, and Plaintiff Associations*

---

[5] Plaintiffs intend to present all witness testimony in one day, but it may be necessary to carry over into a second day.

ASHLEY MOODY
   Attorney General
JAMES H. PERCIVAL*
   Chief of Staff
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

RAÚL LABRADOR
   Attorney General
THEODORE J. WOLD *
   Solicitor General
OFFICE OF THE IDAHO ATTORNEY GENERAL
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 999-0910
Email: Theodore.Wold@ag.idaho.gov

*Counsel for State of Idaho*

DANIEL CAMERON
   Attorney General of Kentucky
LINDSEY KEISER*
   Assistant Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5517

*Counsel for the State of Kentucky*

DREW H. WRIGLEY
   Attorney General
PHILIP AXT (ND Bar No. 09585)*
   Solicitor General
North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for the State of North Dakota*

ALAN WILSON
   South Carolina Attorney General
ROBERT D. COOK
   Solicitor General
J. EMORY SMITH, JR.*
Deputy Solicitor General
THOMAS T. HYDRICK*
Assistant Deputy Solicitor General
JOSEPH D. SPATE*
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

JOHN SCOTT
   Provisional Attorney General
RALPH MOLINA
   Deputy Attorney General for Legal Strategy
LEIF A. OLSON*
Chief, Special Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711
(512) 463-4139
Leif.Olson@oag.texas.gov

*Counsel for the State of Texas*

LYNN FITCH
  Attorney General
JUSTIN L. MATHENY*
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
550 High Street, Suite 1200
Jackson, MS 39201
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

AUSTIN KNUDSEN
  Attorney General
CHRISTIAN B. CORRIGAN*
  Solicitor General
PETER M. TORSTENSEN, JR.*
  Assistant Solicitor General
Montana Department of Justice
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Christian.Corrigan@mt.gov
Peter.Torstensen.@mt.gov

*Counsel for the State of Montana*

*Pro hac vice* application forthcoming

JASON S. MIYARES
  Attorney General
ANDREW N. FERGUSON
  Solicitor General
KEVIN M. GALLAGHER*
  Deputy Solicitor General
Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*