**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| LOUISIANA STATE, *et al.,* | CIVIL ACTION NO. |
| | 2:23-CV-01839-DJP-JVM |
| Plaintiff, | |
| | JUDGE DARREL PAPILLION |
| v. | |
| | MAGISTRATE JUDGE JANIS VAN |
| DEPARTMENT OF HOMELAND | MEERVELD |
| SECURITY, *et al.,* | |
| | |
| Defendants. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY**
**INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

INTRODUCTION ..........................................................................................................................1

    I.    Plaintiffs Have Standing...................................................................................................2

    II.   Plaintiffs' Harms Are Irreparable. ..................................................................................3

    III.   Plaintiffs Are Likely to Succeed on the Merits..............................................................5

      A.   Defendants Satisfy No Notice-and-Comment Exception. .......................................5

      B.   Equity in Action Exceeds Defendants' Statutory Authority....................................11

      C.   Equity in Action is Contrary to Law. .....................................................................12

      D.   Equity in Action Is Arbitrary and Capricious. ........................................................15

      E.   Equity in Action Violates the Spending Clause. .....................................................19

      F.   Equity in Action Violates NEPA.............................................................................20

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven, Inc. v. Khan,*
  977 F. Supp. 2d 214 (E.D.N.Y. 2013) .................................................................................. 5

*Ala. Ass'n of Realtors v. HHS,*
  141 S. Ct. 2485 (2021) ............................................................................................. 4, 5, 12

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
  522 U.S. 359 (1998) ............................................................................................................ 17

*Allina Health Servs. v. Sebelius,*
  746 F.3d 1102 (D.C. Cir. 2014) .................................................................................... 9, 11

*Am. Clinical Lab. Ass'n v. Azar,*
  931 F.3d 1195 (D.C. Cir. 2019) ........................................................................................ 11

*Azar v. Allina Health Services,*
  139 S. Ct. 1804 (2019) ......................................................................................................... 9

*Burlington Truck Lines v. United States,*
  371 U.S. 156 (1962) ............................................................................................................ 17

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ............................................................................................................ 16

*Chrysler Corp. v. Brown,*
  441 U.S. 281 (1979) .............................................................................................................. 6

*City of Phila. v. Att'y Gen.,*
  916 F.3d 276 (3d Cir. 2019) ................................................................................................ 1

*Clarke v. CFTC,*
  2023 WL 4677542 (5th Cir. July 21, 2023) ....................................................................... 4

*Clinton v. City of New York,*
  524 U.S. 417 (1998) .............................................................................................................. 3

*Commerce v. New York,*
  139 S. Ct. 2551 (2019) ......................................................................................................... 3

*Czyzewski v. Jevic Holding Corp.,*
  580 U.S. 451 (2017) .............................................................................................................. 3

*Daniels Health Sci., L.L.C. v. Vascular Health Sci., L.L.C.,*
  710 F.3d 579 (5th Cir. 2013) ............................................................................................... 4

*Data Mktg. P'ship v. Dep't of Labor,*
  45 F.4th 846 (5th Cir. 2022)................................................................................15

*Denning v. Bond Pharm.,*
  50 F.4th 445 (5th Cir. 2022)..................................................................................2

*El Paso Cnty. v. Trump,*
  982 F.3d 332 (5th Cir. 2020)..................................................................................2

*El Paso Elec. Co. v. FERC,*
  2023 WL 4926812 (5th Cir. Aug. 2, 2023)................................................... 13, 16

*Elec. Privacy Info. Ctr. v. FAA,*
  892 F.3d 1249 (D.C. Cir. 2018).............................................................................1

*FDA v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000)..............................................................................................12

*Florida Key Deer v. Paulison,*
  522 F.3d 1133 (11th Cir. 2008)...........................................................................20

*Geyen v. Marsh,*
  775 F.2d 1303 (5th Cir. 1985).............................................................................16

*GMC v. Tracy,*
  519 U.S. 278 (1997)................................................................................................3

*Harris v. Mutual of Omaha Companies,*
  992 F.2d 706 (7th Cir. 1993)............................................................................ 2, 8

*Hayward v. DOL,*
  536 F.3d 376 (5th Cir. 2008)........................................................................... 1, 14

*Hollingsworth v. Harris,*
  608 F.2d 1026 (5th Cir. 1979)...............................................................................2

*Kan. Health Care Ass'n v. Kan. Dep't of Soc. and Rehab. Servs.,*
  31 F.3d 1536 (10th Cir. 1994)...............................................................................5

*Kentucky v. Biden,*
  57 F.4th 545 (6th Cir. 2023)..................................................................................4

*Key Deer v. Stickney,*
  864 F. Supp. 1222 (S.D. Fla. 1994)....................................................................20

*King v. Burwell,*
  576 U.S. 473 (2015)..............................................................................................12

*Lincoln v. Vigil,*
  508 U.S. 182 (1993) ................................................................................................... 13, 15

*Markle Interests, L.L.C. v. Fish & Wildlife Serv.,*
  827 F.3d 452 (5th Cir. 2016) ................................................................................................2

*McGowan v. Maryland,*
  366 U.S. 420 (1961) ................................................................................................3

*Medina Cty. Environ. Action v. Surface Transp,*
  602 F.3d 687 (5th Cir. 2010) ................................................................................................1

*Minto v. U.S. Off. of Pers. Mgmt.,*
  765 F. App'x 779 (3d Cir. 2019) ................................................................................................15

*Mock v. Garland,*
  2023 WL 4882763 (5th Cir. Aug. 1, 2023) ................................................................................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................................15

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.,*
  842 F. Supp. 2d 127 (D.D.C. 2012) ................................................................................................1

*NewCsi, Inc. v. Staffing 360 Sols., Inc.,*
  865 F.3d 251 (5th Cir. 2017) ................................................................................................6

*NFIB v. Sebelius,*
  567 U.S. 519 (2012) ................................................................................................20

*NLRB v. Wyman-Gordon Co.,*
  394 U.S. 759 (1969) ................................................................................................6

*NRDC v. Wheeler,*
  955 F.3d 68 (D.C. Cir. 2020) ................................................................................................ 9, 11

*NRDC v. Winter,*
  518 F.3d 658 (9th Cir. 2008), *rev'd on other grounds* 555 U.S. 7 (2009) ................................................................................................1

*OCA-Greater Hous. v. Texas,*
  867 F.3d 604 (5th Cir. 2017) ................................................................................................3

*Oceana, Inc. v. Pritzker,*
  126 F. Supp. 3d 110 (D.D.C. 2015) ................................................................................................1

*Pharmaceutical Research & Mfrs. Of America v. FTC,*
  790 F.3d 198 (D.C. Cir. 2015) ................................................................................................1

*Phillips Petroleum Co. v. Johnson,*
    22 F.3d 616 (5th Cir. 1994) ................................................................................. 6, 7

*Porter v. Califano,*
    592 F.2d 770 (5th Cir. 1979) ...................................................................................1

