# EXHIBIT 10

JOHN KENNEDY
LOUISIANA

SUITE SR-416
RUSSELL BUILDING
WASHINGTON, DC 20510
(202) 224-4623

COMMITTEES
APPROPRIATIONS
BANKING, HOUSING, AND URBAN AFFAIRS
BUDGET
JUDICIARY
SMALL BUSINESS AND ENTREPRENEURSHIP

# United States Senate

August 5, 2021

David I. Maurstad
Deputy Associate Administrator
Federal Insurance & Mitigation Administration Resilience
500 C St. SW
Washington, DC 20472

Dear Administrator Maurstad:

    I thank you for your willingness to appear before the Senate Banking Committee on June 17, 2021. This hearing's purpose was to discuss the National Flood Insurance Program (NFIP) and the efforts Federal Emergency Management Agency (FEMA) has taken to address the program's soundness and affordability through Risk Rating 2.0 (RR 2.0). As you are very aware, the issue of flood insurance is near to the many families in Louisiana that rely on the NFIP to ensure their greatest investment, their home, is properly covered during a hurricane or flood event.

    The federal government took up the mantle of providing flood insurance to families when the private market found it to be too risky. The NFIP was founded on the principle of capturing risk while ensuring the program remains affordable for policyholders. FEMA's fact sheets on RR 2.0 state that 3.8 million Americans will see an increase in their policy, up to $240 per year. Not only that, FEMA will continue to raise premium rates by 18% until a policyholder's premium mirrors their "true risk-based premium." I am deeply concerned that flood insurance will become unaffordable under your proposal. Although RR 2.0's purpose is to address the sustainability of the NFIP, this only makes sense if premiums are affordable. Your actions to roll out RR 2.0 will impact home sales, commercial property values, and real estate commissions all across this country.

    The United States has longstanding, bipartisan administrative requirements in place to compel adequate disclosure, peer review, reproducibility, and public notice and comment for "clear and substantial" agency proceedings such as RR 2.0. From my perspective, FEMA is bypassing all of these protections. RR 2.0 has not had the opportunity to benefit from necessary public input, nor do I believe the public truly understands their fate under RR 2.0. Historically, any significant change to the NFIP has included participation from FEMA and Congress, and this should not stop with RR 2.0. It is incumbent on FEMA to uphold our nation's longstanding commitment to transparent government and due process. Thorough examination is required for any program's success.

Additionally, I am concerned to hear from stakeholders that FEMA has been unable to provide data or the assumptions FEMA used to determine premium rates for RR 2.0. Moreover, I am troubled to understand that FEMA has required Write Your Own Companies (WYO) to sign non-disclosure agreements (NDA) to receive further information on the program. For RR 2.0 to be successful, WYO companies should have access to the RR 2.0 rollout to serve their customers best. I understand many stakeholders and Members of Congress have expressed concerns regarding the program's implementation, the lack of transparency, and FEMA's lack of coordination with Congress.

I intended to submit these questions below as Questions for the Record for the June 17, 2021, hearing; however, the people of Louisiana deserve these answers now. With RR 2.0's rollout imminent, I respectfully ask you to address the following concerns about RR 2.0 before August 19, 2021.

1. Public involvement and policyholder interests do not seem to be a consideration in the formulation of RR 2.0. RR 2.0 proponents speak about fairer rates, but there has been no meaningful public involvement during the five years it has taken FEMA to establish this proposal.

    a. Specifically, how has the general public been notified or consulted about these significant changes before this once-in-a-generation overhaul of the National Flood Insurance Program (NFIP)? In what ways?

    b. As FEMA began developing RR 2.0, did FEMA ever consider doing a rulemaking process with public notice and comment before this once-in-a-generation NFIP overhaul takes effect in October of this year?

    c. The Administrative Procedure Act ensures that the public is guaranteed a voice and proper insight into proposed government agencies' rules/regulations. Pursuant to the Administrative Procedure Act, why haven't the underlying assumptions, models, and data used to formulate RR 2.0 been released for public comment and input?

    d. It's August. Why hasn't FEMA made rates available to the public at this time?

