# EXHIBIT 4



STATEMENT

OF

DAVID MAURSTAD

DEPUTY ASSOCIATE ADMINISTRATOR FOR INSURANCE AND MITIGATION
FEDERAL INSURANCE AND MITIGATION ADMINISTRATION
FEDERAL EMERGENCY MANAGEMENT AGENCY
U.S. DEPARTMENT OF HOMELAND SECURITY

BEFORE
THE

COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS
UNITED STATES SENATE

*"Reauthorization of the National Flood Insurance Program: Administration Perspectives"*

Washington, D.C.
June 23, 2022

1

Good morning, Chairman Brown, Ranking Member Toomey, and other members of the Committee. My named is David Maurstad, and I am Deputy Associate Administrator for the Federal Insurance and Mitigation Administration and Senior Executive of the National Flood Insurance Program (NFIP). Thank you for the opportunity to testify today in support of a package of 17 legislative proposals that would reform the Federal Emergency Management Agency's (FEMA) National Flood Insurance Program (NFIP). Flooding is the most common and costly natural hazard we experience. Every year, thousands of families across the country must recover from these incidents, and flood insurance is an essential part of that recovery. I respectfully request that Congress expeditiously take up and enact these proposals.

Congress established the NFIP to encourage communities to make wise land use decisions, and in return for the community enacting floodplain management ordinances consistent with Federal standards, the NFIP makes available flood insurance that allows people to protect homes in flood-prone areas.

For more than 50 years, the NFIP has been critical to the nation's resilience policy, however, much of the NFIP continues to operate on a construct developed over 50 years ago. Today, as our changing climate poses a serious threat to our nation and as the number and severity of disasters continue to grow, the NFIP requires structural changes.

On September 30, 2022, the NFIP's statutory authority to sell and renew flood insurance policies will expire. Since the NFIP's last multi-year reauthorization expired on September 30, 2017, the NFIP has experienced 21 short-term extensions and three brief lapses. The short-term extensions are disruptive and cause existing and potential policyholders to lose confidence in the NFIP. To maintain this vital program and to rebuild and retain the trust of millions of Americans who rely on the NFIP, the Administration believes that a 10-year reauthorization, with comprehensive program reforms, is an imperative.

The 17 reform proposals put forth as part of FEMA's legislative proposal package are guided by four key principles: ensure more Americans are covered by flood insurance, build the nation's climate resilience, reduce disaster suffering, and establish a sound and transparent financial framework for the NFIP. The four principles, which I will speak to today, are outlined below and reflect the Administration's priorities for multi-year NFIP reauthorization:

**First, ensuring that more Americans are covered by flood insurance by making insurance more affordable to low-and moderate-income policyholders.** Flood insurance can be unaffordable for some low- and moderate-income policyholders. Under the current law, FEMA does not have the authority to establish and charge premiums based on a policyholder's ability to pay. Although the NFIP offers mandatory discounts and cross-subsidies based on factors unrelated to risk, those discounts and subsidies do not take into consideration the policyholder's financial need and, in fact, can make risk communication difficult because people may equate lower cost with lower risk. Reforms that address affordability, such as the use of a targeted assistance program, can offer low- and moderate-income current and prospective NFIP policyholders a graduated risk premium discount while providing them with knowledge of the full-risk price to communicate a property's true flood risk.

2

**Second, communicating risk in real time and providing Americans with tools to manage flood risk.** Reforms that increase the scale and frequency of flood mapping and incorporate emerging priorities and technologies into the flood hazard and flood risk identification process will expand the ways in which the NFIP communicates risk. Where it can rain it can flood and raising awareness of true flood risk enables people to make informed decisions about their family and property. Home buyers and renters may lack awareness about flood risk when they complete real estate transactions.  Reforms that would require states to establish minimum flood-risk reporting requirements for sellers and lessors before residential transactions close would address this challenge. As climate change continues to make disasters more frequent and intense, it is vital that we provide people with the tools they need to protect themselves financially as well as physically.

Additionally, we need to reform how we measure and communicate flood risk.  The nation's evolving risks require flood hazard information that is more robust than the special flood hazard area (SFHA) and 1-percent annual chance flood elevation.

**Third, reducing risk by addressing extreme repetitive loss properties.** Previous losses are a significant indicator of risk, meaning that if a property flooded before, there is a high likelihood that it will flood again. Since 1978, nearly 100,000 structures have had two or more paid losses; nearly 1,000 have suffered 10 or more losses. The NFIP must have better tools to address insured structures that have experienced multiple flood claims. These repetitive loss and severe repetitive loss properties are responsible for a disproportionate share of overall losses and have a high risk of future flooding. About 2.5% of insured properties are considered unmitigated repetitive loss properties. Continuing to cover these types of structures without question contributes to the NFIP's financial challenges and can increase the risk that families living in those structures will face threats to their lives, health, and safety.  Reforming the NFIP to institute an objective threshold to deny coverage to the most egregiously flood-prone structures would discourage unmitigated rebuilding in areas with a history of flooding and reduce financial risk to the NFIP, while ensuring that coverage is still widely available to individuals, families, and businesses who might not be eligible for private market coverage.

**Fourth, instituting a sound and transparent financial framework that allows the NFIP to balance affordability and fiscal soundness.**  Without this in place, the longevity and sustainability of the program is at risk. Congress authorized FEMA to borrow from the U.S. Treasury up to $30 billion to pay claims. The NFIP currently carries $20.5 billion in debt to the U.S. Treasury and pays approximately $400 million in interest expenses annually – this means we are using the current premiums to pay for past claims. As currently structured, the program is unable to pay this debt back in full. Canceling the NFIP's debt provides the program with a solid foundation that can support financial reforms around borrowing authorities, future interest, enhanced liquidity, and an "upper limit" for the size of an NFIP event. These reforms address fundamental structural challenges and are essential to building a viable NFIP.

It is critical that Congress provide urgently needed multi-year reauthorization and <u>concurrently</u> reform the NFIP. Comprehensive and transformative reform is necessary to transition the NFIP to a sustainable program that balances affordability and fiscal soundness, builds climate resilience, and reduces risk, loss, and disaster suffering.

I am enclosing with my written testimony the detailed legislative proposals for your consideration, as well as an appendix summarizing each of the 17 reform proposals.

On behalf of the Administration, FEMA looks forward to working with Congress to develop a long-term solution that addresses the needs of the NFIP, its policyholders, and the nation.

Thank you again for the opportunity to discuss this important issue, and I would be pleased to answer any questions that you may have.