# EXHIBIT 24

**U.S. Department of Homeland Security**
Washington, DC  20472



September 26, 2022

The Honorable John Kennedy
United States Senate
Washington, DC 20510

Dear Senator Kennedy:

Thank you for your July 27, 2022, letter to the Federal Emergency Management Agency (FEMA)
regarding the implementation of its Risk Rating 2.0 initiative. This letter provides responses to your
questions in the order presented.

Since the beginning of October 2021, National Flood Insurance Program (NFIP) insurers used the new
rating methodology to write approximately 300,000 new policies and approximately 1.88 million
policy renewals (as of August 17, 2022). For most policyholders who will see rate increases, in line
with previous years, FEMA will transition their Risk Rating 2.0 policy premium gradually and within
the 18% annual cap Congress required in Public Law 113-89, the Homeowner Flood Insurance
Affordability Act of 2014.

**Transparency**

FEMA has published information that details how Risk Rating 2.0 works.  The documents can be
found at FEMA.gov: Risk Rating 2.0: Equity in Action. The published documents are:

- Risk Rating 2.0 Methodology and Data Sources
- Risk Rating 2.0 Methodology and Data Sources - Premium Calculation Worksheet Examples
- Risk Rating 2.0 Methodology and Data Sources - Appendix D Rating Factors
- Levees in Risk Rating 2.0
- Discount Explanation Guide
- Rate Explanation Guide

The combination of the premium calculation worksheet and the rating factors is the step-by-step
documentation of how to calculate a rate and premium.

In addition, FEMA has published an updated Flood Insurance Manual for Risk Rating 2.0 that provides
insurance producers with information on how to write a flood insurance policy with Risk Rating 2.0.
The Flood Insurance Manual can be found at FEMA.gov: Flood Insurance Manuals and Handbooks.

Kennedy
Page 2

## Administrative Procedure Act

Since 1968, the National Flood Insurance Act has required FEMA to periodically review, and if necessary, revise the way we set non-discounted premium rates. The requirement to estimate and charge actuarial rates, also referred to as non-discounted premium rates, is outlined at 42 U.S.C § 4014(a)(1); 4015(c).

"The Administrator is authorized to undertake and carry out such studies . . . as may be necessary to estimate, and from time to time estimate on an area subdivision or other appropriate basis (1) the risk premium rates for flood insurance which – (A) based on consideration of the risk involved and accepted actuarial principles . . . [that] would be required in order to make such insurance available on an actuarial basis . . ."  42 U.S.C. § 4014(A)(1).

The Act identifies properties for which FEMA shall charge actuarial rates as Post-Flood Insurance Rate Map properties: properties built after FEMA has mapped the base flood for an area.  42 U.S.C. § 4015(c). While the Act does outline certain rulemaking requirements, notably 42 U.S.C. § 4014(f)(3), it makes no such requirement for estimation of actuarial rates.  As such, there is no statutory mandate for rulemaking.

## Levees

The U.S. Army Corps of Engineers (USACE) is assisting FEMA by providing data and methodological advice to improve the understanding of flood risk reduction provided by levees.  USACE is supportive of FEMA's efforts  to adopt a risk-informed approach and continues to collaborate with FEMA. .  Leveraging such USACE expertise lends to Risk Rating 2.0 being a significant advancement over the current methods used to set flood insurance rates.

Risk Rating 2.0 does not change the mandatory requirements for flood insurance, including for areas behind levees.  If flooding occurs in a leveed area, without flood insurance, homeowners may not be able to recover after a flooding event.

Although levees are a critical part of our nation's infrastructure, they do not eliminate the flood risk in its entirety. The millions of Americans – and trillions of dollars in assets – located behind levees are still vulnerable to flooding.In some cases, levees increase risks. By creating a false sense of safety, communities may invest in development without considering flood mitigation options and thus increase their risk. This increases the potential threat to people and property in that community.

The possibility a flood will exceed the capacity of a levee always exists, no matter how well a levee  is built and maintained. Levees are designed to hold back a certain amount of floodwater. If floodwaters are greater than the levee was designed to handle, it can be overtopped or even fail.

