# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.*, | CIVIL ACTION NO. |
| Plaintiffs, | 2:23-CV-01839-DJP-JVM |
| v. | JUDGE DARREL PAPILLION |
| DEPARTMENT OF HOMELAND SECURITY, *et al.*, | MAGISTRATE JUDGE EVA J. DOSSIER |
| Defendants. | |

## JOINT MOTION TO MODIFY THE SCHEDULING ORDER

On April 15, 2024, the parties had a scheduling call with the Court's Case Manager. Shortly thereafter, the Court entered a scheduling order (ECF No. 108). Given the nature of this case and the unique procedural requirements in litigation arising under the Administrative Procedure Act, the parties jointly move to modify the scheduling order.

Based on the current scheduling order, the dispositive motions must be fully briefed and submitted sixty days before the April 23, 2025 Final Pretrial Conference, which means they must be submitted by February 22, 2025. *See* ECF No. 108 at 3–4. At the same time, these dispositive motions cannot be submitted before the February 5, 2025 Status Conference. *Id.* That leaves a seventeen-day window for summary judgment briefing. Given the complex questions of law, the extensive administrative record, and the certainty of summary judgment briefing, the current seventeen-day

1

window for summary judgment briefing is likely insufficient. The parties jointly request additional time in which to brief their cross motions for summary judgment.

While the parties ultimately disagree on some specifics of the schedule, the parties agree on two important aspects of the schedule.

*First*, all parties agree that there will be summary judgment briefing, that the administrative record must be produced before summary judgment briefing can take place, and that this case likely will be resolved at summary judgment.[1] In short, the parties agree that production of the administrative record is the next procedural step in this case.

*Second*, the parties have agreed to staggered summary judgment briefing, where Plaintiffs file a motion for summary judgment, Defendants then have forty-five days to file their combined response in opposition and cross-motion for summary judgment, Plaintiffs then have forty-five days to file a consolidated opposition and reply brief, and Defendants have thirty days to file their reply brief to conclude briefing.

Accordingly, the parties request that the Court establish a date for the Defendants to produce the administrative record and dates for summary judgment briefing. The parties set forth their respective positions on their proposed schedules below.

---

[1] Plaintiffs, however, reserve the right to go to trial should that be necessary.

## THE PARTIES' RESPECTIVE POSITIONS

**I.  PLAINTIFFS' POSITION**

Plaintiffs propose the following schedule:

- **May 15, 2024:** Administrative Record produced and lodged with the Court

- **July 15, 2024:** Plaintiffs' Motion to Supplement and/or Complete the Administrative Record

- **July 31, 2024:** Defendants Supplement the Administrative Record (if granted)

- **August 15, 2024:** Plaintiffs' & Defendants' Initial Disclosures (if needed)

- **August 15, 2024:** Plaintiffs' & Defendants' Expert Disclosures/Written Reports (if needed)

- **October 1, 2024:** Plaintiffs' Rebuttal Reports (if needed)

- **October 1, 2024:** Close of Discovery

- **December 1, 2024:** Plaintiffs' motion for summary judgment

- **January 15, 2025:** Defendants' opposition and cross-motion for summary judgment

- **March 1, 2025:** Plaintiffs' consolidated opposition and reply

- **April 1, 2025:** Defendants' reply

- **April 18, 2025:** The parties file a joint appendix with the cited portions of the administrative record[2]

- **May 5, 2025:** Trial

As explained below, this schedule best reflects the deadlines needed to keep this litigation on track for a May 5, 2025 trial date. Given that Defendants did not

---

[2] Plaintiffs do not oppose Defendants' proposal for handling the administrative record. *See infra* n.4.

3

undertake the Notice and Comment process for Equity in Action, neither Plaintiffs nor the Court knows what the administrative record will reveal. As such, under this timeline, Plaintiffs reserve their rights to ask Defendants to supplement or complete the administrative record and engage in extra-record discovery as needed. Because that discovery will likely require additional briefing, Plaintiffs respectfully request that the Court include the relevant deadlines in the scheduling order and issue the scheduling order by May 15, 2024. To the extent the Court has questions about the parties' respective positions, Plaintiffs ask that the Court hold a telephone status conference during the week of May 6, 2024, or as soon thereafter as the Court is able, but before May 15, 2024.

