IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY *et al.*, <br><br> *Defendants*. | Civil Action No. 2:23-CV-01839 <br><br> Section P <br><br> Judge Darrel James Papillion <br><br> Magistrate Judge Eva J. Dossier |

## **DECLARATION OF DAVID MAURSTAD**

1. I, David Maurstad, am the Assistant Administrator for the Federal Insurance Directorate, which is housed within the Federal Emergency Management Agency (FEMA), a component agency of the Department of Homeland Security.

2. As the Assistant Administrator for the Federal Insurance Directorate, I am the Senior Executive for the National Flood Insurance Program at FEMA.

3. On July 6, 2023, I submitted a declaration in support of Defendants' Motion to Extend the Submission Date for Plaintiffs' Preliminary Injunction Motion. *See* Decl. of David Maurstad, ECF No. 34-2.

4. The purpose of this additional declaration is to provide an update on FEMA's progress to gather, organize, and prepare the administrative record for production since my July 2023 declaration. In that declaration, I estimated that it would take six-to-nine months to produce the administrative record. For the reasons explained below, FEMA will need approximately three more months to produce the administrative record.

5. As I described in paragraph 7 of my prior declaration, FEMA began collecting the data and documents making up the administrative record in April 2023. Although many of the data and documents making up the record were kept during the design and implementation of Risk Rating 2.0, they were not maintained in a single location due to their size and nature. Hence, to ensure that a complete administrative record is produced, FEMA enlisted significant resources to review, sort and organize the documents and data. However, the volume of documents and data exceed the available resources to do the task within the initially anticipated time frame.

6. From April 2023 onward, FEMA has diligently worked on the administrative record in the midst of other developments in this case, including: (1) Defendants' filing of a motion to dismiss on August 7, 2023 raising threshold jurisdictional issues; (2) Defendants' filing of an opposition to Plaintiffs' preliminary injunction motion on August 8, 2023; and (3) the hearing on the parties' motions held on September 14, 2023.

7. On March 28, 2024, the Court granted in part and denied in part FEMA's motion to dismiss and denied the Plaintiffs' motion for a preliminary injunction. ECF 100. Specifically, with respect to the former, the Court found that only the Plaintiffs States and three Parishes had standing to maintain this lawsuit and dismissed all other Plaintiffs. The Court also dismissed the NEPA count asserted by all Plaintiffs.

8. During the six months that this Court's decision on the motions was pending, FEMA continued to amass, compile, coordinate, and synthesize the administrative record. However, FEMA was not able to devote as many resources to this project as it had initially for several reasons (described below). Although FEMA continued to work on the project on almost a daily basis, the challenges in the task persisted and, indeed, were magnified.

9. For example, FEMA placed a litigation hold for information related to Risk Rating 2.0 on approximately 165 FEMA employees located at its Headquarters and Region locations and on contractors, and FEMA made requests for information to all 165 of those persons for pertinent information from both before and after the Plaintiffs' complaint was filed.

10. FEMA has been and remains in the process of reviewing, sorting and organizing approximately 30 terabytes[1] (TB) of information in order to compile the administrative record. This includes technical information interspersed with other types of files such as pdfs, Word files, and emails. FEMA has made considerable progress in reviewing much of the 30 TB but needs additional time to complete this work.

11. Another significant wrinkle in the process is proprietary information. Specifically, FEMA contracted with Milliman[2] for the use of intellectual property that assisted in flood modeling, and for access to the database and system delivering data to the Risk Rating 2.0 initiative. Milliman provided FEMA with restricted licenses to the proprietary model and algorithm data in consideration for FEMA protecting the Milliman intellectual property rights and restricting use and access.[3] FEMA is contractually bound to protect and refuse to release Milliman's

---

[1] To provide the Court with some perspective, 1 terabyte is equal to 1,024 gigabytes. One TB of storage can hold between 5 and 75 million pages (depending on factors such as file formats, compression techniques for the documents, etc.). Looked at in a more "dated" manner, 1 TB is generally considered to be about 1300 file cabinets of documents.

[2] "Milliman" is used broadly herein to include Milliman and also to include any vendors/ contractors/subcontractors whose intellectual property may have been used in the process of developing Risk Rating 2.0.

[3] Milliman's protection of its proprietary interest has spawned a separate lawsuit in this Court after FEMA denied a portion of a FOIA request for proprietary modeling data and algorithms. *St. Charles Parish v. FEMA*, Case No. 23-cv-01369. While the specifics of that lawsuit are beyond the scope of this litigation, the partial denial was due to FEMA's application of the exemptions in the FOIA statute that protect confidential commercial information (5 U.S.C. § 552(b)(4)). Milliman has objected to any release of its proprietary information. Therefore, the parties must

intellectual property. Those restrictions have limited FEMA's ability to easily process the Milliman technical data that is part of this litigation. In addition to this technical data and information being more onerous because it cannot be inputted into FEMA's eDiscovery system due to specialized format requirements—as I detailed in paragraph 20 of my prior declaration—the use and treatment of this proprietary information within this litigation requires additional scrutiny and ultimately may require Court intervention and protective order.

