**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| THE STATE OF LOUISIANA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY *et al.*, <br><br> *Defendants*. | Action No. 2:23-CV-01839-DJP-JVM <br> Section P <br> District Judge Darrel J. Papillion <br> Magistrate Judge Eva J. Dossier |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO ENTER PROTECTIVE ORDER</u>

Defendants respectfully request that the Court enter their proposed standard protective order to protect confidential information in the administrative record in this case. The administrative record, which forms the basis for this Court's resolution of Plaintiffs' Administrative Procedure Act ("APA") suit challenging Defendants' actuarial update to flood insurance rates in the National Flood Insurance Program ("NFIP"), contains significant amounts of personally identifiable information ("PII") and confidential business information. There is no dispute between the parties that the PII should be protected. The parties' sole dispute boils down to whether the confidential information in the record—proprietary data provided by the vendors that assisted the government in updating the NFIP's pricing methodology—merits protection from third-party disclosure. On one side of the ledger, Defendants demonstrate that good cause exists to enter their proposed protective order regarding this information. Defendants propose using the District's standard protective order, and they robustly demonstrate that the confidential vendor information at issue is highly valuable intellectual property that the vendors closely guard to prevent against competitive and financial harm. On the other side of the ledger, Plaintiffs oppose Defendants' protective order based on irrelevant

merits arguments and premature concerns regarding public access. Accordingly, the Court should enter Defendants' proposed order.

## BACKGROUND

This case concerns Risk Rating 2.0, FEMA's actuarial update to the methodology it uses to calculate premiums for flood insurance that it provides across the country through the NFIP. *See* Order and Reasons ("Op.") 1–2, ECF No. 100. Risk Rating 2.0 modernizes the NFIP's outdated rate-setting approach from the 1970s with a 21st-century approach that leverages industry best practices, up-to-date technology, better data, and fundamental actuarial principles and methods. It is the culmination of years of work by FEMA to correct critical inadequacies in its legacy rating approach, and it has enabled FEMA to deliver premium rates that, consistent with congressional mandates, are actuarially sound because they reflect each covered property's true flood risk and are fairly distributed based on individual risk levels. Plaintiffs challenge Risk Rating 2.0 as unlawful. They allege that Risk Rating 2.0 "exceeds FEMA's statutory authority, is not in accordance with law, is contrary to a constitutional right, and was implemented without observance of the procedures required by law." *Id.* at 1.

On March 28, 2024, the Court denied Plaintiffs' preliminary injunction motion and granted-in-part and denied-in-part Defendants' motion to dismiss. *Id.* at 56. With respect to Defendants' motion, the Court held that the State Plaintiffs and three Parish Plaintiffs had standing, but it concluded that all other Plaintiffs lacked standing, and it dismissed them from the case. *Id.* at 40–41. The Court also dismissed on standing grounds Plaintiffs' claim alleging a violation of the National Environmental Policy Act. *Id.* at 41–43. With respect to Plaintiffs' motion, the Court held that the harms that the remaining Plaintiffs alleged were substantially outweighed by the harms that Defendants would suffer if Risk Rating 2.0 were to be enjoined, and by the public's interest in the continued use of the already-implemented rating methodology. *Id.* at 48–56.

On April 15, 2024, the Court entered a Scheduling Order (ECF No. 108) setting various case deadlines. And on May 7, 2024, the Court granted-in-part and denied-in-part the parties' joint motion to modify its scheduling order. *See* Order at 2, ECF No. 117. The Court ordered Defendants to produce the administrative record to Plaintiffs on or before July 26, 2024. *See id.*

On June 26, 2024, one month before Defendants' record production deadline, undersigned counsel for Defendants reached out to Plaintiffs' counsel by email to inquire if Plaintiffs would be willing to agree to a stipulated protective order regarding confidential information in the record.[1] Undersigned counsel for Defendants explained that the confidential information took on two forms (trade secret/commercial information of the third-party vendors that FEMA contracted with to assist with Risk Rating 2.0 development, and policyholder PII information) and fell into two general data formats (technical information, in various file formats, that FEMA would be producing on a hard drive, and certain proprietary information in pdf and similar formats that FEMA would be producing electronically). And counsel explained that Defendants would like to use the template protective order on Chief Magistrate Judge North's court webpage,[2] with modifications as necessary and negotiated by the parties.

On July 3, 2024, Plaintiffs' counsel stated by email that Plaintiffs were open to the possibility of negotiating and stipulating to a protective order and requested that Defendants send over a draft proposal. Undersigned counsel for Defendants sent a draft proposal—the attached proposed

---

[1] Defendants had previously identified the potential need for a protective order as part of their submissions for the parties' joint motion to modify the Court's initial scheduling order. *See* Decl. of David Maurstad ¶ 11, ECF No. 114.

