## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.,* | CIVIL ACTION NO.<br>2:23-CV-01839-DJP-JVM |
| Plaintiff, | |
| v. | JUDGE DARREL PAPILLION |
| DEPARTMENT OF HOMELAND<br>SECURITY, *et al.,* | MAGISTRATE JUDGE EVA J.<br>DOSSIER |
| Defendants. | |

## OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants ask the Court for a protective order to limit disclosure of two categories of information that they intend to produce as part of the administrative record: (1) personal identifying information (PII) and (2) "trade secrets" and "confidential business information." ECF No. 119-1 at 1, 6.

Plaintiffs do not oppose protecting disclosure of PII—and, in fact, Plaintiffs are surprised that Defendants have asked the Court to limit the disclosure of that information. Plaintiffs communicated their general agreement with protecting PII to Defendants, believed that the parties had agreed to negotiate a protective order for PII, and were anticipating a draft from Defendants. The Court should leave the PII portion for the parties to negotiate.

As for what Defendants seek to protect as business information, Congress mandated the public disclosure of that information, and the proposed protective order violates that mandate. *See* 42 U.S.C. § 4020.

1

## BACKGROUND

Plaintiffs sued Defendants for wiping away the previous rating methodology for the National Flood Insurance Program (NFIP) and replacing it with an entirely new methodology that they refuse to show anyone. *See* ECF No. 1. The new methodology, which Defendants call Risk Rating 2.0—Equity in Action, has devastated policyholders, especially in Louisiana. *Id.* This Court denied Defendants' motion to dismiss on all but one count and denied Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs are suffering irreparably harm as we speak and allowing the case to proceed to summary judgment. *See* ECF No. 100. As a result, Defendants were supposed to produce the administrative record on July 26, 2024, but the Court stayed that date pending resolution of this motion, pursuant to the parties' joint scheduling motion. *See* ECF No. 120.

Defendants ask the Court to grant a protective order prohibiting Plaintiffs from sharing or disclosing information in the administrative record that they say is "confidential propriety information" belonging to "third-party vendors" with whom FEMA contracted to create "catastrophe modeling." ECF No. 119-2, ¶ 6. That information includes "model output, locational-level expected loss estimates, event loss tables detailing estimated losses," and "details [about] how each model was developed." *Id.* Those "models were run by FEMA and the output was provided to Milliman to create the rating plan," *id.*, ¶ 6, that is irreparably harming Plaintiffs (and their constituents). The new methodology's skyrocketing rates devalue Plaintiffs' and their constituents' properties, which in turn shrinks Plaintiffs' tax base

from which they fund their police powers. *See* ECF No.1, ¶¶24–28, 182–97, 214–22, 251, 308, 564–67; ECF No. 88 at 97:6-98:7.

Defendants primarily argue that they are entitled to a protective order because they contracted with four large corporations—CoreLogic, KatRisk, Verisk, and Milliman—to excuse themselves from their statutory obligations to make that information public under the National Flood Insurance Act and the Administrative Procedures Act (APA) as well as from the ordinary rules of discovery. ECF No. 119-1 at 8.

## ARGUMENT

### I.    RULE 26 DOES NOT APPLY TO THIS CASE YET.

Federal Rule of Civil Procedure 26 allows "[a] party or any person from whom discovery is sought [to] move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). Under that Rule, Defendants have moved for a protective order to limit disclosure of two categories of information that they intend to produce as part of the administrative record: (1) PII and (2) "trade secrets" and "confidential business information." ECF No. 119-1 at 1, 6.

As an initial matter, Defendants have moved for a protective order only under Rule 26 and so have forfeited any other arguments in favor of a protective order. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived."); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) ("[W]hen a party raises new arguments or evidence for the first time in a reply, the district court must either give

3

the other party an opportunity to respond or decline to rely on the new arguments and evidence.").

