IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

THE STATE OF LOUISIANA *et al.*,

    *Plaintiffs*,

v.

DEPARTMENT OF HOMELAND
SECURITY *et al.*,

    *Defendants*.

Action No. 2:23-CV-01839-DJP-JVM
Section P
District Judge Darrel J. Papillion
Magistrate Judge Eva J. Dossier

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO ENTER PROTECTIVE ORDER**

# INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion for Protective Order ("Opp'n"), ECF No. 121, fails to explain why the Court should not enter a standard protective order to protect confidential business information in the administrative record in this case.[1] Plaintiffs' two arguments in opposition to such a protective order are spurious. In arguing that Federal Rule of Civil Procedure 26(c) does not provide a procedural basis for entry of a protective order in this Administrative Procedure Act ("APA") case, Plaintiffs ignore established case law in this District and across the country concluding otherwise. And their argument that 42 U.S.C. § 4020 requires public disclosure of the information is a premature merits argument that the Court need not and should not consider to decide this motion—and that, in any event, rests on an erroneous reading of the statutory provision. Accordingly, the Court should enter Defendants' proposed order.

# ARGUMENT

## I. Defendants' Protective Order Motion Is Procedurally Proper

Plaintiffs contend that Federal Rule of Civil Procedure 26(c) does not provide Defendants with a basis to obtain a protective order because this is a case for review under the APA based on an administrative record. *See* Opp'n 3–9 (claiming it is "[w]rong" to believe that "Rule [26](c)(1) must apply in APA cases," *id.* at 8, and that the rule applies only once extra-record discovery is permitted).

But courts regularly apply Rule 26(c) in APA cases to grant agencies protective orders in

---

[1] Plaintiffs informed Defendants during their meet and confer that Plaintiffs did not oppose entry of a protective order to protect personally identifiable information ("PII"). Plaintiffs have now for the first time explained that they oppose entry of Defendants' proposal to enter the District's standard protective order even for PII because each state Plaintiff has different public records obligations under its respective state laws, and because the states therefore wish to negotiate the language of the protective order as it relates to PII. *See* Opp'n 15. Defendants are not opposed to negotiating language; however, for the reasons explained in Defendants' Memorandum in Support of Their Motion for Protective Order at 6–7 ("Mem."), ECF No. 119-1, Defendants can only produce the administrative record, which contains the PII of millions of policyholders interwoven in terabytes of data, with a protective order in place.

circumstances indistinguishable from this case. *See Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 14–15 (D.D.C. 2001) (granting Rule 26(c) protective order over confidential valuation information in administrative record, as the rule permits courts to "limit the manner in which a trade secret or other confidential research, development, or commercial information" in record "may be revealed" (quotation marks omitted)); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520–23 (D.D.C. 2017) (granting Rule 26(c) motion to protect from public disclosure spill-model discussions, including maps of spill scenarios and predictions of oil volume that would be released, in administrative record); *Ensco Offshore Co. v. Salazar*, No. CV 10-1941, 2010 WL 11538697, at *13 (E.D. La. Sept. 16, 2010) (explaining that "commercially sensitive information" in administrative record "can be protected by an appropriate protective order" (citing Fed. R. Civ. P. 26(c)(1)(G))); *Am. Farm Bureau Fed'n v. McCarthy*, No. 13-CV-1751 ADM/TNL, 2015 WL 631341, at *1 (D. Minn. Feb. 6, 2015) (modifying protective order, entered pursuant to Rule 26(c), that allowed for designation of certain farm information and data in administrative record as confidential).

Rule 26(c) provides a basis to shield protected materials in agency administrative records even though, as Plaintiffs observe, the "record is not a discovery material, and Defendants are not a party 'from whom discovery is sought.'" Opp'n 4 (quoting Fed. R. Civ. P. 26(c)(1)). Rule 26(c) serves as a general mechanism for obtaining protective orders across both non-APA cases involving discovery and APA cases involving record review. *See Ridgely v. Fed. Emergency Mgmt. Agency*, No. CIV.A. 07-02146, 2008 WL 2547867, at *3 (E.D. La. June 23, 2008) ("Rule 26(c) governs the issuance of protective orders."). It "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Courts have applied that broad discretion to reject Plaintiffs' precise argument (*see* Opp'n 4)— "that application of Rule 26(c) . . . would be inaposite [because] no party is seeking the discovery of materials outside the administrative record." *Standing Rock Sioux Tribe*, 249 F. Supp. 3d at 520 (rejecting

2

the argument that courts "lack[] the power" under Rule 26(c) to "shield portions of administrative records from public disclosure"); *see also, e.g.*, *Doe v. Mayorkas*, No. CV 20-2521 (JDB), 2021 WL 9036563, at *2 (D.D.C. Feb. 8, 2021) (same).

