**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | CIVIL ACTION NO.<br>2:23-CV-01839-DJP-JVM<br><br>JUDGE DARREL PAPILLON<br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD |

## <u>MEMORANDUM IN SUPPORT OF</u>
### <u>PLAINTIFFS' MOTION FOR RECONSIDERATION</u>

1

Plaintiffs respectfully move this Court to reconsider its order dismissing without prejudice several Plaintiffs for lack of standing. ECF 100 at 30, 41. This Court previously held that the States and St. Tammany, Livingston, and Washington Parishes all had standing to sustain this action. ECF 100 at 25–35. It dismissed all other Plaintiffs. ECF 100 at 41. Plaintiffs respectfully ask the Court to reinstate all original Plaintiffs or at least seven of the dismissed Parishes.

Under the Federal Rules of Civil Procedure, a court's order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *see also McClung v. Gautreaux*, 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011) ("Yet, because the district court is faced on with an interlocutory order, it is free to reconsider its ruling 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'").

The Court should reconsider its dismissal holding for two reasons. First, in cases like this one where all plaintiffs seek identical relief, the rule is that only one plaintiff needs to have standing to satisfy Article III. *See Book People, Inc. v. Wong*, 91 F.4th 318, 329 (5th Cir. 2024) ("The presence of any one plaintiff with standing to pursue injunctive relief satisfies Article III's case-or-controversy requirement." (cleaned up)); *Louisiana v. United States Dep't of Energy*, 90 F.4th 461, 467 (5th Cir.

2024) ("When there are multiple plaintiffs, at least *one plaintiff* must have standing to seek each form of relief requested." (brackets omitted) (quoting *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017))). Because that rule is satisfied here, ECF 100 at 25–35, the Court should allow all original Plaintiffs to continue in the suit.

Second, and alternatively, the Court should reinstate at least seven of the dismissed parishes because they held NFIP policies at the time they filed suit (and continue to hold them). *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (standing "'must exist at the commencement of the litigation'" (citation omitted)). The Court's holding as to St. Tammany, Livingston, and Washington Parishes articulates a sound basis for finding injury in fact—and it applies beyond those few parishes. A policy whose premiums are increasing because of Risk Rating 2.0 provides a sufficient injury in fact to plaintiff parishes, and many more plaintiff parishes beyond St. Tammany, Livingston, and Washington Parishes hold policies whose premiums increased due to Risk Rating 2.0.

As demonstrated in the attached declarations, at least seven dismissed plaintiff parishes hold NFIP policies whose premiums have increased since the implementation of Risk Rating 2.0's premium methodology.

Jefferson Parish has held between 105 and 127 NFIP policies over the past 10 years. Ex. 1. From 2024 to 2025, the Parish went from 127 flood policies totaling $546,993 in premiums to 126 flood policies totaling $588,482. *Id.* This was a year over

3

year increase of 7.58%. *Id.* Before Equity in Action, between 2015 and 2020, the Parish saw an average premium *decrease* year over year of 2.35%. *Id.*

Terrebonne Parish has held NFIP insurance policies continuously on five parish properties since at least 2020. In 2022, those policies totaled $19,594 in premiums. Ex. 2. In 2025, those same flood policies totaled $29,834. *Id.* This represented an average year-over-year increase of 14.7%. *Id.*

Vermilion Parish currently holds NFIP policies on two Parish properties. Ex. 3. One of those policies had a premium of $3097 in October 2021, $4957 through October 2026, and its policy documentation shows a full-risk premium of $8547. *Id.* The other policy had a premium of $2404 in October 2021, $3807 through October 2026, and its policy documentation shows a full-risk premium of $4697. *Id.*

Tangipahoa Parish holds two properties with NFIP insurance policies. Ex. 4. Since Risk Rating 2.0 was implemented, the premiums on one property have increased from $2340 in 2022 to $2852 in 2025. *Id.* The premium on the other property has increased from $4635 in 2022 to $6035 in 2025. *Id.* The Parish's policy shows that this property has not yet reached its full-risk premium, which is $7613. *Id.* Prior to Risk Rating 2.0, these properties saw more modest premium increases, such as $45 for the second property in 2020 and $115 in 2021. *Id.*

Plaquemines Parish currently holds NFIP policies on 99 Parish properties. Ex. 5. When those policies were most recently renewed, the total premiums on those properties increased from $552,455 to $620,481. *Id.* This represents an average premium increase of 14% across all Parish properties. *Id.*

St. Charles Parish held NFIP policies on 25 Parish properties as of 2025. Ex. 6. The premiums on those policies totaled $78,965 in 2021 but had reached $83,797 by 2025. *Id.* As a result of these premium increases, the Parish has decided to drop NFIP flood insurance coverage for all but nine of these properties in 2025–26. *Id.*

Lafourche Parish currently holds NFIP insurance policies on two Parish properties. Ex. 7. In 2023, a Parish library branch had an annual NFIP premium of $2580. *Id.* For the period between June of 2025 and June 2026, that same property had an annual premium of $3592. Ex. A at 2. The Parish's policy documentation reflects that this premium will rise to a full-risk premium of $7567. *Id.* As of 2023, Lafourche Parish held NFIP flood insurance policies on six other Parish buildings, but it has subsequently dropped NFIP coverage on those properties due to rapidly increasing premiums, with a full-risk premium that is double and, in some instances, quadruple the premium rates in 2023. *Id.*

Each of these parishes satisfies the legal test for standing in this case that the Court laid out in its motion-to-dismiss order. Plaintiffs thus respectfully request that this Court apply the same rule that it adopted in its motion-to-dismiss order to reinstate the dismissed parishes that also hold NFIP policies.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion for Reconsideration and reinstate all original Plaintiffs or at least the seven dismissed Parishes that owned NFIP policies when they filed this suit.

Dated: March 25, 2026                     Respectfully submitted,

ELIZABETH B. MURRILL
  Attorney General

*/s/ Morgan Brungard*
MORGAN BRUNGARD
  Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
Office of the Attorney General
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
MurrillE@ag.louisiana.gov
BrungardM@ag.louisiana.gov

Tyler R. Green
Consovoy McCarthy PLLC
222 S. Main Street
Ste 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

*Counsel for Plaintiffs*

6