# Exhibit 2

## Declaration of Laura Dhuwe

1.    My name is Laura Dhuwe. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge.

2.    I serve as Chief of Mitigation in the Florida Division of Emergency Management's (FDEM) Mitigation Bureau and have served in that role since July of 2022.

3.    FDEM administers three FEMA grant programs that can elevate homes, including the Hazard Mitigation Grant Program (HMGP), Building Resilient Infrastructure and Communities (BRIC), and Flood Mitigation Assistance (FMA). Homeowners and businesses are not eligible applicants independently, so they cannot apply directly. Instead, they need to coordinate with either their city, county, or eligible private nonprofit to apply on their behalf.

4.    For these federal grant programs, FEMA relies on the State and its local governments to enforce the requirement that subrecipients obtain NFIP flood insurance policies. FEMA will not consider a project "closed" until the State provides FEMA with proof that property owners have obtained the requisite flood insurance for every structure within such a project. If any property owner fails to obtain the flood insurance, the State of Florida is unable to close the project and must return funds to FEMA that were reimbursed to the property owner through the eligible subrecipient. Even if a property owner complies with all the other project requirements and otherwise completes the mitigation project, the State is responsible for reimbursing FEMA for the property owner's failure to obtain insurance.

1

Therefore, it is critical to the State's interest that property owners participating in these grant programs are able to afford flood insurance.

5.    For one such FMA project at Madeira Beach, a new resident who purchased a home that had received grant funding has refused to purchase NFIP flood insurance. The federal funding ($92,194.08) associated with this property, for construction activities, is likely to be deobligated. City officials have been informed and are aware of the potential deobligation.

6.    When FEMA demands the grant funds associated with this property back from the State, FDEM will repay that money to the federal government, but it is unclear whether FDEM will successfully recover repayment from the city in question, which in turn may need to recover money from homeowners through legal proceedings in order to make payment to FDEM.

7.    This deobligation of FEMA funds represents a novel problem for FDEM. I do not recall ever having to repay mitigation grant funds to FEMA or seek to recover them from local governments due to a property owner's refusal to purchase flood insurance during my entire service in this position.

8.    Given this novel problem, FDEM may also need to develop new procedures for its closeout process designed to ensure that homeowners do not drop flood insurance or detect when they have dropped flood insurance, in order to prevent the State from needing to repay further funds in the future.

2

9.    I declare under penalty of perjury that the foregoing is true and correct.

Executed in Tallahassee, Florida, this 25th day of March, 2026.

Laura Dhuwe
Chief of Mitigation
Florida Division of Emergency
Management

Sworn to and subscribed before me by means of [✓] physical presence or [_] online notarization, this 25ᵗʰ date of March 2026, by Laura Dhuwe

Notary Public



MELODY CANTRELL
Commission # HH 244073
Expires April 2, 2026

Commissioned Name: Melody Cantrell

My Commission Expires: 4.2.26

Personally Known ___✓___ OR Produced Identification _____

Type of Identification Produced _____

3