**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| THE STATE OF LOUISIANA, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | CIVIL ACTION NO. 2:23-CV-01839 SECTION P<br><br>JUDGE DARREL PAPILLON<br><br>MAGISTRATE JUDGE EVA J. DOSSIER |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

In accordance with Local Rule 56.2, Plaintiffs respond to Defendants' Statement of Material Facts, ECF 213-4:

1. Undisputed.

2. Undisputed.

3. Disputed. Many homeowners are effectively obligated to purchase flood insurance through the NFIP to have access to federally backed mortgages, loans, and federal disaster relief because private flood insurance is unavailable to them or prohibitively expensive. AR00014532 ("Private flood insurance has been essentially unavailable in the United States for residential property since" 1928.). In addition, the requirement that the private insurance be equivalent to NFIP insurance has meant that "some lenders are uncertain whether private policies meet the [NFIA's] requirements." AR00028806.

4. Disputed as to materiality. FEMA argued as recently as 2008 that the legacy rating system was "within the standards of actuarial practice." AR00008120.

5. Disputed in part. Defendants' figure of "nearly 5 million policies" overstates the current number of NFIP policies and elides the drop in NFIP policies under Equity in Action. Before Equity in Action, as of 2017, the NFIP had 4.99 million policies. AR00029636. The number of policies in force has fallen under Equity in Action, down to 4.46 million as of August 2026. FEMA, *Flood Insurance Data*, agents.floodsmart.gov/flood-maps-and-data/flood-insurance-data (last accessed Sept. 10, 2026).

6. Undisputed. Plaintiffs note that this figure is drawn from congressional testimony given in June of 2021, so these estimated savings reflect the effects of the NFIP under the legacy rating system before Equity in Action was implemented. AR00177112. Further, that testimony attributes these savings to the NFIP's "floodplain management standards." *Id.*

7. Disputed as to materiality. The NFIP's overall financial balance sheet does not bear on the question whether Equity in Action was procedurally and substantively proper under the APA.

8. Disputed. Defendants' statement that the legacy rating method did not "fully reflect[] an individual property's flood risk" is conclusory. FEMA has previously argued that flood insurance is a field where "precise measurement is practically impossible." AR00008119. Equity in Action itself is based on modeling that also will not "fully reflect[]…flood risk" because ""[i]t is certain that actual, real-world values will

not conform exactly to estimates provided by [its] geospatial data products." AR00222636.

9. Disputed as to materiality. These generic criticisms of the NFIP do not establish that Equity in Action was a lawful way to redress these criticisms of the NFIP. For instance, the GAO report that Defendants cite reports that FEMA itself justified grandfathered policies on the basis of "(1) equity, (2) ease of administration, and (3) goals of promoting flood plain management." AR00008091. At the time the GAO report was released, FEMA also rebutted a number of the report's technical criticisms of FEMA's rating methodology, challenging GAO's assessment as "far too negative." AR00008104–07.

10. Disputed as to materiality. Defendants did not include this report in the administrative record and consequently represented that FEMA did not consider it in formulating Equity in Action. Also, around the time of this report, FEMA itself justified grandfathered policies on the basis of "(1) equity, (2) ease of administration, and (3) goals of promoting flood plain management." AR00008091.

11. Disputed as to materiality. At the time, FEMA responded to the GAO report asserting "the report does not accurately present the status of its map modernization efforts and their impact on premium rates.... FEMA stated that (1) [the GAO's] characterization of the progress on the updating of flood maps was misleading; (2) [the GAO] overstate[s] the impact of older maps on rate setting; and (3) [the GAO] failed to note that FEMA allows communities to reflect future conditions in flood maps the communities help develop." AR00008105.

12. Disputed as to materiality. At the time the GAO report was released, FEMA disputed the report's overall criticism of FEMA's rating methodology, challenging GAO's assessment as "far too negative." AR00008119, 8104–07.

13. Disputed as to materiality. At the time of this report, FEMA itself justified grandfathered policies on the basis of "(1) equity, (2) ease of administration, and (3) goals of promoting flood plain management." AR00008091. FEMA also argued that "it is adequately pricing the premiums for the class of business which includes the grandfathered policies" and that it did not have to charge higher premiums for many of the policies that the GAO identified because "a significant portion of these grandfathered policies are older Pre-FIRM policies." AR00008117.