*Spong v. Fidelity Nat'l Prop. & Cas.,*
    787 F.3d 296 (5th Cir. 2014) ................................................................... 13, 15, 17

*Sw. Elec. Power Co. v. EPA,*
    920 F.3d 999 (5th Cir. 2019) .................................................................................15

*Tex. Democratic Party v. Benkiser,*
    459 F.3d 582 (5th Cir. 2006) ...................................................................................2

*Texas Children's Hosp. v. Burwell,*
    76 F. Supp. 3d 224 (D.D.C. 2014) .........................................................................5

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) ...................................................................................4

*Texas v. Rettig,*
    987 F.3d 518 (5th Cir. 2021) ...................................................................................2

*U.S. Telecom Ass'n v. FCC,*
    400 F.3d 29 (D.C. Cir. 2005) ..................................................................................6

*United States v. Johnson,*
    632 F.3d 912 (5th Cir. 2011) .................................................................................10

*Univ. of Tex. v. Camenisch,*
    451 U.S. 390 (1981) .................................................................................................3

*W & T Offshore, Inc. v. Bernhardt,*
    946 F.3d 227 (5th Cir. 2019) ............................................................................. 7, 8

*Wages & White Lion Invs., LLC,*
    16 F.4th 1130 (5th Cir. 2021) ........................................................................... 4, 15

*West Virginia v. Dep't of the Treasury,*
    59 F.4th 1124 (11th Cir. 2023) ...............................................................................4

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ...........................................................................................12

*Young Conservatives of Tex. Found. v. Smatresk,*
    73 F.4th 304 (5th Cir. 2023) ............................................................................. 2, 3

vi

**Statutes**

5 U.S.C. § 553 ................................................................................................................ 6, 11

16 U.S.C. § 3501 .................................................................................................................19

42 U.S.C. § 4001 .................................................................................................................15

42 U.S.C. § 4011 .................................................................................................................13

42 U.S.C. § 4013 ...................................................................................................................8

42 U.S.C. § 4014 ................................................................................................8, 12, 14, 18

42 U.S.C. § 4015 ..................................................................................................13, 14, 15

42 U.S.C. § 4020 .................................................................................................................14

42 U.S.C. § 4024 .................................................................................................................14

42 U.S.C. § 4102 .................................................................................................................19

42 USC § 4002 ...................................................................................................................20

La. Rev. Stat. § 38:84 ........................................................................................................20

**Other Authorities**

*A Chronology of Major Events Affecting the National Flood Insurance Program*, Am. Inst. for Res. 16 (Dec. 2005), perma.cc/6PMJ-NGUT ................................................................................18

*An Evaluation of Risk Rating 2.0 Impacts on National Flood Insurance Program Affordability*, Coalition for Sustainable Flood Insurance 10 (Sept. 2022), perma.cc/9UYK-ASJK ...................................7, 12, 13

*Conversations about Risk Rating 2.0 Part I*, Wharton (May 23, 2022), perma.cc/Q6VD-BG8J ......... 17, 20

*Conversations about Risk Rating 2.0, Part IV*, Wharton (June 3, 2022), perma.cc/FK2S-X2LZ ..............16

*Cost of Flood Insurance for Single-Family Homes under Risk Rating 2.0*, FEMA (Apr. 19, 2023), perma.cc/K4NL-Y7M8 ................................................................................. 5, 7, 15

*DHS Statement on New National Flood Insurance Program Pricing Methodology*, DHS (Apr. 1, 2021), perma.cc/2VXR-B2KZ ................................................................................17

*FEMA Announces Initial Initiatives to Advance Equity*, FEMA (July 21, 2021), perma.cc/A6AS-BDSY 17

FEMA Defines Equity in its Mission of Making Programs More Accessible, FEMA (Sept. 9, 2021), perma.cc/RW27-HJRX ................................................................................17

*FEMA Efforts Advancing Community Driven Relocation*, FEMA (Dec. 2, 2022), perma.cc/9J53-Q9F5 ..19

*FEMA Equity in Action Plan*, FEMA 15 (Feb. 23, 2022), perma.cc/GX7L-7EAG ..............................17

*FEMA Strategic Plan, Building the FEMA our Nation Needs and Deserves*, FEMA (Dec. 9, 2021), perma.cc/QD8L-GY2R .................................................................................................................18

*FEMA Updates Its Flood Insurance Rating Methodology to Deliver More Equitable Pricing*, FEMA 4 (Apr. 1, 2021), perma.cc/LEZ8LTEP .................................................................................................. 7, 12

U.S. Gov't Accountability Off., GAO-23-105977, at 45 (July 2023), perma.cc/M2EZ-6B3H ..........16

## INTRODUCTION

Plaintiffs have demonstrated they are likely to succeed on the merits, they will suffer irreparable harm, and that the balance of the equities weighs in their favor. FEMA's arguments to the contrary fail as a matter of both law and fact.

As an initial matter, Defendants are wrong many times over that this Court should discount Plaintiffs' detailed evidence because Plaintiffs can only cite the (still non-existent) administrative record. ECF No. 56, 12. The "record rule" does not apply against Plaintiffs here. It exists to limit agencies, not to reward them. *Hayward v. DOL*, 536 F.3d 376, 380 (5th Cir. 2008). It does not apply against plaintiffs who are denied an opportunity to enter the evidence into the administrative record through notice and comment. *Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110, 113-14 (D.D.C. 2015) (citing *Pharmaceutical Research & Mfrs. Of America v. FTC*, 790 F.3d 198, 211 (D.C. Cir. 2015)). It does not apply against plaintiffs when the agency has failed to produce the record in time for the Court's decision. *NRDC v. Winter*, 518 F.3d 658, 690 n.49 (9th Cir. 2008), *rev'd on other grounds* 555 U.S. 7 (2009); *see also Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (absent an administrative record "plaintiffs would likely be entitled to some discovery to enable meaningful judicial review"). It does not apply to claims with a constitutional aspect, *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979), which here the statutory-authority and contrary-to-law claims (as well as Spending Clause claims) have, *City of Phila. v. Att'y Gen.*, 916 F.3d 276, 284 (3d Cir. 2019). It does not apply where the agency's failure to explain its action otherwise "frustrates judicial review." *Medina Cty. Environ. Action v. Surface Transp*, 602 F.3d 687, 706 (5th Cir. 2010). And it does not apply to any evidence of injuries or harms. *Elec. Privacy Info. Ctr. v. FAA*, 892 F.3d 1249, 1256 (D.C. Cir. 2018) (*requiring* supporting evidence "where standing is not clear from the administrative record"). Plaintiffs' evidence is plainly appropriate to satisfy their burden at the preliminary injunction stage, and it would be improper to review this motion without it.

## I.   PLAINTIFFS HAVE STANDING.

The most straightforward basis for standing is Plaintiffs' economic injuries. Economic injury is the "quintessential injury upon which to base standing." *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006); *see also Hollingsworth v. Harris*, 608 F.2d 1026, 1028 (5th Cir. 1979) (collecting economic-injury cases). So "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered." *Denning v. Bond Pharm.*, 50 F.4th 445, 451 (5th Cir. 2022). When plaintiffs challenge a government program that causes them to "hand[] over money," they "have standing" to challenge the program. *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 310–11 (5th Cir. 2023).