2. I am deeply concerned about the affordability of flood insurance under the RR 2.0 proposal. This proposal will significantly raise premiums for policyholders in Louisiana.

    a. As you were creating RR 2.0, was flood insurance affordability a consideration in the pricing structure? As was intended with the creation of the NFIP, is FEMA planning to continue to balance the need for affordable rates with capturing risk? How?

    b. To help keep insurance rates affordable, isn't it essential that we examine not just program *revenues* but also program *costs*? Do you believe that both the program's

   expenses and revenue should be considered to maintain affordability?

   c. Why is it that the only solution to address the solvency of the program is to raise rates on existing policyholders without trimming the costs run up by agencies and their contractors? Why will policyholders experience a rise in the cost of their premiums while contractors and the agencies will see minimal to no change?

   d. Over the past decade, the NFIP's debt has shot up exponentially. To reduce or eliminate the NFIP debt, do you agree we also need to reform payments to write-your-own insurers, NFIP operating expenses, and interest on NFIP debt payments to the U.S. Treasury?

   e. How much has FEMA paid Milliman for their work in developing RR 2.0?

3. According to FEMA's website, FEMA is developing flood hazard models using private-sector data sets, catastrophe models, and evolving actuarial science.

   a. For the public, it is not enough to simply describe and cite a model. How does FEMA plan to communicate to policyholders that their premiums are derived from their flood risks in plain English?

   b. Are policyholders aware of their flood risk's influence over the cost of premiums? And are they aware of the correlation between the two?

4. FEMA has required insurance companies and agents to sign Non-Disclosure Agreements (NDA) before seeing the details on RR 2.0.

   a. Please provide a detailed explanation of why FEMA decided to require insurance companies and agents to sign an NDA. Additionally, please provide my office with a copy of the NDA.

5. On April 30, you received a letter from the American Property Casualty Insurance Association (APCIA). In the letter, APCIA posed many questions about when the WYOs would receive the final information they need to implement this initiative effectively. In your response, dated May 14, you told them that the information they have received is "substantively final and will be finalized with sufficient time to implement prior to October 1."

   a. Can you please tell me what is "sufficient time to implement prior to October 1" in your mind? Is there a specific date?

   b. What is the current timeline for providing WYOs with the final information needed to implement RR 2.0?

6. FEMA has acknowledged significant gaps in reliable levee risk data. I understand that only one of the five or six RR 2.0 models could be adapted for use on levees.

    a. Please provide a detailed explanation of why FEMA's evaluation will be able to accurately determine risk and risk-rated premiums behind levees.

    b. How can FEMA ensure that RR 2.0 will offer accurate pricing for policyholders and their premiums?

    c. What will become of the Levee Analysis Mapping Procedure (LAMP) developed at the urging of Congress to give due consideration to the impacts of non-accredited levees in providing flood protection during a Flood Insurance Study? What will happen under RR 2.0 as a result of the LAMP work for the five communities in south Louisiana that were working on the pilot of the LAMP program?

7. FEMA clearly demonstrates its intentions to do away with grandfathering with the implementation of RR 2.0. FEMA states that "all policies formerly eligible for grandfathering will transition to their full-risk premium." This change in policy has a huge impact on the people of Louisiana. In other released information, FEMA states that it will offer some policy "discounts" under certain conditions. Notwithstanding the uncertainty of what full-risk premiums will ultimately be, as expressed above, please answer the following questions.

    a. How many Louisiana policyholders are currently receiving grandfathering discounts?

    b. With RR 2.0 in effect, how many Louisiana policyholders will find themselves now in the equivalent of an SFHA requiring mandatory purchase of flood insurance where they had not been before?

    c. With RR 2.0 in effect, how many Louisiana policyholders will find themselves newly below the required BFE?

    d. With Risk Rating 2.0 in effect, how many Louisiana policyholders will find themselves:

        i. More than 1 foot below BFE, and what will a standard policy cost?
        ii. More than 2 feet below BFE, and what will a standard policy cost?
        iii. 3 feet?
        iv. 4 feet?
        v. 5 feet or more, and what impact will that have on their ultimate full risk premium?

  e. Please provide absolute clarity on what "discounts" FEMA will continue to offer policyholders. How much will these discounts be, and who would qualify for them?

Although FEMA has touted the proposal for RR 2.0 for several years, it remains shrouded in mystery. RR 2.0 needs to be an open and transparent process, and I ask to further discuss my concerns with you in an in-person meeting.

Thank you for your prompt attention to this matter. I look forward to your response.

Sincerely,

*John Kennedy*

John Kennedy
U.S. Senator