## Policyholder Dispute Resolution

Similar to other lines of insurance (and as directed by Congress), FEMA sets NFIP rates and premiums based on actuarially sound principles. A foundational principle of actuarial ratemaking is that a rate is an estimate of the expected value of future costs for all possible floods. The Flood Insurance Rate Map

Kennedy
Page 3

used in the old methodology to set insurance premiums did not adequately account for all potential costs resulting from flood. Under Risk Rating 2.0 and going forward, FEMA will continue to analyze and update the information used to determine flood risk and use the best data available.

**Affordability**

FEMA recognizes and shares concerns about flood insurance affordability. Affordability was a concern under the legacy rating system, and affordability remains a concern under Risk Rating 2.0. Under the legacy rating system, almost all premiums would rise and continue to rise indefinitely. Risk Rating 2.0 gives an offramp from these increases for owners of many smaller and lower risk homes, as they will now pay premiums commensurate to the risk of their property and will no longer be cross-subsidizing larger and higher risk homes. For formerly grandfathered policies, the distribution of rate changes under Risk Rating 2.0 is similar to that for other NFIP polices. Some will see a decrease, while most will see no change or a modest increase, and a relatively small number will see significant increases. Where a particular property falls in that distribution largely reflects the property's flood risk and the cost of the structure.

The price of a flood insurance policy is an important signal of the flood risk a homeowner or renter faces, informing actions to mitigate and prepare for potential floods. Therefore, risk-based flood insurance premiums are appropriately more costly in areas that have the highest flood risk. However, risk-based premium rates are often burdensome for low- and moderate-income homeowners and renters. As a result, these households often go without insurance and do not recover as quickly or fully as their insured neighbors.

If authorized by Congress, FEMA could establish a means-tested affordability program to allow for a focus on low- and moderate-income households, enabling FEMA to account for such policyholders' ability to pay when setting their flood insurance premiums. FEMA would offer a graduated discount that would scale the benefit to the policyholder's income. Households with incomes up to 120% of area median income and 400% of the federal poverty guidelines could be eligible. Moreover, expanding NFIP insurance coverage among historically underserved households would also facilitate access to flood mitigation grants and other resources that require flood insurance as a condition of eligibility. Policyholders who qualify for a means-tested discount would be eligible for a 100% federal cost share under the Flood Mitigation Assistance program. Such grants reduce both the policyholder's risk and their flood insurance premiums.

If Congress gives the NFIP authority to implement such a means-tested assistance program, FEMA will encourage all potentially eligible households to apply. Availability of such means-tested assistance will be key for many households to obtain and retain flood insurance coverage, particularly where flood risk and thus full-risk premiums are high.

**Homeowner Flood Insurance Transparency and Protection Act**

Consistent with long-standing guidance from the White House Office of Management and Budget, FEMA does not take a position on legislation pending before Congress.

Kennedy
Page 4

FEMA recognizes the interest of flood insurance transparency and using the best data available to determine flood risk while also incorporating public and policyholder feedback. FEMA welcomes an approach similar to the insurance industry where manuals and premium rate filings are accessible to policyholders and the general public.

If Congress provided policyholders the opportunity to choose between their April 2020 rate and their Risk Rating 2.0 rate, there would be negative implications to the Program and our policyholders. As a primary matter, the April 2020 rates are not actuarially sound for current and future policy terms. The inability to charge actuarially sound rates undermines the long-term financial position of the Program. In addition to the challenges to the actuarial soundness and financial position of the Program, there are multiple administrative challenges. FEMA would have to to notify policyholders of the change as well as establish processes for collecting additional premium or allocating refunds for current and prior policy terms. Complex policy and technology system changes would need to occur to support the previous methodology. All messaging, guidance, and training put in place to implement Risk Rating 2.0 would need to be amended or rescinded and additional guidance would have to be created. Finally, as flood insurance price serves as an indicator of flood risk, a rate freeze could distort a policyholder's understanding of their flood risk. In sum, this would require significant time and effort for FEMA and its industry partners to notify its stakeholders of the changes and could lead to distrust in the Program.

I trust this information is helpful. If you have any questions, comments, or concerns, please have a member of your staff contact FEMA's Congressional Affairs Division at (202) 646-4500.

Sincerely,

DAVID I MAURSTAD
Digitally signed by
DAVID I MAURSTAD
Date: 2022.09.26
15:56:57 -04'00'

David I. Maurstad
Deputy Associate Administrator
Resilience