### A. Defendants Should Produce the Administrative Record by May 15, 2024.

Judicial review under the Administrative Procedure Act requires "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). The agency must "disclose the basis of its order," "give clear indication that it has exercised the discretion with which Congress has empowered it," and show that its "findings that support its decision" are "supported by substantial evidence." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68 (1968).

Defendants represented to the Court nine months ago, in July 2023, that they would produce the administrative record in "approximately six to nine months." *See* ECF No. 34-1 at 2. They have already exceeded that timeline and now seek to delay the production of the administrative record to over a year. *See infra* pp. 9-10. They

4

acknowledge that they started collecting documents in April 2023 (two months before Plaintiffs even filed their Complaint), Maurstad Dec., ECF No. 34-2, ¶7, and they identified a dozen federal employees who were responsible for compiling the record, *id.*, ¶¶ 10–11. Additionally, over nine months ago, in July 2023, they were "prepared to file a condensed record with key documents that the agency considered in developing Risk Rating 2.0." ECF No. 34-1 at 2.

Based on Defendants' representations to this Court and to Plaintiffs, Defendants should produce the record soon. Plaintiffs respectfully request that they do so by May 15, 2024, which is beyond the outer limit of the production date they previously asserted. They have been collecting documents for a year now (April 2023 to April 2024) and, nine months ago (July 2023), they were prepared to produce the documents they had collected up to that point.

This morning, the day the Parties had agreed to file this motion,[3] Defendants sent the attached declaration to Plaintiffs' counsel for the first time, expecting Plaintiffs to file it without time for review. In that declaration, Mr. Maurstad explains all the reasons why FEMA cannot produce the administrative record within the 6-9

---

[3] Defendants assert that Plaintiffs "demanded" an "accelerated timeline" for filing this joint motion. *Infra* n.5. More than two weeks to negotiate a new schedule is hardly accelerated. Plaintiffs first contacted Defendants about modifying the scheduling order April 18, 2024, and at each turn, Defendants asked for additional time to respond while withholding the fact that they needed that time to prepare the attached declaration.

month time period it originally gave to the Court and Plaintiffs. *See* Decl. of David Maurstad, May 2, 2024.

The reasons to further delay FEMA's production of the administrative record given in that declaration represent self-inflicted harm. Had FEMA complied with its statutory obligations, *see* 42 U.S.C. § 4020, and its notice-and-comment obligations under the APA to begin with, much of the information FEMA is "in the process of reviewing, sorting and organizing approximately 30 terabytes (TB) of information in order to compile the administrative record" would already be public. *See* Decl. of David Maurstad, ¶ 10, May 2, 2024. Complying with its statutory and notice-and-comment obligations would have relieved FEMA from what it now claims is an "onerous" task. *Id.* ¶ 11.

To give just a few examples, complying with those obligations would have relieved FEMA from having to (1) "enlist[] significant resources to review, sort, and organize, the documents"; (2) deploy special processes for "the use and treatment of . . . proprietary information within this litigation"; (3) deal with "too much" data to load into its "eDiscovery system"; (4) figure out how to staff compilation of the administrative record while also staffing "major disaster events," "regular FEMA duties," and other lawsuits against FEMA; and (5) hire "additional contract workers to assist" in compiling the administrative record. *Id.* ¶¶ 5–14. Indeed, if FEMA had complied with its legal obligations, Plaintiffs would not have had to sue FEMA to get access to relevant documents (Plaintiffs' other claims aside) and "the U.S. House of Representatives Oversight Accountability Committee" would not have needed to

6

"open[] an investigation" to figure out how FEMA arrived at Risk Rating 2.0 or "ma[ke] an expansive document request" for the documents that FEMA already should have made publicly available. *Id.* ¶ 14.