12. Complicating matters have been the setbacks occasioned by FEMA's eDiscovery system, of which FEMA could not have been aware when it made an initial estimate of its anticipated timeline for record production. There have been repeated failures of the system in the last 10 months. These failures result in the inability to deploy data or sort, review, or organize the relevant information. Each time there was a failure, which then required system analysis and system repair, the document management process was delayed for approximately a week.

13. Beyond these failures, an additional challenge that FEMA became aware of after it made its initial timeline estimate is that the eDiscovery system requires FEMA staff to split shifts. The system will only allow one user to load data during a single session and then that user must log out. A separate session must then be started by another user to begin reviewing, sorting, and organizing data. This is indicative that there is too much of a data load on the eDiscovery system.

14. In addition to the foregoing challenges, FEMA's resources have otherwise been stretched during the time necessary to compile the administrative record:

---

determine whether the release of such information in conjunction with a protective order is a feasible alternative.

4

- FEMA, of course, is an emergency management agency, and all staff are subject to disaster deployment 365 days a year. Several support staff members and surge participants working on the administrative record were either deployed to major disaster events or were required to return to their regular FEMA duties during the seven months between Defendants' motion to dismiss and the Court's decision on March 28, 2024;

- FEMA is in the process of hiring a new paralegal who will be assigned to this case because the lead paralegal previously assigned recently left the agency. The protracted hiring process inherent in hires into the agency (e.g., background check, etc.) limits FEMA's ability to expedite the document review process;

- Since the Court's March 28, 2024 decision, FEMA has attempted to temporarily procure as many as 10 additional contract workers to assist in the work on the administrative record. While it has taken more than a month to go through the necessary contract modification process, FEMA expects that will occur within the next few weeks;

- FEMA has limited resources for processing the magnitude of documents required to complete the administrative record, as FEMA funding restrictions limit the number of staff permitted to conduct the aforementioned work;[4]

- Prior to the Court's March 28, 2024 ruling, the lead FEMA counsel for this litigation went on detail for several months;

---

[4] Different FEMA funding sources dictate which employees may work on various projects. Those FEMA employees eligible and available to work on this project either have worked, or are working, on this project.

- FEMA is engaged in two other major lawsuits, further taxing the limited resources of the litigation team, specifically *Northwest Environmental Defense Center, et al. v. Federal Emergency Management Agency, et al.*, Case No. 3:23-cv-01335 (D. OR.), and *Comite Dialog Ambiental, Inc., et al. v. Federal Emergency Management Agency et al.*, Case No. 3:24-cv-01145 (D. PR). Both have large document caches requiring resources and time for compilation of the administrative records pertinent to those cases. In order to meet deadlines, FEMA was required to redirect staff and resources to review and produce the administrative records for those other cases. The deadlines for those cases were set before the Court's March 28, 2024 ruling in this case. The deadline for *Northwest Environmental Defense Center* was March 6, 2024, and the deadline for *Comite Dialogo Ambiental* is May 6, 2024;

- In *St. Charles Parish v. FEMA*, Case No. 23-cv-01369, the FOIA litigation concerning Risk Rating 2.0 that is also before this Court, FEMA has worked between September 2023 and February 2024 to produce over 12,000 pages of responsive records in the case;

- Approximately 300 Hurricane Ian-related lawsuits have also tested the resources of the litigation team responsible for this case;

- Contemporaneous with this litigation, the U.S. House of Representatives Oversight Accountability Committee opened an investigation into Risk Rating 2.0 and made an expansive document request. Work on this request has been ongoing at the same time as the production obligations as in this case. It uses many of the same FEMA litigation resources. FEMA has been producing thousands of pages in a rolling manner to the Committee, and it is about to make its ninth production.

15. After the Court ruled on the motion to dismiss on March 28, 2024, FEMA intensified its efforts to compile a complete and comprehensive administrative record. But it still needs approximately three more months to produce the administrative record.

16. I recognize that in July 2023, I represented to the Court that I anticipated that record production would take six-to-nine months. Based on the information available to FEMA at the time, that represented my best estimate. As with anything of this magnitude, however, estimating in advance is a difficult proposition. And it has certainly proved to be in this case, but not because of a lack of effort. As noted, notwithstanding the motion to dismiss that had the potential to lead to resolution of this case, FEMA continued diligently in its efforts to compile the administrative record and has worked to overcome the various technical and resource challenges that it has faced.

17. A full and accurate administrative record will benefit all parties to the litigation. FEMA believes the additional time requested will allow it to accomplish that goal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on _____.

_____
David Maurstad
Assistant Administrator for Federal Insurance Directorate