[2] Defendants provided a link to that webpage: https://www.laed.uscourts.gov/judges-information/judge/honorable-michael-b-north.

protective order that Defendants now request that the Court enter—on July 10, 2024.[3] Undersigned counsel explained that Defendants had relied on the template protective order from Chief Magistrate Judge North's webpage and made edits in track changes to adapt the template to the needs of this case.

On July 15, 2024, Plaintiffs' counsel advised by email that Plaintiffs could not confer on Defendants' proposed protective order for several weeks, until August 1. Plaintiffs' counsel also stated that Plaintiffs had a number of questions about the proposal and believed it to be overbroad in a number of ways.

The following day, undersigned counsel for Defendants replied by email and again explained that Defendants had relied on Chief Magistrate Judge North's template protective order and made minor modifications to it simply to reflect that this case is a record-review case, as Defendants had previewed three weeks earlier. Undersigned counsel therefore noted surprise that Plaintiffs had concerns regarding the proposal's alleged overbreadth, and noted that Plaintiffs' concerns were unspecified. Undersigned counsel expressed willingness to continue to discuss the protective order to see whether the parties could reach agreement or whether a contested motion would be required, provided that Plaintiffs could agree to modify the record production schedule so that the parties' discussions, for which Plaintiffs requested additional time, could occur before the July 26 production deadline ordered by the Court. Counsel explained that FEMA would otherwise need to move for a protective order motion imminently and requested a teleconference to discuss the prospect of a contested motion. Plaintiffs' counsel responded by email, agreed to a teleconference, and noted that Plaintiffs had a number of questions about the draft protective order's scope and duration.

---

[3] Per footnote 1 of the model protective order, Defendants have submitted to the Court a redlined version of the model protective order that indicates deletions and additions to the model text. For the Court's convenience, Defendants have also submitted a clean version of their proposed order as well.

Counsel for Defendants and Plaintiffs held a teleconference on July 22, 2024. During the teleconference, Defendants' counsel emphasized Defendants' willingness to discuss any scope and durational issues that Plaintiffs had and reiterated that Defendants' intention was simply to reach agreement on the types of standard protective orders that are used in the District. In response to questions regarding what the protective order would cover, Defendants' counsel explained, consistent with the June 26, 2024, email to Plaintiffs' counsel, that FEMA sought the protective order to protect (1) certain confidential technical information from third-party vendors and PII of NFIP policyholders, which would be contained on a hard drive, and (2) certain confidential information from the third-party vendors in pdfs and related formats, which would be in the portions of the record to be produced electronically. Defendants' counsel also noted that the proposed protective order explicitly provided a process for Plaintiffs to challenge any confidentiality designations they disagreed with and did not concern the filing of any document under seal, which would be governed by the Court's local rules. Plaintiffs' counsel flagged a concern about the durational limits of the proposed order, and Defendants' counsel indicated that Defendants would be willing to consider any durational revisions that Plaintiffs offered. But, ultimately, the parties could reach only partial agreement on the proposed order. Plaintiffs' counsel indicated that Plaintiffs agreed to the protective order as to the PII but could not agree to the order as to any other confidential information. According to Plaintiffs' counsel, Plaintiffs could not agree to a protective order as to confidential information from third-party vendors because they believed that FEMA had violated its statutory obligations by implementing Risk Rating 2.0 without undertaking notice and comment and publicly disclosing critical information about the methodology.

Accordingly, Defendants bring this opposed motion for the Court to enter the attached protective order.

**ARGUMENT**

I.      **Protective Orders Are Warranted Upon a Showing of Good Cause**

A district court may, upon a showing of good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Id.*; *see also Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("The grounds for a protective order can include privileged or work-product material, but can also include the improper sharing of confidential information between litigants in separate cases."). So-called "'blanket' protective order[s] that permit[] the parties to protect documents that they believe in good faith contain trade secrets and other confidential commercial information . . . are routinely agreed to by the parties and approved by the courts." *Blanchard & Co. v. Barrick Gold Corp.*, 2004 WL 737485, at *6 (E.D. La. Apr. 5, 2004) (quotation marks omitted); *see also, e.g.*, 8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2035 (3d ed. June 2024 update) ("Protective orders have often been sought by agreement, particularly regarding confidential information and in litigation likely to involve a large volume of documents. Frequently these agreements propose 'umbrella' protective orders that authorize any person producing information to designate that which is confidential as protected under the order.").