In all events, the administrative record is not a discovery material, and Defendants are not a party "from whom discovery is sought." Fed. R. Civ. P. 26(c)(1). Rule 26 provides the "General Provisions Governing Discovery." Fed. R. Civ. P. 26 (capitalization altered). Those provisions do not apply in an APA case like this one unless an exception to the record rule applies. That has been Defendants position all along. *See* ECF No. 34-1 at 3–4 ("Plaintiffs' declarations . . . were not before FEMA when it developed Risk Rating 2.0, and are therefore irrelevant . . . ."); ECF No. 81 at 8 ("Plaintiffs . . . impermissibly cite extra-record sources . . . ."); ECF No. 56 at 12 ("As an initial matter, the Court cannot consider these [extra-record] materials . . . ."). Defendants have not explained how or why they can silently flip positions and carve out for themselves the benefit of one Rule 26 provision while blocking all other applications of that Rule.

The APA commands that "the [C]ourt shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2)(F); *accord SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). That language—called "the record rule," *Texas v. Biden*, 20 F.4th 928, 965 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded on other grounds*, 597 U.S. 785 (2022)—"is addressed to the 'court' and limits [the court's] 'review,'" *Santos-Zacaria v. Garland*, 598 U.S. 411, 420 (2023) (citing 5 U.S.C. § 706).

Contrast the court-focused language of Section 706 with the party-focused language of Rule 26(c): "[a] *party* . . . from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1) (emphasis added). Such party-focused rules "speak[] to a party's procedural obligations," not to limits on judicial review. *Santos-Zacaria,* 598 U.S. at 420 (contrasting a court-focused provision with one that was not "focused solely on the court" because it required "the alien" to take action (emphasis omitted)).

Under the APA's record rule, a court reviewing an agency action ordinarily "[can]not review evidence outside of the administrative record." *Indep. Turtle Farmers of La. Inc. v. United States*, 703 F.Supp.2d 604, 610 (W.D. La. 2010) (citing *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 n.8 (5th Cir. 1988)). "[T]he general presumption [is] that review is limited to the record compiled by the agency." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010); *accord Fla. Power & Light v. Lorion,* 470 U.S. 729, 743–44 (1985).

The "whole record" means "the 'full' administrative record that was before the agency at the time of the decision." *City of Dallas v. Hall*, No. 3:07–CV–0213–P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)); *accord Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). "A complete administrative record . . . 'include[s] all materials that "might have influenced the agency's decision," and not merely those upon which the agency relied in its final decision.'" *La Union del Pueblo Entero v.*

*FEMA*, 141 F. Supp. 3d 681, 693 (S.D. Tex. 2015) (quoting *Hall*, 2007 WL 3257188, at *4).

Of course, as Plaintiffs previously explained, there are many, many exceptions to the record rule that trigger discovery under Rule 26. *See* ECF No. 86. But the general rule for evidence that goes to the merits of an APA claim is that plaintiffs must show they are entitled to extra-record discovery under Rule 26. *See* Order, ECF No. 1 n.1 ("While many of the legal issues must be decided based on the administrative record, other issues, such as Plaintiffs' constitutional standing, for example, may need to be supported by extra-record evidence."). Unless one of those exceptions applies, courts decide APA claims without discovery and "on the basis of the record before the agency at the time it made its decision." *Louisiana ex rel. Guste v. Verity*, 853 F.2d at 327 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983)).

So how does "the record that was before the agency at the time it made its decision," *id.*, get to the court? Through a process unique to APA cases that has nothing to do with discovery (at least not in the first instance). The agency "designate[s]" the administrative record, and "[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 40 (10th Cir. 1993). That process operates independently of Rule 26.

One exception to the record rule that triggers Rule 26 is when an agency fails to include all materials in the administrative record that "should have properly been

included" but were not because of "clerical error[s]" or other reasons. *La Union del Pueblo Entero*, 141 F. Supp. 3d at 694 (alterations in original) (quoting *Gulf Coast Rod Reel & Gun Club v. U.S. Army Corps. of Eng'rs*, No. 3:13–CV–126, 2015 WL 1883522, at *5–6 (S.D. Tex. Apr. 20, 2015) (Costa, J.)). "When a showing is made that the [administrative] record may not be complete, limited discovery [under Rule 26] is appropriate to resolve that question." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993).