By contrast, Plaintiffs do not cite any applicable authority to support their position that Defendants have improperly relied on Rule 26(c). Most of Plaintiffs' discussion is irrelevant, drawing on authorities that discuss the APA record review rule and the limited circumstances potentially justifying extra-record discovery, *see* Opp'n 4–9, and that thus have nothing to do with applying Rule 26(c) to protect record material. And the only two cases that Plaintiffs cite regarding Rule 26(c), *Ensco Offshore Co.*, 2010 WL 11538697, at *13, and *Silverton Mountain Guides LLC v. U.S. Forest Serv.*, No. 3:22-cv-00048-HRH, 2022 WL 16553223, at *12–*14 (D. Alaska Oct. 31, 2022),[2] actually undercut their argument. *See* Opp'n 7–8. The courts in both cases entered protective orders under Rule 26(c) to shield confidential business information in administrative records, and the entry of those protective orders did not depend in any way on the courts having found that the "administrative record was incomplete." *Id.* at 8. Rather, the courts entered those orders because, as Rule 26(c) requires, the agencies had demonstrated that the materials in question had sensitive commercial information and thus that good cause existed to protect them.

In seeking a similar Rule 26(c) order, FEMA has simply followed a straightforward and well-trodden path for protecting confidential business information in its administrative record. Plaintiffs therefore have no basis to claim that FEMA has somehow "flipped position" on the application of Rule 26 to this case or inconsistently sought to "benefit" from the rule while blocking Plaintiffs from doing so. Opp'n 9; *see id.* at 4. FEMA has argued and maintains, based on the very authority that Plaintiffs themselves cite, that judicial review is limited to the administrative record, *see id.* at 4, and it

---

[2] *See* Joint Mot. for Entry of Protective Order at 1, ECF No. 30 (relying on Rule 26(c)), *Silverton,* No. 3:22-cv-00048-HRH (D. Alaska Aug. 11, 2022).

3

has argued and maintains that clear case law permits it to protect certain sensitive information in that compiled record from public disclosure, *see supra* at 2–3; Mem. 9–10. Those positions, addressing distinct record questions, are harmonious.[3]

In any event, Rule 26(c) is not the only relevant basis on which the Court may rely. Courts have broad inherent authority to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Lafarge Corp. v. M/V MACEDONIA HELLAS*, No. Civ.-A. 99-2648, 2000 WL 1586402, at *4 (E.D. La. Oct. 23, 2000); *see, e.g.*, *Jones v. Cooper*, No. 6:21-cv-02213-DCC-JDA, 2021 WL 11457417, at *5 (D.S.C. Oct. 21, 2021) (explaining that, "even outside of Rule 26(c), courts retain the inherent authority to enter protective orders in order to control and preserve the integrity of their judicial proceedings" (quotation marks omitted)); *Davis v. United States Army Rsrv. Through 321st Sustainment Brigade*, No. CV 19-305-BAJ-EWD, 2019 WL 5777387, at *1 (M.D. La. Nov. 5, 2019) (similar); *Basic Rsch., LLC v. Bdirect*, No. 2:06-CV-00932 TS, 2008 WL 11513365, at *3 (D. Utah Sept. 22, 2008) (discussing court's inherent authority to modify protective order to protect confidential third-party information). Here, FEMA has relied on the standard protective order used by judges and parties in this District, and Plaintiffs have not provided any valid objection to employing it here.

**II.   Plaintiffs Fail to Rebut Defendants' Showing that Good Cause Supports Entry of the Proposed Protective Order**

FEMA has amply explained that the confidential business information at issue in this case— proprietary actuarial and risk modeling data that FEMA obtained from several third-party vendors

---

[3] Under the Court's scheduling order (ECF No. 117), Plaintiffs will have an opportunity to argue, based on their review of the administrative record, that the record should be completed to constitute the "whole record," 5 U.S.C. § 706, or supplemented under a narrow exception to the record rule, *see Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). These limited bases to expand the record have nothing to do with the discovery contemplated for non-APA cases under Rule 26. Accordingly, FEMA's effort to seek protection of certain existing record material from public disclosure in no way prevents Plaintiffs from moving for record completion or supplementation at the appropriate time; indeed, production of the FEMA-certified record is a prerequisite to any such motion.