14. Undisputed.

15. Disputed. The same report noted important disadvantages to eliminating grandfathering: "imposing higher rates for properties remapped at higher risk could create hardships for some property owners, reduce the value of their homes, and increase local resistance to the acceptance of newer maps that could better guide land-use management and construction. Also, unlike the discounts described above, cross-subsidies need not contribute to an actuarial shortfall, so reducing them would not be expected to improve the NFIP's financial soundness." AR00029912.

16. Disputed to the extent the statement implies the legacy rating system calculated premiums based "solely on a property's location and elevation in a FIRM flood zone." The legacy rating system included discounts for mitigation measures. AR00017525, 00186145. The legacy system calculated premiums based on elevation

*relative to the Base Flood Elevation (BFE)* and the occupancy type of the structure. AR00029649. The statement also elides that the rate maps incorporated significant information about local flood mitigation measures. AR00029639–40.

17. Disputed. The statement that catastrophe modeling is able "to better estimate" future loss is conclusory and not stated in the administrative record pages cited. AR00203155–00203158.

18. Undisputed.

19. Disputed. FEMA previously argued as recently as 2008 that the legacy rating system was "within the standards of actuarial practice." AR00008120.

20. Disputed. Cited administrative record document does not establish that catastrophe modeling is "necessary." FEMA previously argued as recently as 2008 that the legacy rating system was "within the standards of actuarial practice," AR00008120, and catastrophe modeling has been available since the early 1990s, AR00061243.

21. Disputed. Defendants cite only a litigation-stage declaration for this statement and do not provide any support from the administrative record. Plaintiffs also note that FEMA had alternatives to raising premiums to meet its goal of revenue that equals this new average annual loss figure, such as imposing flat fees, increasing advertising to attract more policy holders, or offering higher policy deductibles. AR00029911–13.

22. Disputed. Administrative record documents indicate that FEMA considered only an AAL level of $4.1 billion but in the end chose a more modest increase

from $3.2 billion to $3.5 billion for Equity in Action's first year. AR00076143–45. As part of this decision, agency technical staff noted that a $4.1 billion annual loss figure "may overly rely on relatively new models to justify a drastic increase in overall target loss levels" and that "there is still significant disparity between the different catastrophe models." AR00076145.

23. Disputed. Equity in Action does not incorporate the same "basic variables utilized in the legacy approach," because it has abandoned key variables like the rate maps and building elevation relative to the BFE for setting premiums. Indeed, the administrative record document that Defendants cite concedes that "flood zones are no longer a rating element for NFIP rates" under Equity in Action, AR00186869, and that "BFE is no longer an NFIP rating factor to determine premium," AR00186843.

24. Disputed. Equity in Action does eliminate some mitigation discounts for policyholders. The legacy rating system previously provided mitigation discounts "for elevation of property higher than the BFE and some types of commercial property floodproofing." AR00017525, AR00186145.

25. Disputed. FEMA's decision to maintain certain CRS discounts does not show any increase in the availability of mitigation discounts. As to properties outside the SFHA, the administrative record document that Defendants cite explains that under the legacy system "the NFIP ha[d] separate Community Rating System ("CRS") discounts for the SFHA and non-SFHA." AR00203171. The discounts

therefore were not expanded in any material way if separate discounts were already available to the non-SFHA properties.

26. Disputed as to materiality. FEMA's decision to maintain certain discounts does not show any increase in the availability of mitigation discounts.

27. Disputed. Under Equity in Action, pre-FIRM policies receive an initial discount on their first $35,000 on coverage for buildings and $10,000 for contents but "mov[e] toward full rates, subject to statutory caps." AR00168773. Thus, under Equity in Action, pre-FIRM discounts will eventually be eliminated.

28. Disputed in part. Not all mitigation discounts previously offered "remain" available. AR00017525, AR00186145.

29. Undisputed.

30. Disputed. It is misleading to state that "many policyholders" saw decreases because even under Defendants' own source, only 16% of policyholders in Louisiana saw a decrease. Further, this statistic relies on a post-litigation declaration not reflected in the administrative record.