Although only "one" plaintiff needs only one injury for this Court to proceed to the merits, *Texas v. Rettig*, 987 F.3d 518, 528 (5th Cir. 2021), Plaintiffs' economic injuries are many: Equity in Action causes Plaintiff parishes with covered policies to "hand[] over money." *Smatresk*, 73 F.4th at 310. For example, St. Tammany Parish has seen increases to its own NFIP policies, costing the Parish an additional $2,877 under Equity in Action. ECF No. 1-28, ¶¶ 37–39. Many other policyholders are facing the same devastating increase in costs. *See, e.g.*, ECF No. 14-2 at 36–38. Plaintiffs suffer other economic injuries in the form of financial liability for grants and funds and increased enforcement, ECF No. 14, 40, 42; ECF No. 14-2, ¶ 269, and more costs when rebuilding after floods, ECF No. 14-2, 42–43. Plaintiffs also suffer decreased property value from the hardship of increased premiums. *See, e.g.,* ECF No. 1-46, ¶¶ 15-17; ECF No. 1-7, ¶ 26-28; ECF No. 1-13, ¶ 26; ECF No. 1-27, ¶¶ 37–41. "[L]ost property value … is a concrete and particularized injury that supports standing." *Markle Interests, L.L.C. v. Fish & Wildlife Serv.*, 827 F.3d 452, 463 (5th Cir. 2016). And Plaintiff governments not only suffer lost tax revenue from the resultant economic decline, ECF No. 14-2, 43, but suffer loss of *specific* property-tax revenue directly from increased premiums, ECF No. 14-2, 39. That loss of "specific tax revenues" satisfies Article III. *El Paso Cnty. v. Trump*, 982 F.3d 332, 339 (5th Cir. 2020).

Defendants counter that those injuries are "de minimis." Dkt. 56, 5, 7. But an economic injury "need not measure more than an identifiable trifle." *Smatresk*, 73 F.4th at 311 (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)). Defendants cite no authority for a novel "de minimis" exception to Article III. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *McGowan v. Maryland*, 366 U.S. 420, 430—31 (1961) (five-dollar loss). Here, Plaintiffs' economic injuries are in the thousands and millions of dollars. *See, e.g.* ECF No. 1, ¶¶ 511, 230–56, 257–547. Although Defendants suggest that those harms are not redressable, they are caused by Equity in Action's increased rates, and a return to the legacy rating system will, by definition, bring down the increased rates. At a minimum, the Court can freeze the implementation of Equity in Action to maintain the existing rates. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Defendants are wrong that those economic injuries are invalid because they are "speculative" or "attenuated." ECF No. 56, 40–41. "Article III 'requires no more than *de facto* causality.'" *Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). Many of Plaintiffs' injuries are as direct as possible because they involve an immediate increase in costs from Equity in Action. And even Plaintiffs' indirect economic injuries fall comfortably within Article III. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (explaining party "likely to suffer economic injury as a result of [a challenged action] that changes market conditions satisfies [the] standing test"); *GMC v. Tracy*, 519 U.S. 278, 286 (1997) (car companies have standing to challenge a new tax on gas producers because it will likely increase prices).

Finally, Equity in Action also injures Plaintiffs in dozens of other ways, including diversion of resources, harm to their property, denial of their procedural rights, and harm to their sovereign interests in enforcing their laws. ECF No. 1, ¶¶ 257–547.

## II.    PLAINTIFFS' HARMS ARE IRREPARABLE.

Those same economic injuries satisfy the "irreparable harm" requirement because the government has sovereign immunity from damages action. *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *see also Wages & White Lion Invs., LLC*, 16 F.4th 1130, 1142 (5th Cir. 2021); *West Virginia v. Dep't of the Treasury*, 59 F.4th 1124, 1149 (11th Cir. 2023) ("[M]oney damages cannot adequately compensate the States because the federal government generally enjoys immunity from suit"). Defendants misrepresent *Wages & White Lion* to limit that holding to losses that "threaten[] the very existence" of Plaintiffs. The *Wages & White Lion* plaintiffs happened to have losses that threatened their existence, but the Fifth Circuit never suggested that was required. 16 F.4th at 1142. "Irreparable harm" simply refers to any ordinary injury for which there is "no adequate remedy at law." *Daniels Health Sci., L.L.C. v. Vascular Health Sci., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Ordinary economic losses can be irreparable regardless of whether they threaten the plaintiff's existence. *See Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (plaintiffs suffered "irreparable harm" in form of lost "rent payments" with uncertain recovery). Just last month, the Fifth Circuit confirmed that any "harms [that] are economic" are irreparable when they are against the federal government. *Clarke v. CFTC*, 2023 WL 4677542, at *10 (5th Cir. July 21, 2023); *see also Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (any "monetary losses" are irreparable when against federal government). And here, Plaintiffs' economic losses are devastating. *See, e.g.*, ECF No. 1, ¶¶ 511, 230–56.

Defendants are also wrong in their suggestion that Plaintiffs, all government entities, could recover those losses at law through a "takings" or "unjust enrichment" action. ECF No. 56, 7. Defendants do not explain how each of Plaintiffs' injuries meets the elements of either action. Defendants also conflate injury at the standing phase with ultimate remedy at the merits stage. That Equity in Action has caused Plaintiffs economic harm (in addition to others) does not limit their remedy to recovery of those funds. Defendants offer no support for the proposition that Plaintiffs cannot pursue injunctive relief here just because other claims or remedies might also be available.

Finally, Defendants are wrong that Plaintiffs' harms are not "irreparable" because Plaintiffs did not bring suit immediately, but instead tried other methods of resolving their problem before going to court two months after Equity in Action was fully implemented. ECF No. 56, 8–9. If Plaintiffs had sued any earlier, Defendants would have said that their harms were too "speculative" and they needed to wait longer. *Id.* at 5. Because of FEMA's refusal to provide information, Plaintiffs did not know what effect Equity in Action would have on their rates until they received their insurance declaration page, *after* they had already signed their renewal contract. *See, e.g.*, ECF No. 1, ¶¶ 20, 25-26. FEMA finally released data showing average increases for States, parishes, and zip codes in April 2023, *See Cost of Flood Insurance for Single-Family Homes under Risk Rating 2.0*, FEMA (Apr. 19, 2023), perma.cc/K4NL-Y7M8, FEMA Exhibit 3. And now, Plaintiffs have observed the rate increases.