In short, FEMA's reasons for further delaying production of the administrative record amount to self-inflicted injury stemming from its own failure to comply with its legal obligations from the start. Every additional day FEMA asks for to do what it should have done from the start is another day Plaintiffs suffer irreparable harm at the hands of Risk Rating 2.0. *See* Order & Reasons at 47–53, ECF No. 100 (finding generally that Plaintiffs' "evidence satisfies the irreparable harm requirement"). For these reasons, Plaintiffs request that the Court hold FEMA to the 6-9 month timeline it previously gave and schedule production of the administrative record for May 15, 2024.

**B.      The Schedule Should Include Deadlines for Motions to Supplement or Complete the Record and for Expert Discovery.**

In the timeline above, Plaintiffs have set dates related to motions to supplement or complete the record and for potential expert discovery. Plaintiffs anticipate that supplementation or completion of the record will be necessary here. For example, in other pending litigation, FEMA claims that it does not have to disclose certain information about the model used by FEMA to set insurance premiums because that information is confidential and constitutes trade secrets. *See St. Charles Par. v. FEMA*, 2:23-cv-1269 (filed Apr. 25, 2023); *see also* Letter from Rep. Scalise, Comm. on Oversight and Accountability, to Administrator Criswell, FEMA (May 1, 2023) (requesting information about FEMA's modeling),

7

https://perma.cc/WY2A-YB32; Letter from Rep. Scalise, Comm. on Oversight and Accountability, to Administrator Criswell, FEMA (Sept. 18, 2023) (renewing same request after FEMA's production "[fell] far short of expectations"), https://perma.cc/GXH5-XSND. Expert discovery may also be needed in this case given, for example, the "technical terms [and] complex subjects" involved. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1247 n.1 (11th Cir. 1996). Finally, Plaintiffs agreed to delay the discussion of initial disclosures, currently due on April 29, 2024, until after the administrative record is produced so that the parties may be better informed in deciding whether such disclosures are appropriate here.

The Court need not prejudge the merits of any of these potential discovery issues at this stage. Plaintiffs have preserved their right to seek discovery along these lines regardless of whether or not the Court sets deadlines for them. Plaintiffs have included the deadlines in their proposed schedule because they respectfully suggest that having deadlines is preferable to leaving the timing uncertain.

If Plaintiffs ultimately pursue supplementing or completing the administrative record or seeking extra-record discovery, their proposed schedule will allow the parties to remain on track for summary judgment briefing and this Court's scheduled trial date of May 5, 2025. In the event no supplementation or extra-record discovery is needed, then the parties can simply proceed in accordance with the summary

judgment briefing deadline. In short, there is no risk to including these deadlines in a proposed schedule.

## II. DEFENDANTS' POSITION

Defendants propose the following schedule:

- **July 26, 2024:** FEMA produces the Administrative Record to Plaintiffs and files a certified list of the contents of the Administrative Record with the Court[4]

- **September 24, 2024:** Plaintiffs' motion for summary judgment

- **November 8, 2024:** Defendants' opposition and cross-motion for summary judgment

- **December 9, 2024:** Plaintiffs' consolidated opposition and reply

- **January 8, 2025:** Defendants' reply

- **January 22, 2025:** The parties file a joint appendix with the cited portions of the administrative record

Defendants respectfully request that the Court grant this proposed schedule because it (1) gives FEMA the modest amount of additional time necessary for it to finish its compilation of the complex and sizable administrative record in this case; (2) avoids building in dates for briefing on supplementing/completing the record and for discovery that lack any basis; and (3) tees this case up for resolution on a faster

---

[4] Because this Administrative Record is large and because Defendants expect that the majority of it will not be referenced in the summary judgment briefing, Defendants propose to follow the administrative record procedures followed by the U.S. District Court for the District of Columbia, which handles a significant number of record review cases. *See* D.D.C. Local Civ. R. 7(n), https://www.dcd.uscourts.gov/sites/dcd/files/local_rules/Local%20Rules%20Jan_2024.pdf. Under those procedures, the government agency produces the administrative record to the plaintiff and a certified list of the contents of the administrative record to the Court. Then, once briefing is complete, the parties file a joint appendix with the cited portions of the record. *See id.* 7(n)(2).

timeline than Plaintiffs' proposed schedule.