II.     **Good Cause Supports Entry of the Proposed Protective Order to Protect Confidential and Personally Identifiable Information in the Administrative Record**

The accompanying declaration from FEMA Deputy Assistant Administrator Jeffrey Jackson demonstrates that good cause exists for the Court to enter Defendants' proposed protective order to limit third-party disclosures of confidential information and PII in the administrative record.

**PII**: As Mr. Jackson explains, FEMA's voluminous hard-drive production of technical files in the administrative record contains the PII of millions of NFIP policyholders that is interwoven in

terabytes of data. *See* Decl. of Jeffrey Jackson ("Jackson Decl.") ¶ 6.[4] That PII includes, among other things, name and address information. *See id.* Such information is prohibited from disclosure by the Privacy Act, 5 U.S.C. § 552a, *et seq.*, as it is personal information located in a Federal government "record" and therefore requires the consent of that individual prior to disclosure unless made "pursuant to the order of a court of competent jurisdiction," *id.* §552a(b)(11). Accordingly, Defendants request an order that authorizes the release of the PII located on FEMA's hard-drive record production under the terms established by their attached protective order, which places appropriate limits on third-party disclosure and use of the information. Courts routinely enter such protective orders to safeguard privacy interests. *See, e.g.*, *Laxalt v. McClatchy*, 809 F.2d 885, 888–89 (D.C. Cir. 1987) (explaining that a court may order disclosure of Privacy Act-protected information and may impose measures to limit dissemination of the information disclosed); *Lohrenz v. Donnelly*, 187 F.R.D. 1, 8–9 (D.D.C. 1999) (similar). During counsels' meet-and-confer process, Plaintiffs' counsel indicated that Plaintiffs agreed with Defendants' request that the Court enter such a protective order.

**Confidential Information:** Mr. Jackson explains in his declaration that the voluminous administrative record contains sensitive and proprietary information that FEMA obtained from several third-party actuarial and risk modeling vendors that the agency contracted with to assist with the development of Risk Rating 2.0. *See* Jackson Decl. ¶ 6 (explaining this confidential information is interwoven in various formats in FEMA's hard drive record production, and in pdf and similar files in FEMA's electronic record production). And Mr. Jackson substantiates that this information is confidential information that should be protected through ordinary limits on third-party disclosures.

---

[4] FEMA's hard-drive production will constitute several terabytes. FEMA's electronic production of nontechnical file formats, such as pdfs, is likewise voluminous, consisting of tens of thousands of documents.

As Mr. Jackson's declaration explains (*see id.* ¶¶ 8 & n.1, 9), FEMA obtained the vendors' actuarial and risk modeling data as part of paid licenses with the vendors for their products and services. As with many software and technology providers across industries, these vendors license their products and services under agreements that restrict users (here FEMA) from publicly disclosing technical outputs. And for good reason. As the Jackson declaration and incorporated declarations explain,[5] these outputs—the actuarial and risk modeling data broadly at issue here—are highly confidential and treated as such because they reveal the vendors' proprietary methods. In particular, they reveal the vendors' unique and proprietary assumptions and data on flood hazards and vulnerability, thus exposing the "secret sauce," developed at great expense, behind the vendors' basic business operations and revenue-generating activity.[6] The data's unauthorized use outside the confines of the vendors' paid licenses, including by competitors, threatens the vendors' ability to make money and remain financially viable. Accordingly, the vendors themselves take great pains to keep the data in question confidential even beyond their license agreements—such as housing the data in secure network databases and establishing password protections governing access to their software platforms—and have requested that FEMA ensure its protection in this litigation.[7]

---

[5] FEMA previously submitted these declarations to the Court as part of its summary judgment submission in the ongoing litigation concerning a Freedom of Information Act request for certain Risk Rating 2.0 records. *See* Defs' Mot. for Summ. J., *St. Charles Parish et al v. FEMA*, Case No. 2:23-cv-1369 (E.D. La.), ECF No. 31 (declarations are exhibits ECF Nos. 31-5–31-10). The Court may take judicial notice of these public filings. *See, e.g.*, *Krystal One Acquisitions, LLC v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020); *Vallee v. Crown Equip. Corp.*, No. CV 20-1571, 2020 WL 8265340, at *3 (E.D. La. Nov. 10, 2020).

[6] Each of the vendors specifically licenses its products, which generated the data at issue, as their main product offerings to insurers and other clients.