Different from discovery of evidence that should have been in the administrative record from the beginning is the discovery of "evidence not considered by the agency." *Gulf Coast Rod Reel & Gun Club,* 2015 WL 1883522, at *1. This is called "extra-record discovery," *La Union del Pueblo Entero*, 141 F. Supp. 3d at 695, and it is where many exceptions to the record rule arise, *see Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

These APA-specific rules make clear that Rule 26's "General Provisions Governing Discovery," Fed. R. Civ. P. 26 (capitalization altered), apply in APA cases only when there is an exception to the record rule. Absent such an exception, Rule 26 does not apply—that is the record rule. And so, it matters not whether Defendants have "good cause" under Rule 26(c)(1) (they don't, *see infra* Section II) for seeking a protective order. Rule 26's "General Provisions Governing Discovery" simply do not apply to this case *yet*. *See Ensco Offshore Co. v. Salazar*, 2010 WL 11538697, at *1 (E.D. La. Sept. 16, 2010) (granting Rule 26(c) protective order where plaintiffs showed

administrative record was incomplete); *Silverton Mountain Guides LLC v. U.S. Forest Serv.*, 2022 WL 16553223, at *3 (D. Alaska Oct. 31, 2022) (same).

To be sure, Rule 26 "exempt[s] from initial disclosure . . . an action for review on an administrative record." Fed. R. Civ. P. 26(1)(B). And so the argument goes that, because Rule 26(c)(1) does not include a similar exemption for protective orders, Rule(c)(1) must apply in APA cases. Wrong. The Notes to Rule 26(1)(B) make clear that "[t]he exclusion of an action for review on an administrative record [from initial disclosures] is intended to reach a proceeding that is framed as an 'appeal' based solely on an administrative record." Committee Notes on Rules—2000 Amendment. The Notes go on: "The exclusion should not apply to a proceeding in a form that commonly permits admission of new evidence to supplement the record."

For one, an APA case is not an "an 'appeal' based solely on an administrative record." *id.* That description indicates an agency adjudication before an ALJ (like social security disability benefits and the like) that is later appealed to a federal district court.

For another, APA cases commonly permit admission of new evidence to supplement the record, not on the merits under the record rule, but on issues like standing and preliminary injunctive relief (which is often needed before the administrative record has been compiled). *See* Order, ECF No. 1 n.1 ("[I]issues, such as Plaintiffs' constitutional standing, for example, may need to be supported by extra-record evidence."); *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, 2024 WL 3517504, at *16 (N.D. Tex. July 23, 2024) ("[C]onsideration of extra-record

evidence is appropriate to evaluate standing. . . Likewise, 'the record rule also does not limit the evidence this Court can consider when determining the propriety of injunctive relief.'" (quoting *Texas v. Biden*, 2:21-cv-00067-Z, 2021 WL 4552547, at *3 (N.D. Tex. July 19, 2021) and citing *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-cv-00007, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) (Tipton, J.))).

In sum, Plaintiffs' position always has been that, in addition to standing and preliminary injunctive relief, the merits of their claims qualify for an exception to the record rule and that they would seek merits discovery under Rule 26 at the appropriate time. Defendants, however, have strenuously objected, asserting absolute application of the record rule (and so zero applications of Rule 26) even at the pleading and preliminary-injunction stages. *See supra* at 4. And yet, they now seek the benefit of Rule 26's protective-order provision without acknowledging their flipped position or explaining why they can invoke one of Rule 26's "General Provisions Governing Discovery" while Plaintiffs can invoke none. That cannot possibly be right.

## II.   IF RULE 26 APPLIES, DEFENDANTS FAIL TO SHOW GOOD CAUSE FOR A PROTECTIVE ORDER.

The Federal Rules presumptively disfavor restrictions on discovery like the protective order that Defendants seek here. Under the Federal Rules, "discovery material is presumptively public." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 426 (9th Cir. 2011). "A party may generally do what it wants with material obtained through the discovery process . . . ." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir. 1985).