assisting with the development of Risk Rating 2.0—is commercial or trade secret information subject to protection under Rule 26(c). Through its opening brief and declarations, FEMA explained in detail how the actuarial and risk modeling data at issue is the vendors' highly sensitive intellectual property, which they safeguard through license agreements and other steps, because the data reveals the unique and proprietary assumptions and data on flood hazards and vulnerability at the heart of the vendors' commercial offerings. *See* Mem. 8 (drawing on accompanying declarations). And FEMA identified several analogous cases where courts found good cause to grant protective orders over similar commercial information. *See id.* at 6, 9–10. Plaintiffs engage with none of this, in effect conceding that the information at issue is confidential business information subject to protection under Rule 26(c). *See, e.g.*, *Jones v. Jefferson Par.*, No. CIV.A. 12-2191, 2013 WL 871539, at *3 (E.D. La. Mar. 8, 2013) (explaining that "failure to brief [an] issue waives any argument [nonmovant] might have in opposition to it"); *McZeal v. J.P. Morgan Chase Bank, NA*, No. CIV.A. 13-6754, 2014 WL 3166715, at *8 n.23 (E.D. La. July 7, 2014) (same and collecting cases). That is dispositive.[4]

---

[4] Plaintiffs appear to suggest that if they sought to obtain this same information under FOIA, FEMA could permissibly withhold it under FOIA Exemption 4. *See* Opp'n 13. But they contend that they "do not seek the information under FOIA, so FOIA's exceptions (and the referenced 'body of case law' applying them) are not implicated in the first place." *Id.* Plaintiffs do not explain why they are entitled to full, unrestricted access in this analogous APA context. *Cf. Dine Citizens Against Ruining Our Env't v. Klein*, No. 07-cv-01475-JLK, 2009 WL 2407653, at *2 n.2 (D. Colo. Aug. 3, 2009) (explaining, in considering the parties' Rule 26(c) cross-motions, that Congress's "express directions in FOIA" regarding the public's right to access federal agency documents and agencies' right to withhold all or some documents is relevant to whether the public should have access to the same documents in an administrative record); *Standing Rock Sioux Tribe*, 249 F. Supp. 3d at 522 (similar, explaining that reliance on FOIA exemption for Rule 26(c) analysis "is permissible even though the question whether to release [documents] did not arise in a FOIA action"); *Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1056 (D.C. Cir. 2023) (applying FOIA Exemption 4 to protect government contractor information that, if disclosed, "would 'undermine [its] competitive position by allowing competitors access to ideas, design details, certification methods, and testing processes'"); *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 187–89 (D.D.C. 2022) (similar); *Allnet Commc'n Servs., Inc. v. FCC*, 800 F. Supp. 984, 986, 988, 990 (D.D.C. 1992) (similar, with respect to modeling information that, if disclosed, would harm contractors' "competitive interests" by revealing "proprietary" and "confidential" "specifications" for computer model that contractors spent millions

Rather than engage with FEMA's showing of good cause, Plaintiffs instead mount an irrelevant merits argument, contending that shielding the proprietary business information from public disclosure "violates Section 4020." Opp'n 11. But as already explained, this argument is an APA *merits* argument, not an argument relevant to the propriety of a protective order that would enable production of the administrative record on which the merits will ultimately be decided. *See* Mem. 11. In spending several pages arguing that § 4020 requires public dissemination of the proprietary information at issue and other data, Plaintiffs in effect ask the Court for a pre-summary judgment adjudication of Count I of their Complaint, in which they allege, as they do now, that FEMA has violated § 4020 by failing to make public certain flood insurance data. *See* Compl. ¶ 564, ECF No. 1; *see also, e.g.*, Mem. in Supp. of Mot. for Prelim. Inj. 16, ECF No. 16-1. That is improper. The Court should once again decline Plaintiffs' invitation to prematurely adjudicate their APA claims and reserve the issue of § 4020's application for summary judgment, where the parties can fully brief this issue and others on the basis of the administrative record (including the disputed portions at issue here).

Even if the Court were to consider Plaintiffs' premature merits argument at this stage, Plaintiffs' § 4020 argument is wrong, as FEMA has already pointed out in opposing Plaintiffs' preliminary injunction motion. *See* Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj. 15–16 ("PI Opp'n"), ECF No. 56. Section 4020 states as follows:

> The Administrator shall from time to time take such action as may be necessary in order to make information and data available to the public, and to any State or local agency or official, with regard to—
>
> (1) the flood insurance program, its coverage and objectives, and
>
> (2) estimated and chargeable flood insurance premium rates, including the basis for and differences between such rates in accordance with the provisions of section 4015 of this title.