31. Disputed. Defendants' declaration states information only about FEMA's "current[]" intentions, and does not provide information about whether FEMA has "taken steps" that would allow it to recover this money if it changes that current intention. ECF 213-2 at 4–5 ¶8. Indeed, GOHSEP was already required to notify FEMA about at least some of these deobligations, so it likely that FEMA has already "taken steps" that would allow for recoupment, such as making a record of those notifications. ECF 195-3 at 5 ¶14.

32. Disputed as to materiality. Plaintiffs' declarations establish the States have seen unprecedented levels of dropped coverage since the implementation of Equity in Action. ECF 195-3 at 6 ¶15; ECF 195-4 at 3 ¶7.

33. Undisputed.

34. Disputed. Any relevance of BFE to the NFIP is greatly reduced because "BFE is no longer an NFIP rating factor to determine premium." AR00186843. Further, Defendants' only support for this statement comes from a post-litigation declaration not contained in the administrative record.

35. Disputed as to materiality. Defendants' cited source states only that certain Equity in Action models were "based on FEMA flood maps and other data sources" without providing further detail. AR00203155. None of the sources cited by Defendants appear to suggest that Equity in Action integrates information from the flood maps on an ongoing basis, and, as FEMA itself previously explained, the regular updates of flood maps was one feature that made them particularly valuable to the legacy rating system. AR00008116–17.

36. Disputed as to materiality. Equity in Action introduced major changes to how the NFIP accounts for elevation, as "Risk Rating Redesign will not be incorporating a variable tied to BFE but rather will be using FFH." AR00071605. The previous tie between elevation and BFE had provided a consistent marker for policyholders on how elevation affected premium rates, since under the pre-2022 NFIP methodology, for buildings whose first-floor elevation was below the BFE, the flood insurance premium rate increased significantly compared to rates for buildings

whose first-floor elevation was above the BFE. AR00017519; AR00064366. This change is material regardless of any conclusory statement that elevation considerations are tied to the same "basic principle."

37. Disputed as to materiality. FEMA previously argued as recently as 2008 that the legacy rating system was "within the standards of actuarial practice." AR00008120.

38. Disputed. This statement relies entirely on a post-litigation declaration and does not attempt to substantiate this vague hypothetical with any support from the administrative record.

39. Disputed as to materiality. FEMA previously argued as recently as 2008 that the legacy rating system was "within the standards of actuarial practice," AR00008120,

40. Disputed as to materiality. Equity in Action still violates important reliance interests because it eliminates the previous tie between elevation and BFE, which had provided a consistent marker for policyholders on how elevation affected premium rates, since under the pre-2022 NFIP methodology, for buildings whose first-floor elevation was below the BFE, the flood insurance premium rate increased significantly compared to rates for buildings whose first-floor elevation was above the BFE. AR00017519, AR00064366.

41. Disputed. This statement relies entirely on a post-litigation declaration and does not offer any evidence that FEMA considered this information as part of the administrative record. And the declaration provides evidence that many states

actually saw a recent *decrease* in the number of policyholders receiving mitigation discounts between 2023 and 2025 due to policyholders leaving the NFIP program, likely caused at least in part by increased costs due to Equity in Action. ECF 213-2 at 16 ¶¶52, 54, 55, 56; 17 ¶¶57–60.

42. Disputed. Equity in Action no longer accounts for the building's elevation in relation to the BFE and other mitigation measures accounted for in ongoing updates to rate maps. AR00186843, AR00186869.

43. Disputed. Only the Maurstad declaration draws this purported link between PRPs and allegedly inadequate levee data under the legacy rating system. Defendants have not provided any evidence that this alleged deficiency was before the agency when it decided to change how PRPs are treated under Equity in Action.

44. Disputed. Only the Maurstad declaration draws this purported link between PRPs and allegedly inadequate levee data under the legacy rating system. Defendants have not provided any evidence that this alleged deficiency was before the agency when it decided to change how PRPs are treated under Equity in Action.

45. Disputed. Only the Maurstad declaration draws this purported link between PRPs and allegedly inadequate levee data under the legacy rating system. Defendants have not provided any evidence that this alleged deficiency was before the agency when it decided to change how PRPs are treated under Equity in Action.