In any event, courts routinely grant preliminary injunctions to plaintiffs on similar timelines. *See, e.g.*, *Ala. Ass'n of Realtors*, 141 S. Ct. 2485 (2021) (lawsuit brought eight months after eviction-moratorium injuries began); *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 235 (E.D.N.Y. 2013) (three-year delay); *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (two-year delay); *Kan. Health Care Ass'n v. Kan. Dep't of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994) (one-year delay). Where plaintiffs "reasonably pursued non-litigation avenues first," this sort of timing "does not give rise to an inference that the harm is not irreparable and imminent." *Tex. Children's Hosp.*, 76 F. Supp. 3d at 245. Defendants ask this Court to punish Plaintiffs for trying to resolve this issue through meetings, ECF No. 1, ¶ 22, through their elected representatives, ECF No. 1-56, ¶ 16, and through public advocacy, ECF No. 1-42, ¶ 22. That is not how a court should act in equity.

## III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.   Defendants Satisfy No Notice-and-Comment Exception.

On the merits, the simplest path to granting the preliminary injunction is notice and comment. "Section 553 of the APA provides that an agency must provide notice of a proposed rule in the Federal

Register and afford an opportunity for interested persons to present their views." *Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 619 (5th Cir. 1994) (citing 5 U.S.C. § 553). "In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment." *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979). The APA's notice and comment provisions "were designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 764 (1969). "Congress realized that an agency's judgment would be only as good as the information upon which it drew. It prescribed these procedures to ensure that the broadest base of information would be provided to the agency by those most interested and perhaps best informed on the subject of the rulemaking at hand." *Johnson*, 22 F.3d at 619.

Defendants concede that they skipped notice-and-comment here. ECF No. 56, 29–31. They are left searching for excuses, and ultimately offer only three. Importantly, they do not invoke either the good-cause or benefit-or-contract exemption. ECF No. 56, 29–33. They thereby forfeit those arguments. *NewCsi, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 260 (5th Cir. 2017). Instead, they argue that Equity in Action—which rewrites the rules governing flood insurance for 15 million Americans—(1) is not a substantive rule at all; (2) that Congress created an *implicit* exemption to the APA tailor-made for Equity in Action; and (3) that their error was "harmless." All three of their hail-Mary arguments fail.

***1. Equity in Action is substantive.*** "An agency may not escape . . . notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 35 (D.C. Cir. 2005) (Garland, J.). The APA's notice-and-comment exception for "interpretive" of "procedur[al]" rules is extremely narrow. 5 U.S.C. § 553(b)(A). It applies only when an agency action "supplies crisper and more detailed lines" or a "clarification" of

an existing regulation. *Id.* at 38. "The exemption of § 553(b)(A) from the duty to provide notice by publication does *not* extend to those procedural rules that depart from existing practice and have a substantial impact on those regulated." *Johnson*, 22 F.3d at 620–21 (emphasis added). In deciding whether an agency had to go through notice-and-comment, the Court's "inquiry, therefore, is not whether the rule is 'substantive' or 'procedural,' but rather whether the rule will have a 'substantial impact' on those regulated." *Id.* Put another way, if the action will "produce other significant effects on private interests," it must go through notice-and-comment. *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019).

Equity in Action has a "substantial impact on those regulated." *Id.* It fundamentally transformed the pricing method for millions of Americans. ECF No. 14-2, 1–2. For 90% of Louisiana ratepayers subject to increased flood insurance premiums, it more than doubles their rates. *See Cost of Flood Insurance for Single-Family Homes under Risk Rating 2.0*, FEMA (Apr. 19, 2023), perma.cc/K4NL-Y7M8, FEMA Exhibit 3. In Defendants' words, "Risk Rating 2.0: Equity in Action will allow us to bring *generational change* to the NFIP." *FEMA Updates Its Flood Insurance Rating Methodology to Deliver More Equitable Pricing*, FEMA 4 (Apr. 1, 2021), perma.cc/LEZ8LTEP (emphasis added). It will drive a full 20% of homeowners out of the program entirely within a decade. *An Evaluation of Risk Rating 2.0 Impacts on National Flood Insurance Program Affordability*, Coalition for Sustainable Flood Insurance 10 (Sept. 2022), perma.cc/9UYK-ASJK ("CSFI Evaluation"). It is reshaping communities and industries. ECF No. 14-2, 30–31. And FEMA itself acknowledges that Equity in Action's higher rates will chase away 20% of NFIP policyholders in the first 10 years of the program. *See* CSFI Evaluation at 10, perma.cc/9UYK-ASJK. These rates certainly bind the regulated public and produce significant effects on private interests.

Defendants press their argument by reducing the different programs to their lowest common denominator—"[j]ust as before, policyholders will pay premiums." ECF No. 56, 29. Equity in Action

merely affects the "amounts" that they pay. *Id.* at 30. But of course, any agency rule leaves other background rules in place. The Fifth Circuit has squarely held that a change in "amounts" owed by regulated parties alone requires notice-and-comment. In *Johnson*, it held that an agency "paper" had a substantial impact and was required to go through notice-and-comment because it affected the "royalty-valuation procedure" that determined which payments mineral miners owed the government. 22 F.3d at 620–21. A "change in the method used" for pricing, it held, is substantial. *Id.* at 619. The Fifth Circuit recently doubled down and reversed a district court that held that an agency could tweak its pricing methodology without notice and comment. *See W & T Offshore, Inc.*, 946 F.3d at 239.

> **2. *Congress did not override the APA by implication.*** "Congress has provided that the APA applies to all actions of federal agencies unless explicitly prohibited by statute." *Harris v. Mutual of Omaha Companies*, 992 F.2d 706, 712 (7th Cir. 1993). Defendants offer two theories that Congress *implicitly* overrode the APA's notice-and-comment requirement here. Both theories are unavailing.

> *First*, Defendants seem to argue that because Congress ordered FEMA to implement certain other regulations, it implicitly repealed the APA's notice-and-comment requirement as to the entire rest of the NFIP. ECF No. 56, 30. Namely, they emphasize that Congress ordered FEMA to "develop and promulgate regulations to implement" a flood-protection system by October 28, 1994, and to provide terms and conditions of insurability. *Id.* (citing 42 U.S.C. §§ 4014(f)(3), 4013(a)). They say that by requiring regulations in these circumstances, Congress was implicitly "exclu[ding]" the rest of the NFIP from notice-and-comment. *Id.* But those statutes just require certain rulemakings to commence; they don't even suggest an alteration to the APA's default notice-and-comment rules—let alone for rulemakings under other provisions. To require Congress to affirmatively require notice-and-comment under every provision of every statute would effectively repeal the APA.

> *Second*, Defendants suggest that Congress by an obscure amendment created a new exception to notice-and-comment. Namely, they say that Congress recently amended Section 4015 to *remove*

FEMA's authority to prescribe rates "by regulation." ECF No. 56, 31. And then that section affirmatively requires FEMA to "provid[e] notice" when setting rates. *Id.* Defendants theorize that Congress was thereby authorizing FEMA to impose regulations without notice. *Id.* But Congress did not override the APA's notice-and-comment requirement with those obscure linguistic tweaks that say nothing about that APA requirement. If anything, removing the regulatory authority and adding the notice requirement would seem to *weaken* FEMA's authority to regulate without notice-and-comment. This Court should reject Defendants' peculiar brand of textualism.