*First*, as explained in the accompanying declaration,[5] FEMA has been working diligently to process the terabytes of information that comprise the administrative record but needs just three additional months to complete this work. As FEMA represented to the Court early in the litigation—as part of the agency's efforts in July 2023 to propose a case schedule in response to Plaintiffs' preliminary injunction motion—FEMA anticipated that it would need approximately six-to-nine months to compile the record given the complexity of Risk Rating 2.0, the number of FEMA staff and insurance companies, stakeholder groups, vendors, and others involved, and the wide variety and complexity of the underlying data. Decl. of David Maurstad, ECF No. 34-2, ¶¶ 3–4, 8–9, 26. Since then, FEMA has worked diligently on the record (even though, for much of this period, it had a pending a motion to dismiss raising jurisdictional issues that it believed fully resolved this case). And the agency has made considerable progress, as it has made its way through reviewing much of the 30 terabytes of data and documents that it initially determined potentially belonged in the record. But FEMA was not able to complete this process within the nine-month window it initially projected last year because of several challenges arising during

---

[5] Defendants transmitted their portion of this joint motion to Plaintiffs yesterday at 11:25 a.m. CT, accommodating Plaintiffs' accelerated timeline for filing. As reflected in this sentence and below, Defendants made reference to an accompanying declaration, specifically alerting Plaintiffs to the declaration. Defendants transmitted that declaration to Plaintiffs this morning, as soon as was feasible under the accelerated timeline Plaintiffs demanded for this filing. FEMA needed time yesterday afternoon and evening to revise and finalize the declaration. Defendants gave Plaintiffs the opportunity to make additions to their portion of the joint motion, which they have done.

10

the intervening period. As the attached declaration lays out, FEMA has faced technical challenges due to multiple failures in its eDiscovery system and the difficulties in handling proprietary data from Milliman that undergirds Risk Rating 2.0. FEMA has also faced staffing challenges due to, among other factors, losing its lead paralegal assigned to the case, the deployment of members working on the case to major disaster events, and funding restrictions that limit the agency's ability to add additional staff. And the agency's additional, ongoing litigation and investigation responsibilities in the past six-to-twelve months—namely compiling two other large administrative records, producing over 12,000 pages in response to the ongoing FOIA litigation before this Court concerning Risk Rating 2.0, responding to a large number of Hurricane Ian-related lawsuits, and working to respond to the expansive document request of the U.S. House of Representatives Oversight Accountability Committee—have stretched the agency's limited resources.

Nonetheless, FEMA has marshaled these resources to ensure that it will be able to complete its work on the administrative record by the end of July, just a little over two months after Plaintiffs' proposed production date. That timeline is reasonable and appropriate for this case. This case has been pending for nearly a year, and the Court only recently resolved Defendants' motion to dismiss and Plaintiffs' preliminary injunction motion. There is no emergency that necessitates proceeding on a timeline that forces FEMA to accelerate its record work beyond its capacity. *See* Defs.' Mem. in Opp. to Pls.' Mot. for Prelim. Inj. 8 (pointing out that Plaintiffs significantly delayed in bringing suit and moving for a preliminary

injunction, waiting until two years after FEMA publicly announced Risk Rating 2.0 on its website and more than a year and a half after it began applying Risk Rating 2.0 to policies nationwide). The Court itself recognized the lack of emergency in denying Plaintiffs' preliminary injunction motion. *See, e.g.*, Order and Reasons 54 ("[T]he Plaintiff States have only shown that some small percentage of their residents are likely to choose not to carry flood insurance during the pendency of this litigation, due to the increased rates under Risk Rating 2.0."), ECF No. 100.[6] And Plaintiffs themselves propose a schedule that would not conclude briefing on cross-motions for summary judgment until nearly a year from now, undermining any claim of urgency.