[7] If FEMA is unable to protect their information, each of the vendors has indicated that they will likely be unwilling to license their catastrophe modeling products to the government in the future in a similar fashion. That poses a substantial harm to the public interest, which benefits from the proprietary understanding of flood risks and other catastrophic risks that these vendors' products offer. FEMA's

To that end, Defendants move the Court to enter the attached proposed protective order. As discussed, Defendants' proposed order relies on the template protective order posted publicly by Chief Magistrate Judge North—which is routinely agreed to by parties to protect confidential information and ordered by judges in the District[8]—and just makes minor adjustments to reflect that this is a record-review case.[9]

Under these circumstances, good cause exists to enter Defendants' standard protective order to protect the confidential risk modeling and actuarial data in the administrative record. "[A]mple precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to outside attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage . . . ." *Blanchard*, 2004 WL 737485, at *10 (quotation marks omitted); *see also, e.g.*, *Jefferson Radiation Oncology, L.L.C. v. Advanced Care Scripts, Inc.*, No. CV 15-1399, 2015 WL 13542745, at *2 (E.D. La. Nov. 10, 2015) (granting protective order over confidential customer list); *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 RPP, 2012 WL 13933, at *3–*4 (S.D.N.Y. Jan. 4, 2012) (granting protective order

---

inability to protect the proprietary information it obtained from the vendors also poses litigation risk to the agency.

[8] *See, e.g.*, *United States of America v. Taylor Energy Co., LLC*, Case No. 2:20-cv-2910 (E.D. La.), ECF Nos. 66, 68; *Onpath Fed. Credit Union v. U.S. Dep't of Treasury, Community Development Financial Institution Fund*, Case No. 2:20-cv-1367 (E.D. La.), ECF Nos. 16, 18; *Nocentelli v. United States of America*, Case No. 2:18-cv-9414 (E.D. La.), ECF Nos. 34, 35; *Rapp v. Dep't of the Interior United States*, Case No. 2:18-cv-1183 (E.D. La.), ECF Nos. 31, 32; *W&T Offshore, Inc. v. United States Dep't of Interior, et al*, Case No. 2:17-cv-7102, ECF Nos. 66, 67; *Oak Super Discounts, Inc. v. United States of America*, Case No. 2:14-cv-2470 (E.D. La.), ECF Nos. 13, 15; *see also, e.g.*, *Blanchard*, 2004 WL 737485, at *10; *Lee v. Aramark Facility Servs.*, LLC, No. CV 20-2049, 2021 WL 6070239, at *1 (E.D. La. June 9, 2021); *Reddick v. Medtronic, Inc.*, No. CV 18-8568, 2019 WL 8888173, at *1 (E.D. La. Apr. 2, 2019); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, No. CIV. A. 97-3012, 1998 WL 186728, at *2 (E.D. La. Apr. 17, 1998).

[9] Judicial review in an APA case such as this one is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Saunders*, 430 U.S. 99 (1977); *see also, e.g.*, *Luminant Generation Co. v. U.S. E.P.A.*, 675 F.3d 917, 925 (5th Cir. 2012).

over commercially sensitive statistics); *Mitchell v. Metro. Life Ins. Co.*, No. 03 CIV.10294 (WHP), 2004 WL 2439704, at *2 (S.D.N.Y. Nov. 2, 2004) (granting protective order over "internal financial analyses, business plans and other sensitive company information" that could be valuable to company's competitor); *Lepage's Inc. v. 3M*, No. CIV.A. 97-3983, 1997 WL 736866, at *1 (E.D. Pa. Nov. 19, 1997) ("A showing that materials are trade secrets or other confidential business information and would provide competitive advantage to third parties thereby resulting in particularized harm upon disclosure does demonstrate 'good cause.'"). These fundamental principles extend to cases where, as here, what is at issue is confidential data the government obtains from its contractors, *see, e.g.*, *United States v. Chromatex, Inc.*, No. CIV. 91-1501, 2010 WL 2696759, at *2, *6–*8 (M.D. Pa. July 6, 2010) (protective order granted as to confidential business information provided to EPA by its contractors, which, if released, could cause them competitive harm), and where, as here, the parties' dispute arises in the context of the government's compilation of the administrative record, *see, e.g.*, *Silverton Mountain Guides LLC v. U.S. Forest Serv.*, No. 3:22-CV-00048-HRH, 2022 WL 16553223, at *12–*14 (D. Alaska Oct. 31, 2022) (protective order granted concerning confidential company business information in agency administrative record, which, if released, could create competitive disadvantages for company).

The D.C. Circuit has held that agencies are not even required to produce at all sensitive, confidential information considered by agency decisionmakers as part of their administrative records. *See, e.g.*, *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 13–15 (D.C. Cir. 1998). Here, despite not being obligated to produce the confidential business information at issue as part of the record, Defendants are nonetheless seeking to do so—in the interest of as full transparency as possible under the circumstances—in a manner that ensures the information is protected from third-party exploitation through entry of an appropriate protective order.