Rule 26(c) creates a small exception to that presumption of public access. Rule 26(c) allows—but does not require—a court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including to limit "trade secret" or "commercial" information. *See* Fed. R. Civ. P. 26(c)(1). Under this Rule, "[t]he burden is upon the movant to show the necessity" of the protective order. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). The movant satisfies that burden by making "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.*

Defendants cannot show "good cause" to obtain a protective order here because Congress has required them to publicly disclose the materials that they seek to protect. In 42 U.S.C. § 4020, Congress gave the public a right to the precise information that Defendants want to keep from the public. Section 4020 requires the FEMA "Administrator . . . from time to time . . . to make information and data available to the public and to any State or local agency or official" that shows "the basis for . . . chargeable flood insurance premium rates." 42 U.S.C. § 4020.

The plain text of Section 4020 requires disclosure of the material that Defendants seek to protect here. *Id.* Defendants want a protective order to shield the methodology they use for calculating flood insurance rates. They seek to protect the "catastrophe models [that] were run by FEMA" and used "to create the rating plan," which tell the public how their new rates are calculated. ECF No. 119-2 at 6.[1] Because

---

[1] *Accord* ECF No. 119-3 at 3 ("FEMA used its own flood insurance policyholder data as inputs to run its modeling, selected the model analysis options provided by CoreLogic and other vendors, ran

this material is "information and data" that provides "the basis for . . . chargeable flood insurance premium rates," FEMA is required to "make" that "information and data available to the public and to any State or local agency or official," many of whom are Plaintiffs here. *Id.* A protective order forbidding Plaintiffs from sharing the information with the public or other state and local agencies or officials violates Section 4020.

Courts regularly read similar statutory provisions to mandate disclosure of covered information. *See, e.g.*, *Animal Legal Def. Fund v. Dep't of Agric.*, 935 F.3d 858, 876 (9th Cir. 2019); *United States v. Hashimoto*, 878 F.2d 1126, 1130 (9th Cir. 1989). The case for doing so is especially strong under Section 4020, which makes disclosure mandatory by using the word "shall." *See Velasquez-Castillo v. Garland*, 91 F.4th 358, 363 n.3 (5th Cir. 2024). Nothing in Rule 26(c) can overcome that statutory duty because "the Federal Rules presumptively apply *except to the extent that they actually conflict with a subsequent statute.*" *United States v. Melrose E. Subdivision*, 357 F.3d 493, 505 n.12 (5th Cir. 2004) (emphasis added).

For their part, Defendants primarily contend that they are entitled to a protective order because their written contracts with private parties require it. They say: "Disclosure of the confidential proprietary data would violate FEMA's *agreements with the vendors.*" ECF No. 119-2 ¶ 8 (emphasis added). Plaintiffs do not

---

the models, and generated flood loss estimates"); *id.* at 20 ("KatRisk provided catastrophe modeling data and software to FEMA, and FEMA in turn provided model results and portions of model data to Milliman, which was used in FEMA's Risk Rating 2.0"); *id.* at 31 ("When licensees like FEMA input their flood insurance policyholder data and run our flood model, the software produces estimates of the annual expected losses."); *id.* at 43 ("The CoreLogic, KatRisk, and Verisk catastrophe models were run by FEMA and the output was provided to Milliman to create the rating plan").

dispute the terms of Defendants' third-party contracts, but those contracts are legally irrelevant. Section 4020 is a federal statute passed by Congress; private parties and executive agencies may not nullify it by agreement. It is elementary that "a provision in a government contract that violates or conflicts with a federal statute is invalid or void." *Burnside–Ott Aviation Training Ctr. v. Dalton,* 107 F.3d 854, 858 (Fed. Cir. 1997); *accord Reno Hilton Resorts v. NLRB,* 196 F.3d 1275, 1281 (D.C. Cir. 1999). All of Defendants' arguments about the terms of their contracts with the vendors—the "agreements that restrict users [here FEMA] from publicly disclosing technical outputs," ECF No. 119-1 at 8—are therefore beside the point. It was the vendors' counsels' responsibility to determine whether their contracts complied with Section 4020 before entering them, and their failure to do so cannot nullify Congress' demands.