---

to develop, received millions to license, and would refrain from licensing to the government in the future were public disclosure to occur, thereby harming effectiveness of government program).

6

As FEMA has already argued, it has more than satisfied its obligations under § 4020, going to great lengths to inform the public about Risk Rating 2.0 objectives, coverage, and rates. *See* PI Opp'n 16. The agency has had over 1,500 engagements with the public, policyholders, federal and local officials, stakeholder groups, industry groups, and insurance companies; it has published numerous press releases, fact sheets, Q&A, data sets, premium calculation worksheets, and other materials on its website and elsewhere to inform the public about Risk Rating 2.0; and it has responded to hundreds of media inquiries from national and local outlets. *See id.* These communications are far more than the "from time to time" communications required under § 4020. *See id.*

Plaintiffs have failed to show that § 4020 requires FEMA to do anything more. Plaintiffs do not identify any basis for requiring FEMA to disclose in the administrative record—without any safeguards—information that is (a) confidential and trade secret, (b) protected by contract, (c) not "regard[ing]" or about "premium rates," 42 U.S.C. § 4020, but is instead underlying actuarial and risk modeling data feeding into the rate calculations; and (d) not even useable by policymakers enacting "land-use regulations," policyholders, or the broader public given its highly technical nature and formatting, Opp'n 14.[5] Nothing in the plain text of § 4020 compels this outcome. The provision focuses simply on ensuring that FEMA takes steps on occasion to provide the public and government officials with access to general information and data about the NFIP and rates under the program, which the agency has done. Plaintiffs will have the opportunity at summary judgment to argue

---

[5] FEMA has already publicly explained how the risk modeling operates in Risk Rating 2.0, in a manner understandable to the public and government officials. It has published on its website a report on the Risk Rating 2.0 methodology and data sources, which includes detailed information on the risk modeling. *See* FEMA, *National Flood Insurance Program: Risk Rating 2.0 Methodology and Data Sources* (Jan. 18, 2022), https://www.fema.gov/sites/default/files/ documents/ FEMA_Risk-Rating-2.0_ Methodology-and-Data-Appendix__01-22.pdf. And it has also published on its website Excel worksheets showing how various input data (*e.g.*, distance to river, foundation height, etc.) ultimately flowed through the risk modeling analysis and led to premium rates in Risk Rating 2.0. *See* FEMA, *Premium Calculation Worksheet Examples*, https://www.fema.gov/sites/default/files/documents/fema_risk-rating_PCW_Rating_Examples.xlsx.

otherwise, but their premature arguments on this score now do not provide them any basis to resist entry of a standard protective order to protect certain sensitive record information from third-party disclosure.

Finally, Plaintiffs fail to demonstrate that any prejudice will result in this case if the Court enters Defendants' proposed protective order. Plaintiffs have not suggested that Defendants' proposal prohibits them from using or disclosing the confidential business information in any way necessary to litigate their challenge to Risk Rating 2.0. *Cf. Reddick v. Medtronic, Inc.*, No. CV 18-8568, 2019 WL 8888173, at *2 (E.D. La. Apr. 2, 2019) (granting protective order where plaintiff "w[ould] not be harmed by the entry of th[e] order," as it simply "[a]llow[ed] use of [the] documents in th[e] litigation while limiting their public disclosure"). Rather, Plaintiffs argue only that policyholders and policymakers need the data in question and are entitled to it under § 4020. *See* Opp'n 14. That is not only a premature and erroneous merits argument; it is also a premature public access concern. Issues of public access have legal salience only "once those materials are filed with the court," *Roberts v. Prudential Ins. Co. of Am.*, No. 12-CV-1085-L DHB, 2013 WL 1431725, at *4 (S.D. Cal. Apr. 9, 2013); *see* Mem. 12, not at this preliminary stage regarding entry of a standard protective order.[6]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court enter their proposed protective order.

---

[6] Plaintiffs request that the parties dismissed for lack of standing be permitted access to the record materials covered by Defendants' proposed protective order. *See* Opp'n 14 n.3. Defendants disagree. If the parties dismissed for standing appeal, and if the Court of Appeals determines that they are proper plaintiffs, contrary to the conclusion of this Court, it is only at that point that these parties should get access to the confidential business information in question. A contrary result would encourage parties without standing to file lawsuits simply to obtain sensitive records.

Dated: August 23, 2024                                            Respectfully submitted,

                                                     BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Yoseph T. Desta*
YOSEPH T. DESTA
(CA Bar # 332179)
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-3080
Fax: (202) 616-8460
E-mail: yoseph.t.desta@usdoj.gov

*Attorneys for Defendants*