46. Disputed. Only the Maurstad declaration draws this purported link between PRPs and allegedly inadequate levee data under the legacy rating system.

Defendants have not provided any evidence that this alleged deficiency was before the agency when it decided to change how PRPs are treated under Equity in Action.

47. Disputed. The Homeowner Flood Insurance Affordability Act of 2014 (HFIAA) did not require FEMA to phase out all "subsidies" of insurance rates. In fact, the HFIAA actually *repealed* Biggert-Waters's provision terminating grandfathering. Homeowner Flood Insurance Affordability Act of 2014 §4, Pub. Law 113-89, 128 Stat. 1020, 1022 (Mar. 21, 2014) ("Restoration of Grandfathered Rates"). Thus, regardless of what Biggert-Waters has to say about "nonprimary residences" and other high-risk properties, the most recent signal from Congress supported FEMA *maintaining* grandfathered rates for homeowners.

48. Disputed. Congress provided only that premium rates "*may* not be increased *by more than* 18 percent each year," not that every property must reach its full-risk premium. 42 U.S.C. §4015(e)(1). Before Equity in Action, FEMA allowed grandfathered policies to maintain their grandfathered rate without experiencing maximum statutory policy increases as long as the policyholder maintained an active policy, AR00029652–53, as permitted by the HFIAA, 128 Stat. at 1022.

49. Disputed. Defendants cite only the post-litigation Maurstad declaration for these figures. Defendants have not cited any evidence showing that these figures were before the agency in the administrative record or how it considered them in deciding how to implement Equity in Action.

50. Disputed as to materiality. This informational document was released after Equity in Action had already been formulated. AR00172973.

51. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

52. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

53. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

54. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

55. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

56. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely

on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

57. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

58. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

59. Disputed as to materiality. These information sessions occurred after Equity in Action had already been formulated. Furthermore, Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

60. Disputed. Defendants cite only the self-serving advertising statements of a private contractor in support of this proposition. And as Plaintiffs documented in their motion for summary judgment, AIR's modeling overstates the current risk of flooding. *See* 195-2 at 47–48.

61. Undisputed.

62. Undisputed.

63. Disputed. The sources that Defendants cite do not support the factual conclusion they are attempting to draw from them. The administrative record page

cited is a transcript from an information session that does not provide any substantive detail about the models underlying Equity in Action or how the data inputs for those models allegedly differ from FEMA's mapping standards. AR00072954.

64. Disputed. This statement appears to be a legal conclusion that Milliman's design choice was "reasonable," which is inappropriate for a Statement of Material Facts. And the cited page from the administrative record does not support the claim that the chosen date range was consistent with actuarial standards, because the administrative record page merely states Milliman's general intent to follow a listed set of actuarial standards. AR00222628.

65. Disputed as to materiality. Milliman's goals in selecting its data does not establish that it successfully met those goals or that Equity in Action as eventually implemented by FEMA accurately reflected flood risk. AR00222632.

66. Disputed. Defendants' cited administrative record page does not support this statement, as it speaks only to the leveed areas where Milliman *did not* perform a historical loss analysis. AR00222624. Regardless, Hurricane Katrina's distortive effects are significant even excluding the leveed areas, because Hurricane Katrina affected large portions of coastal Louisiana, Alabama, and Mississippi outside of leveed areas. FEMA, *Historical NFIP Claim Information and Trends*, perma.cc/YN6U-NGLD; *see also* AR00013223.

67. Disputed as to materiality. The Hake Declaration does not specify the engagements that it is discussing in this paragraph, but these information sessions almost certainly occurred after Equity in Action had already been formulated. ECF

56-3 at 2–3 ¶6. And Defendants rely entirely on the post-litigation Hake Declaration to support these assertions rather than material that was before the agency in the administrative record.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Morgan Brungard*

ELIZABETH B. MURRILL
Attorney General
MORGAN BRUNGARD
Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
MurrillE@ag.louisiana.gov
BrungardM@ag.louisiana.gov

Tyler R. Green
Consovoy McCarthy PLLC
222 S. Main Street
Ste 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

*Counsel for Plaintiffs*