  **3. The rare harmless-error exception isn't satisfied here.** Defendants are left to argue that their disregard of notice-and-comment was "harmless." ECF No. 56, 31. They contend that they can flout the APA because Plaintiffs would not have added anything of value and because failed meetings are an adequate substitute. *Id.* at 31–33. They are wrong.

  An agency's failure to comply with notice and comment is almost automatically prejudicial. After all, "the entire premise of notice-and-comment requirements is that an agency's decisionmaking may be affected by concerns aired by interested parties through those procedures." *NRDC v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020). "For that reason, [courts] have 'not been hospitable to government claims of harmless error in cases in which the government . . . fail[ed] to provide notice.'" *Id.* (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1109 (D.C. Cir. 2014)). As the Fifth Circuit has put it, when challengers are denied an opportunity to "comment on the specifics of the Final Rule," that alone "is sufficient prejudice." *Mock v. Garland*, 2023 WL 4882763, at *18 (5th Cir. Aug. 1, 2023).

  Here, Plaintiffs were denied the opportunity to comment on the specifics of Equity in Action. There was no comment process before or after Equity in Action went into effect. And if ever there were a program that needed to "giv[e] affected parties fair warning of potential changes" and "afford[] the agency a chance to avoid errors and make a more informed decision," it was Equity in Action. *Azar v. Allina Health Services*, 139 S. Ct. 1804, 1816 (2019). Rehauling an entire nation's flood-insurance

system requires open public participation. It is "a program where even minor changes to the agency's approach can impact millions of people and billions of dollars in ways that are not always easy for regulators to anticipate." *Id.* Plaintiffs themselves have presented devastating statistics and on-the-ground testimony about the effect of the changes that Defendants should have considered. *See generally* ECF No. 1; *id.* ¶¶ 189–92 (describing MtG and LtGM levee systems); ¶¶ 232–34 (describing specific rate increases). Defendants have not shown that the agency considered any of that evidence or arguments, let alone *all* of them. This case itself therefore refutes Defendants' claim that Plaintiffs would have contributed nothing to the notice-and-comment process. ECF No. 56, 33.

Although Defendants say that courts "routinely apply harmless error to excuse an agency's failure to comply with notice-and-comment requirements," its own leading case says the opposite. In *United States v. Johnson*—one of the very few cases Plaintiffs are aware of that found failure to adhere to the APA's notice-and-comment requirement "harmless"—the Fifth Circuit emphasized the inapplicability of this holding to most "other agency rulemaking." 632 F.3d 912, 932 (5th Cir. 2011). In other circumstances, the Fifth Circuit said, "a finding of harmless error for inadequate notice-and-comment procedures may be rare." *Id.* But in that particular case, the agency decision involved only a binary "yes or no decision," which "starkly contrasts with the vast majority of agency rulemaking, which produces nuanced and detailed regulations that greatly benefit from expert and regulated entity participation." *Id.* Furthermore, that agency had since gone through full notice-and-comment and come to the same procedure. *Id.* And finally, *Johnson*'s holding was confined to a single plaintiff whose only hypothetical "comment" was an argument already addressed by the agency before publication and who did not participate in the later comment process once it was opened to the public. *Id.* at 931–33.

Defendants' argument that Plaintiffs had "ample" information and opportunity to provide input is misleading and legally confused. ECF No. 56, 32. As to the facts, although Plaintiffs described

their *failed* attempts to "engage with FEMA," Defendants characterize this account as an "admi[ssion]" that they were able to successfully engage. ECF No. 56, 32. The truth is that FEMA stonewalled Plaintiffs when they attempted to learn what was going on, curtailing any opportunity for input. *See* ECF No. 14-2, 15–16; *see also, e.g.*, ECF No. 1-36, ¶ 20;  ECF No. 1-27, ¶ 43;  ECF No. 1-50, ¶ 10; *see also St. Charles Parish v. FEMA*, 2:23-cv-01369 (filed Apr. 25, 2023 E.D. La.) (challenging FEMA's withholding of documents under FOIA). Plaintiffs were given no open forum for comments that would make the administrative record. And the "detailed information" that FEMA released was inscrutable. ECF No. 56, 32. *Cf. Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) ("[A]n agency's failure to disclose critical material, on which it relies, deprives commenters of a right under § 553 to participate in rulemaking.").

Even if Plaintiffs had been more successful, that would be irrelevant. Congress determined that closed-door meetings and informal discussions are no substitute for notice and comment. Among other reasons, the formal process is necessary because "part of the purpose of notice and comment rulemaking is to ensure the parties develop a record for judicial review" *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d 1195, 1206 (D.C. Cir. 2019). Here, Plaintiffs have had no opportunity to develop a record for judicial review. In fact, Defendants themselves criticize Plaintiffs for citing material that was not before the agency. *See, e.g.*, ECF No. 56, 12. But that material would have been before the agency and facilitated judicial review had the agency respected the notice-and-comment process, which establishes prejudice.

Finally, Defendants do not dispute that "vacatur is the normal remedy" for lack of notice-and-comment. *Wheeler*, 955 F.3d at 85.

**B.    Equity in Action Exceeds Defendants' Statutory Authority.**

Equity in Action is subject to, but cannot satisfy, the major-questions doctrine. Defendants argue that Equity in Action is not "major" because it merely "updates the rating methodology of the

same program that FEMA has managed for decades." ECF No. 56, 17. But the update is a major one–Equity in Action is a "generational change." *FEMA Updates*, *supra*. By Defendants' own account, this mere update cost taxpayers "80 million dollars," ECF No. 47-3, ¶ 261, took hundreds of bureaucrats five years to produce, *id.* ¶ 260, governs "4.7 million" Americans' policies and "$1.3 trillion in insurance coverage," *id.* ¶ 10, kicks 20% of policyholders out entirely, *An Evaluation of Risk Rating 2.0 Impacts*, *supra*, is essential to maintaining another 921,581 policyholders "trust," ECF No. 47-3 ¶¶ 221, 275, caused "approximately 23% of policies … premium decreases totaling $577 million," *id.* ¶ 24, had drastic effects on large categories of homeowners' premiums, *id.* ¶¶ 313–15, and is apparently so personally important to FEMA bureaucrats that they will become wayward and lost without it, *id.* ¶ 279. Plaintiffs have detailed some of the other seismic effects of the policy. *See* ECF No. 56, 30-31. Defendants' expert actually describes Equity in Action as "major." *Id.* ¶ 274. It would be a shock to conclude that it is not subject to the *major*-questions doctrine, which applies to *all* agency actions of such economic or political significance. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022).