*Second*, Defendants agree with Plaintiffs that the Court's review should be based on the administrative record, and Defendants accordingly do not believe that the case schedule should build in anything beyond record production and summary judgment briefing based on that record. *See, e.g.*, *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("The focal point for judicial review" of agency action is "the administrative record already in existence, not some new record made initially in the reviewing court."); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) (under the APA, a court "should have before it neither more nor less information than did the agency when it made its decision."). Upon concluding its compilation of the administrative record, FEMA will certify that the record is complete. *Oceana, Inc. v. Ross*, 920 F.3d

---

[6] Plaintiffs also have not indicated yet whether they intend to appeal the Court's denial of their preliminary injunction motion. Should they choose to do so, that would provide yet another basis for the Court to decline granting Plaintiffs' accelerated record production schedule.

12

855, 865 (D.C. Cir. 2019). FEMA's compilation and certification of this record, like all government action, is entitled to a presumption of regularity. *See, e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies."); *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56, 58 (D.D.C. 2003). Overcoming that presumption is a rare and unusual step that requires plaintiffs to produce clear evidence of record incompleteness or agency bad faith. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785, 811–12 (2022); *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010); *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 11–12 (D.D.C. 2001). Without any such evidence (as here), there is no basis to build in time in the case schedule to complete the record with allegedly missing materials, supplement the record with any extra-record materials, or engage in extra-record discovery, including via initial disclosures[7] and written expert reports.[8] *See, e.g.*,

---

[7] Federal Rule of Civil Procedure 26(a)(1)(B) also specifically exempts administrative-record-based cases like this one from the initial-disclosures requirement.

[8] Plaintiffs provide no basis for including in the schedule written expert reports. Under the APA, the Court must "look at the [agency's] decision not as a chemist, biologist, or statistician . . . but as a reviewing court exercising [its] narrowly defined duty of holding agencies to certain minimal standards of rationality." *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 380 (5th Cir. 2008) (cleaned up). Thus, a court can never consider extra-record "evidence to determine the correctness or wisdom of the agency's decision." *Harris v. United States*, 19 F.3d 1090, 1096 n.7 (5th Cir. 1994) (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1161 (9th Cir. 1980)); *see also, e.g.*, *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 387, 425 (D.D.C. 2015) ("[W]ithin the context of an APA challenge to agency decisionmaking … it is not our job to referee battles among experts; ours is only to evaluate the rationality of [the agency's decision" (citations and quotation marks omitted)). Accordingly, courts regularly refuse to consider third-party affidavits and reports that are not part of the administrative record. *See, e.g.*, *OnPath Fed. Credit Union v. United States*

13

*Texas Gen. Land Off. v. Biden*, No. 7:21-CV-00272, 2023 WL 2733388, at *1 (S.D. Tex. Mar. 31, 2023) (noting, in opinion denying challenge to the administrative record, that prior to record production it had declined to enter scheduling order allowing discovery because plaintiffs could not point to any problems with the record).

To the extent the Court disagrees, Defendants do not object to Plaintiffs' proposal of briefing to complete/supplement the record beginning two months after the date by which the Court orders record production. If the Court permits briefing on Plaintiffs' potential Motion to Supplement and/or Complete the Administrative Record, Defendants respectfully request 30 days to respond to any opening brief filed by Plaintiffs.

*Third*, Defendants' proposed schedule tees this case up for resolution on a faster timeline than Plaintiffs' proposed schedule. Defendants' proposed schedule has briefing concluding three months before Plaintiffs' proposed schedule. That further warrants giving FEMA the few additional months it needs to complete its work on the administrative record.

Defendants do not believe that a telephonic status conference is necessary to resolve the parties' case schedule disagreements. Undersigned counsel for

---

*Dep't of Treasury, Cmty. Dev. Fin. Institutions Fund*, No. CV 20-1367, 2021 WL 5769468, at *3–*5 (E.D. La. Dec. 6, 2021), *aff'd*, 73 F.4th 291 (5th Cir. 2023); *Friends of Richards–Gebaur Airport v. FAA*, 251 F.3d 1178, 1190 (8th Cir. 2001); *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285–86 (D.C. Cir. 1981); *Long v. United States Dep't of Health & Hum. Servs.*, 422 F. Supp. 3d 143, 157 (D.D.C. 2019), *aff'd*, No. 19-5358, 2021 WL 6102198 (D.C. Cir. Dec. 3, 2021).