Plaintiffs have not identified any reason why the Court should not enter Defendants' standard proposed protective order, as judges have done in countless other cases. *See supra* at 9 n.8. Based on

the parties' meet and confer, Defendants understand Plaintiffs' primary position to simply be that Defendants are not entitled to a protective order because of Plaintiffs' allegation that Risk Rating 2.0 violated the APA because the agency did not undertake notice and comment. Defendants have contested Plaintiffs' allegation, *see* Defs' Mem. in Opp. to Pls.' Mot. for Prelim. Inj. 29–33, ECF No. 56, and the Court has not yet determined the validity of any of Plaintiffs' APA claims, *see* Op. 47. Regardless, Plaintiffs' argument is a *merits* argument, not an argument relevant to the propriety of a protective order enabling production of the administrative record on which the merits will be decided. The operative question is merely whether good cause exists to protect confidential business information. Good cause exists. "The possibility that [Defendants] may be required to disclose confidential commercial information" as part of the administrative record "is real"; Plaintiffs have repeatedly insisted on obtaining all Risk Rating 2.0 data. *Reddick*, 2019 WL 8888173, at *2. And "without a limit on disclosure, nothing would prevent information from being shared with [the competitors' of FEMA's vendors]. Allowing the use of such documents in this litigation while limiting their public disclosure is the purpose of the proposed protective order." *Id.*

Based on the parties' meet and confer, Defendants understand that Plaintiffs' position is also that the public is legally entitled to all Risk Rating 2.0 information, including third-party confidential information, and that FEMA cannot circumvent this entitlement because it chose to contract with outside entities. But, as discussed, that is not the law. FEMA is not required to publicly disclose confidential information, regardless of its source. *See MD Pharm.*, 133 F.3d at 13–15; *Chromatex*, 2010 WL 2696759, at *2, *6–*8. Plaintiffs' contrary position requires invalidating an entire body of case law that protects from public disclosure third-party confidential commercial information, obtained by the government from its contractors and other sources, under the Freedom of Information Act. *See, e.g.*, *Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1055–58 (D.C. Cir. 2023).

Plaintiffs' concern with public access is, at best, premature. Concerns regarding public access

to materials have legal salience only "once those materials are filed with the court." *Roberts v. Prudential Ins. Co. of Am.*, No. 12-CV-1085-L DHB, 2013 WL 1431725, at *4 (S.D. Cal. Apr. 9, 2013) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134–35 (9th Cir. 2003)). Prior to this point, Plaintiffs will have the opportunity to challenge any confidentiality designations that they dispute, per the terms of Defendants' proposed protective order. *See Reddick*, 2019 WL 8888173, at *2 (granting similar protective order, including because, "[c]ritically, plaintiff will not be harmed by the entry of this order. The proposed protective order provides a method by which the plaintiff can challenge . . . designations"); *Blanchard*, 2004 WL 737485, at *10 (noting, in granting protective order, that it was "simply postponing, rather than eliminating the need for close scrutiny of particular . . . materials to determine whether any classification is justified under the circumstances"). And should they wish to file with the Court any designated materials, the terms of the protective order do not bar Plaintiffs from doing so. They simply require the parties to follow the Court's Local Rule 5.6. *Cf. Roberts*, 2013 WL 1431725, at *4 (similarly granting protective order where "the issuance of a protective order d[id] not necessarily imply that documents subsequently *filed* with the Court should be protected from public disclosure").

Finally, Plaintiffs offer no reason why Defendants' standard protective order proposal harms them in any way. They have not suggested that they have any need to use or disclose confidential business information in a way that would be prohibited by Defendants' proposal.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court enter the attached proposed protective order.

Dated: July 26, 2024                          Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General
                                              Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA
(CA Bar # 332179)
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-3080
Fax: (202) 616-8460
E-mail: yoseph.t.desta@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF CONFERENCE

I certify, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, that I have conferred with Plaintiffs' counsel "in an effort to resolve the dispute without court action." The parties met and conferred via emails exchanged between June 26, 2024, and July 16, 2024, and held a teleconference at 4:00 p.m. EST on July 22, 2024 for approximately 20 minutes. I along with Benjamin Takemoto, my colleague on this case, attended for Defendants, and Morgan Brungard and Katie S. Lane attended for Plaintiffs. During their call, the parties discussed Defendants' proposed protective order. The parties were able to agree to a protective order for personally identifiable information in the administrative record but were unable to agree to a protective order for confidential information in the record, necessitating this motion.

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA
Trial Attorney
United States Department of Justice