Congress knows how to protect trade secrets. *See Serono Lab'ys, Inc. v. Shalala*, 35 F. Supp. 2d 1, 2 (D.D.C. 1999) (explaining FDA's "statutory obligation to protect these trade secrets"); *MD Pharm., Inc. v. Drug Enf't Admin.*, 133 F.3d 8, 13–14 (D.C. Cir. 1998) (explaining absence of "authority in the statute or the regulations that would" entitle one party to see another's "confidential or trade secret information"); 19 U.S.C. § 1677f(c)(1)(A) (requiring agency in antidumping proceedings to "make all business proprietary information presented to, or obtained by it . . . available to interested parties . . . under a protective order"). And it expressly has done the opposite here. *See* 42 U.S.C. § 4020. A private contract cannot undo Congress' command.

Defendants are wrong that Plaintiffs' position "requires invalidating an entire body of case law that protects from public disclosure third-party confidential commercial information, obtained by the government from its contractors and other sources, under the Freedom of Information Act." ECF No. 119-1 at 11. Plaintiffs do not seek the information under FOIA, so FOIA's exceptions (and the referenced "body of case law" applying them) are not implicated in the first place. *See Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1055 (D.C. Cir. 2023) (FAA withheld or redacted FOIA-requested documents "based on FOIA Exemption 4, which protects 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.'"). Section 4020 governs here and includes no parallel exception for confidential commercial information.

Nor is it relevant whether Section 4020 is also the basis for one of Plaintiffs' merits claims. *Cf.* ECF No. 119-1 at 10–11. Although Defendants already should have disclosed the information to the public, and Plaintiffs expect that this litigation will result in an order compelling them to do so, Defendants' abdication of duty is even more unlawful in the face of their APA obligation to present "the record before [FEMA] at the time it made its decision [to adopt Risk Rating 2.0]." *Louisiana ex rel. Guste v. Verity*, 853 F.2d at 327 (citing *State Farm*, 463 U.S. at 51); *see also* 5 U.S.C § 706(2)(F).[2] Of course the third-party models that FEMA "ran" to "generate[] flood

---

[2] Defendants also contend that Plaintiffs should wait to challenge this protective order until after the production of the disputed materials. *See* ECF No. 119-1 at 12 ("Plaintiffs will have the opportunity to challenge any confidentiality designations that they dispute, per the terms of Defendants' proposed protective order."). In the event the Court agrees, Plaintiffs respectfully preserve their right to bring such a challenge after production. Plaintiffs also respectfully preserve their right to object to any attempt by Defendants to have information subject to the protective order filed under seal.

loss estimates" were before FEMA when it decided to adopt Risk Rating 2.0. ECF No. 119-3 at 3

It is crucial that Plaintiffs be able to share the information that Defendants seek to protect. *Cf.* ECF No. 119-1 at 12. FEMA used to share the data underlying its rates with the public but now refuses to under Risk Rating 2.0. *See* ECF No. 1 (Compl.) at ¶¶ 80–83. Defendants' refusal to share that data has left policymakers at the State and parish/county levels (who enacted FEMA's desired land-use regulations in exchange for lower rates for their constituents) and policyholders (including the parish plaintiffs) in the dark about how to qualify for lower rates and therefore how to avoid losing their property, homes, and livelihoods. *See* ECF No. 1 ¶¶ 24–28, 182–97, 214–22, 251, 308, 564–67. FEMA is charging policyholders inexplicably high rates while at the same time denying them the right to know what steps they may take to mitigate those rates, *see id.*, and denying them the right Congress gave them to know "the basis" for those rates, 42 U.S.C. § 4020. Defendants should not be allowed to flout Congress's demands for transparency and exploit policyholders in the name of protecting their corporate contractors.[3]