Defendants therefore must point to clear congressional authorization, but instead only invoke a statute allowing them to apply "accepted actuarial principles," subject to a series of limits and countervailing interests. *See* ECF No. 56, 17 (citing 42 U.S.C. § 4014(a)(1)). That "subtle" phrase, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000), did not authorize FEMA to fundamentally transform flood insurance in America, pick winners and losers en masse, and reset entire industries and populations, ECF No. 14-2, 30-31. It is a "wafer-thin reed" that falls well short of what the Supreme Court demands. *Ala. Ass'n of Realtors*, 141 S. Ct. at 2489; *see also West Virginia v. EPA*, 142 S. Ct. at 2609; *King v. Burwell*, 576 U.S. 473, 486 (2015).

### C.   Equity in Action is Contrary to Law.

**1.** Equity in Action violates at least four statutory directives. First, it violates the directive to make flood insurance widely available at reasonable prices. "Congress enacted the National Flood

Insurance Act of 1968 (NFIA) to make flood insurance *available at reasonable prices and on reasonable terms.*" *Spong v. Fidelity Nat'l Prop. & Cas.*, 787 F.3d 296, 304 (5th Cir. 2014) (emphasis added). Congress therefore emphasized that FEMA must act to further that primary objective. Congress required FEMA to make insurance "consistent with the objective of making flood insurance available where necessary at reasonable rates so as to encourage prospective insureds to purchase such insurance and with the purposes of this chapter," unless "not practicable." 42 U.S.C. § 4015(b). And Congress directed FEMA to provide insurance that would "enable interested persons to purchase insurance." 42 U.S.C. § 4011(a). "Of course, an agency is not free simply to disregard statutory responsibilities." *Lincoln v. Vigil*, 508 U.S. 182 (1993). But that is exactly what Defendants have done here.

Defendants do not appear to dispute that Equity in Action did not serve "the objective of making flood insurance available" when it skyrocketed premiums by 100% to 1000% in coastal communities where that insurance is *most* "necessary." ECF No. 14-2, 13. Nor do they seem to dispute that it will not "enable" people to buy insurance when it (by their own estimates) will force out 20% of all policyholders from the program entirely. CFSI Evaluation at 10, perma.cc/9UYK-ASJK. Defendants are therefore left to argue that they were forced to make the change because they wanted to "reflect the full risk of loss," improve "[p]erception of flood risk," and "[en]courag[e] private insurers [to] sell[] flood insurance." ECF No. 56, 11.

But Congress did not mandate that FEMA serve those interests over its primary one of making flood insurance widely available. To the contrary, whatever authority FEMA has to increase rates, the central statutory mandate "can[not] be sacrificed for the other [statutory interest]," let alone "for some separate policy interest." *El Paso Elec. Co. v. FERC*, 2023 WL 4926812, at *6 (5th Cir. Aug. 2, 2023). And although Defendants suggest that they have no choice but to increase rates, that is not true. The NFIP specifically provides that, when the statutory commands are in conflict, FEMA can impose "rates . . . less than the rates estimated" based on actuarial principles if they "would be reasonable,

would encourage prospective insureds to purchase flood insurance, and [which] would be consistent with the purposes of this chapter." 42 U.S.C. § 4014(a)(2). Therefore, FEMA was required to make flood insurance widely available and was explicitly allowed to depart from rates that "reflect the full risk of loss," ECF No. 56, 11.

**2.** As to Plaintiffs' other three contrary-to-law claims, Defendants have little response. ECF No. 56, 14–16. They do not explain why, *contra* 42 U.S.C. §§ 4014(a)(1)(A)(ii), 4015(b)(1), Equity in Action does not reflect the decrease in risk accompanied by enacting FEMA's own land-use regulations, building levees, or elevating homes and businesses. *Compare* ECF No. 14-2, 14–15 *with* ECF No. 56, 14. Defendants do not deny that, in violation of 42 U.S.C. § 4024, they have prevented local officials from accessing the underlying information and algorithms necessary for them to carry out their statutory duty of "consult[ation]." *See* ECF No. 56, 15. Defendants speak in broad generalities about their "engagements with the public" without explaining how they actually communicated "the basis for and differences between [premium] rates in accordance with the provisions of section 4015 of this title," which remain secret in violation of 42 U.S.C. § 4020. *Compare* ECF No. 14-2, 16–17 *with* ECF No. 56, 15–16.

Remarkably, right after Defendants say the Court "cannot consider" extra-record materials, ECF No. 56, 12, their responses to all three of these contrary-to-law claims depend *entirely* on their own extra-record declarations. *See* ECR No. 56, 14–16. But the "record rule," if it applies at all, is supposed to limit *agencies* from doing exactly this sort of post-hoc rationalization. *Hayward*, 536 F.3d at 380 ("[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself[.]"). Defendants do not even claim that the information that they cite now was before them at the time their decision was made. If they believe in their own version of the record rule, then they lose these three arguments. Worse, their declarations are plainly works of legal advocacy and inadmissible on that basis too. *See, e.g.*, ECF No. 47-3 ¶¶ 13–19, 213–325 (taking positions on statutory interpretation,

14

how to satisfy elements of preliminary injunction, and legal remedies); *Minto v. U.S. Off. of Pers. Mgmt.*, 765 F. App'x 779, 783-84 (3d Cir. 2019).

      **D.**      **Equity in Action Is Arbitrary and Capricious.**

      Defendants attempt to describe a "toothless" standard, *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1013 (5th Cir. 2019), by which a court must defer to the agency in all but the most egregious circumstances, ECF No. 56, 17. But the Court's review has "serious bite." *Wages and White Lion Invest., LLC*, 16 F.4th at 1136. To determine whether the agency reasonably explained its decision, it looks only to reasoning "articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). It "cannot consider *post hoc* rationalizations." *Data Mktg. P'ship v. Dep't of Labor*, 45 F.4th 846, 855 (5th Cir. 2022).

      **1.** *FEMA failed to consider important aspects of the problem*. *First*, FEMA asserts that it did consider the skyrocketing costs because it recognized "a serious budget shortfall" and increased the costs of flood insurance accordingly. ECF No. 56, 18. This ignores the NFIP's objective, which is to "mak[e] flood insurance available where necessary at reasonable rates so as to encourage prospective insureds to purchase such insurance. and with the purpose of this chapter." 42 U.S.C. § 4015(b)(2). Even in response, FEMA fails to acknowledge its own estimates where rates across the State of Louisiana will see *average* increases of up to 1000%. *See Cost of Flood Insurance for Single-Family Homes under Risk Rating 2.0*, FEMA (Apr. 19, 2023), perma.cc/K4NL-Y7M8, FEMA Exhibits 3, 4.

      FEMA's focus on solvency is at odds with the purpose of the NFIA "to make flood insurance available at reasonable prices and on reasonable terms." *Spong*, 787 F.3d at 304; *see also* 42 U.S.C. §§ 4001, 4015(b)(2). While FEMA asserts that "Risk Rating 2.0 more faithfully adheres to the NFIA's admonition to apply accepted actuarial principles," ECF No. 56, 18, the agency is not free to "disregard" other statutory mandates, *Lincoln v. Vigil*, 508 U.S. at 193. "Neither of [FEMA's] statutory

mandates . . . can be sacrificed for the other or for some separate policy interest." *El Paso Elec. Co. v. FERC*, No. 18-60575, 2023 WL 4926812, at *6 (5th Cir. Aug. 2, 2023).