14

Defendants can make themselves available as necessary for a telephonic status conference, but are unavailable on May 9, 10, and 24, 2024.

## CONCLUSION

The parties jointly and respectfully request that the Court modify the scheduling order (ECF No. 108). Although the parties disagree about the specifics of the relevant deadlines, the parties jointly request that the Court establish (1) a date by which Defendants must produce the administrative record and (2) a summary judgment briefing schedule.

Dated: May 4, 2024                       Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

Elizabeth B. Murrill, T.A. (LA #20685)
  Attorney General
*/s/ Morgan Brungard*
Morgan Brungard (LA #40298)
  Deputy Solicitor General
Tracy Short (LA #23940)
  Assistant Chief Deputy Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
ATTORNEY GENERAL'S OFFICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov
BrungardM@ag.louisiana.gov
ShortT@ag.louisiana.gov

*Counsel for the State of Louisiana and Plaintiff Parishes*

ASHLEY MOODY
  Attorney General
JAMES H. PERCIVAL*
  Chief of Staff
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

DREW H. WRIGLEY
  Attorney General
PHILIP AXT (ND Bar No. 09585)*
  Solicitor General
North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for the State of North Dakota*

RAÚL LABRADOR
  Attorney General
Theodore J. Wold *
  Solicitor General
Office of the Idaho Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 999-0910
Email: Theodore.Wold@ag.idaho.gov

*Counsel for State of Idaho*


RUSSELL COLEMAN
  Attorney General of Kentucky
LINDSEY KEISER*
  Assistant Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Tel: (502) 696-5517

*Counsel for the Commonwealth of Kentucky*


LYNN FITCH
  Attorney General
JUSTIN L. MATHENY*
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI ATTORNEY GENERAL
550 High Street, Suite 1200
Jackson, MS 39201
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*


ALAN WILSON
  South Carolina Attorney General
ROBERT D. COOK
  Solicitor General
J. EMORY SMITH, JR.*
  Deputy Solicitor General
THOMAS T. HYDRICK*
  Assistant Deputy Solicitor General
JOSEPH D. SPATE*
  Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*


KEN PAXTON
  Attorney General
RALPH MOLINA
  Attorney General
RALPH MOLINA
  Deputy Attorney General for Legal Strategy
SUSANA DOKUPIL*
  Special Counsel, Special Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711
(512) 463-4139
susanna.dokupil@oag.texas.gov

*Counsel for the State of Texas*

17

AUSTIN KNUDSEN
  Attorney General
CHRISTIAN B. CORRIGAN*
  Solicitor General
PETER M. TORSTENSEN, JR.*
  Assistant Solicitor General
Montana Department of Justice
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Christian.Corrigan@mt.gov
Peter.Torstensen.@mt.gov

*Counsel for the State of Montana*

*Admitted pro hac vice

JASON S. MIYARES
  Attorney General
KEVIN M. GALLAGHER*
  Principal Deputy Solicitor General
Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of Virginia*

BRIAN M. BOYNTON
  Principal Deputy Assistant Attorney
  General
United States Department of Justice
Civil Division

LESLEY FARBY
  Assistant Branch Director
United States Department of Justice
Civil Division, Federal Programs Branch

TODD KIM
  Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

BENJAMIN TAKEMOTO
(DC Bar # 1045253)
YOSEPH T. DESTA
(CA Bar # 332179)
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

18

P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4252
Email: benjamin.takemoto@usdoj.gov

KRYSTAL-ROSE PEREZ
(TX Bar #24105931)
 Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
P.O Box 7611, Ben Franklin Station,
Washington, D.C. 20044
Tel: (202) 305-0486
Email: krystal rose.perez@usdoj.gov

*Counsel for Defendants*