## CONCLUSION

For these reasons, the Court should deny Defendants' motion for a protective order. The Court should deny the proposed order's coverage of "information that reveals trade secrets" and "research, technical, commercial, or financial information

---

[3] If the Court were to grant Defendants' protective order, Plaintiffs respectfully request that it clarify that the "parties" who have a right to view the covered materials, *see* ECF No. 119-5 at 3, include parties dismissed for lack of standing, which retain their right to appeal that dismissal upon the final resolution of this case.

that the party has maintained as confidential." *See* ECF No. 119-5 at 1. The Court should also deny the proposed order as it relates to PII so that the parties can negotiate a proposed order protecting PII as they were in the process of doing. Indeed, were the Court inclined to grant a protective order of any type, Plaintiffs would ask that the Court order the parties to negotiate the language of that protective order rather than adopt Defendants' proposed order. Each of the ten State Plaintiffs here has different public records obligations under its respective state laws (for a total of ten different state public records regimes) that Defendants' proposed order does not take into account.

Dated: August 19, 2024                     Respectfully submitted,

                                            Elizabeth Murrill
                                            Attorney General of Louisiana

                                            */s/ Morgan Brungard*
                                            Morgan Brungard (La #40298)
                                              Deputy Solicitor General
                                            Tracy Short (La #23940)
                                              Assistant Chief Deputy Attorney
                                              General
                                            LOUISIANA DEPARTMENT OF
                                            JUSTICE
                                            ATTORNEY GENERAL'S OFFICE
                                            1885 N. 3rd St.
                                            Baton Rouge, LA 70802
                                            (225) 326-6705
                                            BrungardM@ag.louisiana.gov
                                            ShortT@ag.louisiana.gov

                                            *Counsel for the State of Louisiana and*
                                            *Plaintiff Parishes*

AUSTIN KNUDSEN
  Attorney General
CHRISTIAN B. CORRIGAN
  Solicitor General
PETER M. TORSTENSEN, JR.
  Deputy Solicitor General
Montana Department of Justice
P.O. Box 201401
Helena, MT 59620-1401
Phone: (406) 444-2026
Christian.Corrigan@mt.gov
Peter.Torstensen.@mt.gov

*Counsel for the State of Montana*


DREW H. WRIGLEY
  Attorney General
PHILIP AXT (ND Bar No. 09585)
  Solicitor General
North Dakota Attorney General's Office
600 E Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for the State of North Dakota*


ALAN WILSON
  South Carolina Attorney General
J. EMORY SMITH, JR.
  Deputy Solicitor General
THOMAS T. HYDRICK
  Assistant Deputy Solicitor General
JOSEPH D. SPATE
  Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*


ASHLEY MOODY
  Attorney General
JAMES H. PERCIVAL
  Chief of Staff
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the State of Florida*


RAÚL LABRADOR
  Attorney General
THEODORE J. WOLD
  Solicitor General
OFFICE OF THE IDAHO ATTORNEY
GENERAL
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 999-0910
Email: Theodore.Wold@ag.idaho.gov

*Counsel for State of Idaho*


RUSSELL COLEMAN
  Attorney General of Kentucky
LINDSEY KEISER
  Assistant Attorney General
Kentucky Office of the Attorney
General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Tel: (502) 696-5517

*Counsel for the Commonwealth of Kentucky*

16

KEN PAXTON
  Attorney General
RALPH MOLINA
  Deputy Attorney General for Legal
  Strategy
RYAN WALTERS
  Division Chief, Special Litigation
  Division
SUSANNA DOKUPIL
  Special Counsel, Special Litigation
  Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711
(512) 463-4139
susanna.dokupil@oag.texas.gov

*Counsel for the State of Texas*


JASON S. MIYARES
  Attorney General
KEVIN M. GALLAGHER
  Principal Deputy Solicitor General
Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Plaintiff Commonwealth of
Virginia*

LYNN FITCH
  Attorney General
JUSTIN L. MATHENY
  Deputy Solicitor General
OFFICE OF THE MISSISSIPPI
ATTORNEY GENERAL
550 High Street, Suite 1200
Jackson, MS 39201
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*