    *Second*, FEMA accuses Plaintiffs of "assum[ing]" that there is a mass exodus, which there is not." ECF No. 56, 18. But according to a recent GAO report, the NFIP had 5.11 million policies in 2019 and only 4.77 million policies in place in 2022, which included a drop of 175,000 policies since implementation of Equity in Action started in October 2021. U.S. Gov't Accountability Off., GAO-23-105977, at 45 (July 2023), perma.cc/M2EZ-6B3H.

    *Third*, FEMA says Equity in Action accounts for mitigation and "there can be no doubt that FEMA *considered* mitigation." ECF No. 56, 19. When a court reviews an agency action under the arbitrary or capricious standard, the court is "limited to the record before the agency at the time of its decision." *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir. 1985). But FEMA's only support for this is a declaration submitted with their motion to dismiss filed the day before their preliminary injunction response. ECF No. 56, 19 (citing ECF No. 53-4, ¶¶ 167–211). This is not a "contemporaneous explanation" required under the APA. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). Their assertion is belied by the fact that people are not seeing mitigation discounts reflected in their rates. ECF No. 1 ¶¶ 190–93 (FEMA determined the MtG and LtGM levee systems cannot withstand a 100-year flood event despite already withstanding a 300-year flood event); ECF No. 1-55 ¶ 16 (seeing rates increase from $516 to $4615 despite sitting three feet above the FEMA-determined base flood level). In short, people are not seeing the same discounts reflected in their current policies under Equity in Action, and FEMA can't—or won't—explain why. *See Conversations about Risk Rating 2.0, Part IV*, Wharton (June 3, 2022) ("Because of these things, perceived risk and the benefits of mitigation do not necessarily equate to insurance savings. If FEMA could build a portal that would provide estimates of savings from mitigation, that would help people."), perma.cc/FK2S-X2LZ.

*Fourth*, FEMA flippantly claims, "no provision of the NFIA requires FEMA to consider how premium rates affect the oil and gas or fishing industries." ECF No. 56, 20. But FEMA is required to engage in "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998). To satisfy that standard, the agency must show a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 1689 (1962). FEMA's failure to consider the significant economic impact does not demonstrate this rational connection. The question is not whether FEMA considered the oil and gas industry but whether FEMA consider the impacts of its decision such that its decisionmaking was well-reasoned. *Allentown*, 522 U.S. at 374.

*Fifth*, FEMA claims it "is not required" to consider "how Risk Rating 2.0 affects low-or-moderate-income individuals." ECF No. 56, 20. That assertion is telling. *See* FEMA Defines Equity in its Mission of Making Programs More Accessible, FEMA (Sept. 9, 2021), perma.cc/RW27-HJRX; *FEMA Announces Initial Initiatives to Advance Equity*, FEMA (July 21, 2021), perma.cc/A6AS-BDSY ("Certain populations – specifically low-income neighborhoods, communities of color, people with disabilities and older adults, those with language barriers and those living in rural and isolated areas – are disproportionately impacted by disasters"). Also, the very purpose of the program was to provide affordable flood insurance on reasonable terms. *Spong*, 787 F.3d 296. Under Equity in Action, the communities that are most sensitive to the increased premiums are the ones who need flood insurance the most. *See FEMA Equity in Action Plan*, FEMA 15 (Feb. 23, 2022), perma.cc/GX7L-7EAG. ("Several million low incomes households live in high flood risk special flood hazard areas (SFHA).").

*Sixth*, FEMA next claims that Equity in Action does not consider future climate change events in calculating insurance premiums. ECF No. 56, 22. But FEMA's public statements agree that climate change is part of what Equity in Action seeks to address. *See, e.g.*, *Conversations about Risk Rating 2.0 Part I*, Wharton (May 23, 2022), perma.cc/Q6VD-BG8J; *DHS Statement on New National Flood Insurance Program Pricing Methodology*, DHS (Apr. 1, 2021), perma.cc/2VXR-B2KZ (explaining that Equity in

Action "aligns with the Biden Administration's priority to deliver bold action to tackle the effects of climate change"); *FEMA Strategic Plan, Building the FEMA our Nation Needs and Deserves,* FEMA (Dec. 9, 2021), perma.cc/QD8L-GY2R (seeking to expand modeling based on "advanced climate forecasting capabilities to inform the agency's understanding of risk"). Plaintiffs have no way of knowing which input data or future hypothetical events FEMA is using because FEMA has only provided high-level summaries of the methodology, not the methodology itself. Relying on FEMA's own statements, FEMA's consideration of these climate-change objectives falls outside the scope of permissible considerations, making the resulting methodology arbitrary and capricious.

      *2. FEMA failed to consider reliance interests.* Once again, Defendants explain FEMA's requirement to set rates based on actuarial principles, saying nothing of its other statutory mandates. *See supra.* Defendants next agree that FEMA phased out grandfathering. ECF No. 56, 21. Rather than "articulate a satisfactory explanation" for this action, Defendants sidestep the question by saying that FEMA made a "reasoned, explicit tradeoff to eliminate grandfathering" in favor of its solvency priority. *Id.* at 23. But they don't explain whether FEMA considered the full impact of killing the grandfathering program, including the exodus from the program, *see supra,* and the drop in property values. ECF No. 1-42, ¶¶ 26–27; 1-46, ¶¶15–17.

      *3. FEMA changed policy positions.* FEMA claims that RR 2.0 "is consistent with prior FEMA policy and practices, not a significant departure from them" because "[t]he NFIP has *always* been mandated and designed to tie premium rates to flood risk, in accordance with actuarial principles." ECF No. 56, 24. This statement is facially inconsistent with 42 U.S.C. § 4014(a)(2), which dates back to 1968 and authorizes FEMA to establish "rates…less than the rates estimated under paragraph (1)." For example, in July 1972, flood insurance rates were lowered "to encourage increased participation in the program." *A Chronology of Major Events Affecting the National Flood Insurance Program,* Am. Inst. for Res. 16 (Dec. 2005), perma.cc/6PMJ-NGUT. In January 1974, rates were again "lowered

to encourage wide acceptance of the new mandatory purchase requirement and to encourage increased sales of the insurance." *Id.* at 20. That historical fact shows that, at least once, FEMA had a policy of promoting a larger insurance pool over solvency. And again, FEMA cannot pick and choose which statutory mandates to prioritize.

       *4. Equity in Action is pretextual.* Finally, FEMA responds that the community driven relocation program and Equity in Action are completely unrelated. ECF No. 56, 27–28. But FEMA does not try to justify the fact that Equity in Action is pushing Americans out of homeownership in coastal areas. *Id.* at 20. As a result of the new system, FEMA has increased rates so significantly that it is discouraging development in coastal regions and encouraging people to leave the area. *See, e.g.*, ECF No. 1-46; 14-5; 14-6. Elsewhere, FEMA has made clear that it seeks to move people away from the coastal areas. *See FEMA Efforts Advancing Community Driven Relocation*, FEMA (Dec. 2, 2022), perma.cc/9J53-Q9F5. By increasing rates so dramatically, FEMA has accomplished through its ratesetting power what Congress provided for elsewhere. *See* 16 U.S.C. § 3501 et seq. FEMA's authority over coastal relocation is limited to "encourag[ing], where necessary, the adoption of adequate State and local measures" to address construction in flood prone areas. 42 U.S.C. § 4102(c).

       **E.**    **Equity in Action Violates the Spending Clause.**

       FEMA's response to Plaintiffs' Spending Clause argument is that Congress can attach conditions for participation and States simply can decline to participate. ECF No. 56, 34. FEMA distinguishes Plaintiffs' cited cases because they allege there is no threatened loss of funds. Neither argument prevails here. Contrary to FEMA's assertions, Plaintiffs cannot simply opt out of participation—FEMA oversimplifies its own program. *First*, flood insurance is mandatory in many circumstances, and the unavailability or unaffordability of private flood insurance makes NFIP insurance many people's only option. ECF No. 1 ¶¶ 161–68; 14-2, 1. *Second*, States, parishes, and municipalities have structured their agencies and local governments around participation in the NFIP.

ECF No. 1, ¶ 599; La. Rev. Stat. § 38:84. *Third*, FEMA ignores the benefits that Plaintiffs themselves provide to the program by encouraging participation in the NFIP. Finally, there is a threatened loss of funds because Plaintiffs will no longer have access to federal funds, including grant money, to help mitigate against future harms. ECF No. 1, ¶¶ 141–42; 643–51. This is the sort of functional "coercion" the Supreme Court forbids. *NFIB v. Sebelius*, 567 U.S. 519, 579–80 (2012).

      F.     **Equity in Action Violates NEPA.**

FEMA urges that Equity in Action is not subject to NEPA. ECF No. 56, 40–41. But Congress found that "the availability of Federal . . . insurance . . . [is] often [the] determining facto[r] in the utilization of land and the location and construction of public and private industrial, commercial, and residential facilities." 42 USC § 4002(a)(2). For example, Courts have found FEMA to have adequate discretion under the NFIP to trigger requirements under other statues like the Environmental Species Act because "development is encouraged and in effect authorized by FEMA's issuance of flood insurance." *See Florida Key Deer v. Paulison*, 522 F.3d 1133, 1142-44 (11th Cir. 2008); *see also Key Deer v. Stickney*, 864 F. Supp. 1222, 1233 (S.D. Fla. 1994).

FEMA next argues that Equity in Action is categorically excluded from NEPA because it merely "revis[es] . . . flood insurance rates and premium schedules." ECF No. 56, 42. FEMA downplays Equity in Action in briefing, but its statements elsewhere make clear that it is a "transformational leap." *Conversations about Risk Rating 2.0 Part I*, Wharton (May 23, 2022), perma.cc/Q6VD-BG8J(stating that Equity in Action is "changing the entire paradigm of flood insurance protection", "developed two additional models", and "built an entirely new system from the ground up"). This is not a mere "revision" of rates or premium schedules. It's a complete overhaul of the system.

**CONCLUSION**

For these reasons, this Court should grant Plaintiffs' motion.

Dated:   August 11, 2023                    Respectfully submitted,

                                            **JEFF LANDRY**
                                            **ATTORNEY GENERAL**

                                            By:*/s/ Elizabeth B. Murrill*
                                            ELIZABETH B. MURRILL (La #20685)
                                               Solicitor General
                                            MORGAN BRUNGARD (La #40298)
                                               Assistant Solicitor General
                                            TRACY SHORT (La #23940)
                                               Assistant Attorney General
                                            LOUISIANA DEPARTMENT OF JUSTICE
                                            1885 N. Third Street
                                            Baton Rouge, Louisiana 70802
                                            Tel: (225) 326-6766
                                            murrille@ag.louisiana.gov
                                            brungardm@ag.louisiana.gov
                                            shortt@ag.louisiana.gov

                                            *Counsel for the State of Louisiana, Plaintiff Parishes,*
                                            *Plaintiff Municipalities, Plaintiff Levee Districts,*
                                            *Plaintiff Drainage Districts, and Plaintiff Associations*


ASHLEY MOODY                                DREW H. WRIGLEY
   Attorney General                            Attorney General
JAMES H. PERCIVAL*                          PHILIP AXT (ND Bar No. 09585)*
   Chief of Staff                              Solicitor General
Office of the Attorney General              North Dakota Attorney General's Office
The Capitol, PL-01                          600 E Boulevard Avenue, Dept. 125
Tallahassee, FL 32399                       Bismarck, ND 58505
(850) 414-3300                              (701) 328-2210
(850) 410-2672 (fax)                        pjaxt@nd.gov
james.percival@myfloridalegal.com

*Counsel for the State of Florida*          *Counsel for the State of North Dakota*


RAÚL LABRADOR                               ALAN WILSON
   Attorney General                            South Carolina Attorney General
THEODORE J. WOLD *                          ROBERT D. COOK
   Solicitor General                           Solicitor General
OFFICE OF THE IDAHO ATTORNEY                J. EMORY SMITH, JR.*
GENERAL                                     Deputy Solicitor General
700 W. Jefferson Street, Ste. 210           THOMAS T. HYDRICK*

21

P.O. Box 83720
Boise, ID 83720
Telephone: (208) 999-0910
Email: Theodore.Wold@ag.idaho.gov

*Counsel for State of Idaho*


DANIEL CAMERON
  Attorney General of Kentucky
LINDSEY KEISER*
  Assistant Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5517

*Counsel for the State of Kentucky*


LYNN FITCH
  Attorney General
JUSTIN L. MATHENY*
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
550 High Street, Suite 1200
Jackson, MS 39201
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

Assistant Deputy Solicitor General
JOSEPH D. SPATE*
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*


JOHN SCOTT
  Provisional Attorney General
RALPH MOLINA
  Deputy Attorney General for Legal Strategy
CHARLES ELDRED*
  Chief, Legal Strategy
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711
(512) 463-2100
Charles.Eldred@oag.texas.gov

*Counsel for the State of Texas*
JASON S. MIYARES
  Attorney General
ANDREW N. FERGUSON
  Solicitor General
KEVIN M. GALLAGHER*
  Deputy Solicitor General
Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*

22

AUSTIN KNUDSEN
  Attorney General
CHRISTIAN B. CORRIGAN*
  Solicitor General
PETER M. TORSTENSEN, JR.*
  Assistant Solicitor General
Montana Department of Justice
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Christian.Corrigan@mt.gov
Peter.Torstensen.@mt.gov

*Counsel for the State of Montana*

**Pro hac vice** application forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

This the 9th day of August, 2023.

*/s/ Elizabeth B. Murrill*
ELIZABETH B. MURRILL (La #20685)
 Solicitor General
